No. 24-1133

---

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

| | | |
|---|---|---|
| GWENDOLYN D. CUNNINGHAM, | ) | On Appeal from the United States |
| | ) | District Court for the Southern |
| Plaintiff-Appellant, | ) | District of Indiana, Indianapolis |
| | ) | Division |
| v. | ) | |
| | ) | No. 1:22-cv-00165-SEB-TAB |
| LLOYD J. AUSTIN, III, in his official | ) | |
| Capacity as Secretary of the United | ) | |
| States Department of Defense, | ) | The Honorable |
| | ) | SARAH EVANS BARKER |
| Defendant-Appellee. | ) | District Judge Presiding |

---

### BRIEF AND REQUIRED SHORT APPENDIX OF
### PLAINTIFF-APPELLANT, GWENDOLYN D. CUNNINGHAM

---

COUNSEL FOR APPELLANT

STURE LEGAL SERVICES LLC
Tae Sture
Attorney for
Plaintiff-Appellant, Gwendolyn D. Cunningham
155 E. Market Street, Suite 501
Indianapolis, IN 46204
Tel: 317-577-9090
Fax: 317-577-1102

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-1133

Short Caption: Gwendolyn D. Cunningham v. Lloyd J. Austin, in his official capacity as Sec. of the U.S. Dept. of Defense

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    **[  ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Gwendolyn D. Cunningham

_____

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or
      before an administrative agency) or are expected to appear for the party in this court:

Sture Legal Services, LLC

_____

(3)      If the party, amicus or intervenor is a corporation:

      i)       Identify all its parent corporations, if any; and

                         _____

      ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

                         _____

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

            _____

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

            _____

Attorney's Signature:  __/s/ Tae Sture_____  Date: 6/17/2024_____

Attorney's Printed Name: Tae Sture_____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes [X]____  No [   ]**

Address: 155 East Market Street, Suite 501, Indianapolis, IN 46204

Phone Number: (317) 577-9090

Fax Number: (317) 577-1102

E-Mail Address: tae@sturelaw.com

rev. 12/19 AK

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

JURISDICTIONAL STATEMENT ...................................................................... 3

ISSUES PRESENTED FOR REVIEW ................................................................ 5

STATEMENT OF THE CASE.............................................................................. 6

   I.   Appellant's Facts Not in Dispute. ............................................................. 6

      a.   Hartz's Selection of the GS-13 Position. ........................................ 6

      b.   Cunningham and Griffin's Qualification for the GS-13 Position.................... 7

      c.   2017 Desk Audit ................................................................................ 10

      d.   Vacancy Announcement, October 2017. ....................................... 12

      e.   Violation of 120-day fulfillment policy.......................................... 13

   II.   Appellant's Statement of Material Facts in Dispute. ............................ 14

      a.   Hartz did not ask job-related questions in his interviews for the GS-13 Position. ....... 14

      b.   Cunningham's job-related qualifications were significantly greater than  Griffin's.  Her superior qualifications classified her as "best qualified."..................................................... 16

      c.   Fisher was more qualified than Griffin for the GS-13 Supervisor Position. ............... 19

   III.   Procedural History ................................................................................ 20

SUMMARY OF ARGUMENT ............................................................................ 20

STANDARD OF REVIEW ................................................................................. 22

ARGUMENT ....................................................................................................... 23

   I.   Cunningham's qualifications were so significantly superior to Griffin's that a reasonable jury could disbelieve Hartz's reason for selecting Griffin (was "more rounded" in HR). ....... 23

      a.   Griffin did not meet the minimum qualifications for the GS-13 position listed in the vacancy announcement. ....................................................................... 24

      b.   Cunningham's qualifications were significantly superior to Griffin's. ........................ 26

c.    The District Court erred in crediting Defendant's argument that Griffin's lengthy resume was justification for his selection for the GS-13 position over Cunningham. ......... 29

II.    Pretext. ................................................................................................................ 31

a.    Hartz's violation of DFAS policy is pretext for discrimination. .................................. 32

b.    Hartz relying on subjective interview criteria to make the GS-13 selection is evidence of pretext. ........................................................................................................................ 37

III.    The District Court erroneously considered Defendant's honest belief affirmative defense. ......................................................................................................................... 40

IV.    Cunningham could have been non-competitively promoted to GS-13 and GS-14 due to the accretion of the additional duty of supervising the Workers Compensation team. ............ 45

V.    The District Court erroneously excluded Cunningham's statistical evidence included in the MD 715 Report. .......................................................................................................... 48

VI.    Cunningham's "abandoned claim" was not presented as an active claim but was presented to show a past pattern of non-selection. .................................................................. 51

CONCLUSION .................................................................................................................... 52

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aka v. Wash. Hosp. Ctr.*,
  156 F.3d 1284 (D.C. Cir. 1998) ...................................................................... 28

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ....................................................................................... 22

*Ash v Tyson Foods, Inc.*,
  546 U.S. 454 (2006) ....................................................................................... 28

*Bell v. EPA*,
  232 F.3d 546 (7th Cir. 2000) ........................................................................ 50

*Fane v. Locke Reynolds, LLP*,
  480 F.3d 534 (7th Cir. 2007) ........................................................................ 31

*Hance v. BNSF Ry. Co.*,
  645 Fed. Appx. 356 (6th Cir. 2016) .............................................................. 40

*Hobgood v. Ill. Gaming Bd.*,
  731 F.3d 635 (7th Cir. 2013) ........................................................................ 32

*Holland v. Jefferson Nat'l Life Ins. Co.*,
  883 F.2d 1307 (7th Cir. 1989) ...................................................................... 22

*Johnson v. Advocate Health & Hospitals Corp.*,
  892 F.3d 887 (7th Cir. 2018) .................................................................. 22-23

*Kellogg v. Ball State Univ.*,
  984 F.3d 525 (7th Cir. 2021) ........................................................................ 22

*Kidd v. Illinois State Police*,
  167 F.3d 1084 (7th Cir. 1999) ...................................................................... 50

*Levine v. DeJoy*,
  64 F.4th 789 (6th Cir. 2023) .................................................................. 37, 38

*McDonnell-Douglas Corp. v. Green*,
  411 U.S. 792 (1973) ....................................................................................... 50

*Ousley v. CG Consulting, LLC*,
  No. 2:19-cv-01744, 2023 U.S. Dist. LEXIS 130661 (S.D. Ohio July 27, 2023) ....... 40

*Payne v. Pauley*,
  337 F.3d 767 (7th Cir. 2003) ........................................................................ 23

*Reed v. Columbia St. Mary's Hosp.*,
  915 F.3d 473 (7th Cir 2019) ......................................................................... 40

*Reeves v. Sanderson Plumbing Prods.*,
  530 U.S. 133 (2000) ................................................................................ 31, 43

*Ross v. Kansas City Power & Light Co.*,
  293 F.3d 1041. (8th Cir. 2002) ..................................................................... 26

*Rudin v. Lincoln Land Cmty. College*,
  420 F.3d 712. (7th Cir. 2005) ....................................................................... 32

*Salazar v. Wash. Metro. Area Transit Auth.*,
  401 F.3d 504 (D.C. Cir. 2005) ...................................................................... 43

*Sarsha v. Sears, Roebuck & Co.,*
    3 F.3d 1035 (7th Cir. 1993) ................................................................. 22

*St. Mary's Honor Ctr. v. Hicks,*
    509 U.S. 502 (1993) .......................................................................... 43

*Stoe v. Barr,*
    960 F.3d 627 (D.C. Cir. 2020) .................................................... Passim

*Sublett v. John Wiley & Sons, Inc.,*
    463 F.3d 731 (7th Cir 2006) ......................................................... 28, 49

*Venters v. City of Delphi,*
    123 F.3d 956 (7th Cir. 1997) ............................................................ 41

## Statutes

28 U.S.C. § 1291 ...................................................................................... 4
28 U.S.C. § 1331 ...................................................................................... 4
28 U.S.C. § 1391(b) ................................................................................. 3
28 US.C. § 41 ........................................................................................... 4

## Rules

Fed. R. Civ. P. 56(a) .............................................................................. 22

## INTRODUCTION

Appellant, Gwendolyn Denise Cunningham (hereinafter "Cunningham") presented sufficient evidence of pretext to defeat summary judgment.

This case is about Appellant, Cunningham, a federal employee, being denied a promotion to the GS-13 Supervisor of Benefits position because she is a black female. At the time of the selection in 2018, Cunningham had more than twenty years experience in working in the Benefits section of Defense Finance and Accounting Service (hereinafter "DFAS") and thirty-two years federal service with DFAS.  Six and a half of those years were as GS-12 Supervisor of the Benefits team, which was almost identical to GS-13 position she applied for.  The GS-13 position in question was upgraded from a GS -12 Supervisor (Cunningham's position) to GS-13 so that employees in the Benefits section had a career path to the GS-14 Chief of Benefits position. The only difference between the GS-12 Supervisor of Benefits (Cunningham's incumbent position) and the GS-13 Supervisor position was the addition of supervisory responsibility over the Workers Compensation team, headed by a GS-12, Anita Fisher (hereinafter "Fisher").

Emmanuel Griffin's (hereinafter "Griffin") experience in federal Benefits consisted of two years as team leader of the Customer Care Center, commonly referred to as the "call center."  The call center consisted of only three employees who simply handled incoming calls or inquiries, most of which were referred to Cunningham's benefits team or Fisher's Workers Compensation team.

1

Cunningham's Benefits team, on the other hand, had thirteen authorized employee slots who handled the full gamut of federal benefits.

Griffin was hired at DFAS in 2009.  Griffin had only nine years of federal service with DFAS and had no prior experience as a supervisor in the federal sector at the time of his selection as GS-13 Benefits Supervisor.  His prior "generalized" HR experience consisted of only private sector experience and was fourteen years old by the time he applied for the GS-13 position.

Cunningham appeals the District Court's grant of summary judgment to Defendant because the District Court erred in adopting Defendant's position on disputed facts rather than Cunningham's.  Many of the disputed material facts which should have been construed in the light most favorable to Cunningham (the non-movant) were not.  Perhaps the most glaring disputed facts are:

(1) whether Cunningham's qualifications were "significantly" better than Griffin's;

(2) whether Defendant overlooked the fact that Griffin did not meet the minimum qualifications listed in the vacancy announcement;

(3) whether Andrew Hartz's (hereinafter "Hartz") stated reason (Griffin was "more rounded" [in HR]) was pretext or an honest belief;

(4) whether Hartz violated DFAS's interview rules by including non-job-related questions in his interview of the candidates;

(5) then allegedly basing his selection decision on the answers to the prohibited questions;

(6) whether Defendant's 220-day delayed selection in violation of its own 120-day selection policy was sufficient evidence of pretext;

(7) whether Cunningham's proffer of statistical evidence showing African American females had the lowest selection rates for promotion to grades GS-12 – GS-15 should have been accepted as evidence of disparate treatment;

(8) whether Defendant's post-selection act of not assigning Griffin the responsibility of supervising the Workers Compensation Team but leaving him in charge of his old job as Team Lead of the Customer Care Center instead was sufficient evidence of pretext.

A common factor which evidences discrimination is that both female applicants, Cunningham and Fisher, were better qualified than Griffin. Cunningham had vastly more contemporaneous experience in federal benefits and supervision. Fisher had vastly more contemporaneous experience in federal Workers Compensation than Griffin. The common factor was that Hartz did not select either of the women, both of whom had more successful experience than Griffin. Rather, Hartz selected a black male, who had no experience in either federal benefits or federal Workers Compensation.

## JURISDICTIONAL STATEMENT

On January 21, 2022, Cunningham filed suit against the Secretary of Defense, Lloyd Austin in the United States District Court for the Southern District of Indiana. Cunningham filed suit under Title VII of the Civil Rights Act of 1964, 28 U.S.C. § 1391(b), a federal statute, for discrimination based on "sex plus race"

(female)(black).  (Dkt 1: Pl. Compl.)  Cunningham filed suit complaining that she was discriminated against when she was not selected for promotion to a GS-13 position in favor of a less-qualified black male, Griffin.  Jurisdiction in the Southern District Court of Indiana was proper under 28 U.S.C. § 1331.

On December 1, 2023, the District Court granted Defendant's Motion for Summary Judgment.  (Dkt 63: District Court's Ord. Granting Def. Mtn. for Summ. Judg.)  Cunningham filed her *ex parte* Motion for Enlargement of Time to File Her Notice of Appeal on December 11, 2023, which the District Court granted.  (Dkt 65: Pl. Ex Parte Mtn. for Extension of Time to File Pl. Not. of Appeal.; Dkt 66: Ord. on Pl. Ex Parte Mtn. for Extension of Time to File Pl. Not. of Appeal.)  On January 30, 2024, Cunningham timely filed her Notice of Appeal to the District Court.  (Dkt. 67: Pl. Notice of Appeal.)  Cunningham timely files her brief and appendix in accordance with Seventh Circuit's grant of her First and Second Motions for Extension of Time to File Brief and Appendix.  (Dkt 6: Ord. Granting. Appellant's Mtn. for Ext. of Time for File Brief and Appendix; Dkt 8: Ord. Granting. Appellant's Second Mtn. for Ext. of Time for File Brief and Appendix.).

This Court's jurisdiction is founded upon 28 U.S.C. § 1291.  Jurisdiction lies with this Court, as Appellant takes this appeal from a final order from the United States District Court for the Southern District of Indiana that disposed of all parties' claims. 28 US.C. § 41, et. seq.

## ISSUES PRESENTED FOR REVIEW

(1) Did the District Court err in its failure to construe in the light most favorable to Cunninham her listed material facts in dispute.

(2) Did the District Court err in substituting its judgment for that of the trier of fact in holding that no reasonable jury could find that Cunningham's qualifications were significantly better than Griffin's.

(3) Did the District Court err in not finding the Defendant's violation of DFAS policy as evidence or pretext?

(4) Did the District Court err in not finding the Defendant's reliance on subjective interview criteria to make the GS-13 selection as evidence of pretext?

(5) Did the District Court erroneously consider the Defendant's honest belief defense?

(6) Did the District Court err in not inferring from Locke's failure to non-competitively promote Cunningham to the GS-13 position as evidence of discrimination?

(7) Did the District Court err in finding that Cunningham's statistical evidence was not applicable to her claim of disparate treatment and applicable only to disparate impact cases?

## STATEMENT OF THE CASE[1]

I.   **Appellant's Facts Not in Dispute.[2]**

   a.  **Hartz's Selection of the GS-13 Position.**

Hartz admitted that the selection for the GS-13 position was his first occasion to select for a promotion within the federal service. (Exh. 1: Hartz Deposition, 17:16-24.) Hartz admitted that Agency and federal government policy is to select the "best qualified" applicant for promotion. (Exh. 1: Hartz Deposition, 61:23-62:3.) Hartz admitted that the best predictor of future job performance is successful past performance. (Exh. 1: Hartz Deposition, 54:18-55:4.) Hartz admitted that for at least six years preceding the GS-13 vacancy Cunningham demonstrated success in a position substantially similar to the GS-13 supervisor position. (Exh 1: Hartz Deposition., 64:24-65:7.)

Hartz admitted that he based his selection of Griffin for the GS-13 position on a single, one-time interview of Griffin. (Exh 1: Hartz Deposition, 55:12-18.) Hartz stated that he relied "heavily" on the interviews in making his selection decision. (Exh 1: Hartz Deposition, 51:3-10.) He testified that 80% of his selection decision was based on the answers the applicants provided to his interview questions, giving very little credit for Cunningham's superior job-related experience. (Exh 1: Hartz Deposition, 107:25-108:4.). Hartz also admitted that his view of the

---

[1] Appellant cites to the actual page number of the exhibit, not including the cover pages to the exhibit.
[2] Appellant lists below a major portion of her Facts Not in Dispute that were presented to the District Court in her Brief in Opposition to Defendant's Motion for Summary Judgment.

interviewees' answers was subjective, as to personality. (Exh 1: Hartz Deposition, 60:17-61:15.)

Hartz testified in his deposition and in his Declaration that the decision as to who he should select was "difficult," meaning that the two applicants were very close. (Exh 1: Hartz Deposition, 109:5-19.) Shante Jones (hereinafter "Jones"), a black woman who also attended the interviews for the GS-13 position, testified in her Declaration that Cunningham ranked first or second based on the interviews and responses for the GS-13 position among other candidates. (Exh 13: Jones Declaration, DFAS000209.) Jones attended the interviews, primarily as an observer, and asked very few questions. (Exh 4: Cunningham Affidavit, 6.)

### b. Cunningham and Griffin's Qualification for the GS-13 Position.

Although he may have gained some familiarity with simple federal benefits questions and answers while working in the Customer Care Center ("CCC"), Griffin had never worked in the federal benefits section actually processing benefits until he was selected for the GS-13 Benefits Supervisor position in June 2018. (Exh. 3: Griffin Resume.) As Team Lead for the CCC, Griffin possessed some peripheral experience because his CCC team fielded some calls related to federal benefits. His team, upon receiving calls related to processing of federal benefits would refer the caller to the Benefits team which was supervised by Cunningham. (Exh 4: Cunningham Affidavit, 5:58.)

Cunningham, on the other hand, had many more years of direct experience in federal Benefits than Griffin, the selectee, who had only tangential experience.

Cunningham was transferred to the DFAS federal Benefits team in 1996. (Exh 2: Standard Form 50-B Gwendolyn D. Johnson (Cunningham).)  Cunningham was designated as the "Subject Matter Expert" for federal benefits; Griffin was not. (Exh 1: Hartz Deposition, 64:9-23; 99:14-100:8; 104:9-15.)  Cunningham had federal employee supervisory experience;  Griffin did not. (Exh 1: Hartz Deposition, 55:5-11; 47:8-48:24; Exh 17: Wyatt Deposition, 20:7-21:23.)  As a federal employee supervisor, a supervisor has authority to issue performance evaluations to employees, discipline employees, approve or disapprove two or more days of annual leave; a mere team lead does not possess the same level of authority as a supervisor. (Exh 1: Hartz Deposition, 47:8-48:24; Exh 17: Wyatt Deposition, 20:7-21:23.) Cunningham had over six years of experience as a federal employee supervisor immediately preceding her application for the GS-13 Supervisory position; Griffin had none.  (Exh 4: Cunningham Affidavit, 1:10-3:33; Exh 5: Cunningham Resume.) Additionally, Cunningham had ten years of experience (2002 – 2012) as a Team Lead of the Benefits team prior to being appointed as GS-12 Supervisor of the Benefits team.  (Exh 4: Cunningham Affidavit, 1:11-13.)  Hartz admitted that he knew Griffin's position as Team Lead of CCC did not involve any supervisory duties. (Exh 1: Hartz Deposition, 46: l3-18.)

From 2003 to 2018, Cunningham served as the acting Chief of Benefits whenever the Chief position was vacant or whenever the Chief was on leave or otherwise absent.  As acting Chief, Cunningham gained extensive experience supervising the federal Workers Compensation team. Griffin had no experience

supervising or working in federal workers compensation. (Exh 4: Cunningham Affidavit, 4:39-40; 5:57-58.)

Griffin's prior experience in private industry Workers Compensation programs (2003) was over fifteen years prior to his selection in 2018 for the GS-13 Supervisor position. (Exh 3: Griffin Resume.)  Even after being promoted to GS-13 Supervisor position in June 2018, Griffin did not assume day-to-day supervisory responsibilities over the federal Workers Compensation program in the Benefits division.  He retained the supervisory responsibilities over the CCC while Hartz continued to supervise the Workers Compensation team. (Exh 6: Griffin Deposition, 33:1-34:25.)  Griffin's only role in supervising the Workers Compensation team was to approve leave requests and issue performance evaluations in accordance with the DFAS Benefits organization charge; however, he did not exercise any actual day-to-day supervisory control over the Workers Compensation team.  He continued to exercise day-to-day supervisory control over the CCC, his old position.  (Exh 6: Griffin Deposition, 33:1-34:25.)

The great majority of the work in the Benefits division dealt with federal benefits such as retirement, health insurance, thrift savings plan, disability retirement, family and spousal benefits.  The federal Workers Compensation program dealt with the single issue of work-place injuries which required far less supervision and overseeing.  (Exh 7: GS-12 Supervisory Human Resources Specialist Position Description; Exh 4: Cunningham Affidavit, 1:14-2:26.)

### c.  2017 Desk Audit

In the spring of 2017, DFAS HR Classification team, led by Kim Cevelo, conducted a "desk audit" of Cunningham's GS-12 Benefits Supervisor position for the dual purpose of increasing the position from GS-12 to GS-13 so as to provide a possible career path for promotion from GS-12 to GS-14 from within the Benefits division and to examine whether the position was properly graded.

Part of the process of conducting the "desk audit" is to obtain information as to the duties and responsibilities of the position being audited.  (Exh 4: Cunningham Affidavit, 4:47.)  Cevelo interviewed Cunningham regarding the duties and responsibilities because Cunningham had been deemed to be the Subject Matter Expert for federal benefits.  (Exh 4: Cunningham Affidavit, 4:47-49.)  As reflected in her Resume, Cunningham had, periodically, assumed responsibility for the Workers Compensation team, thus reflecting an accretion of additional duties beyond her assigned duties as Benefits Supervisor.  (Exh 5: Cunningham Resume.)  Moreover, she had additional accretion of duties as acting Benefits Chief in the absence (sometimes for months when the Benefits Chief position went unfilled) of the assigned Chief of Benefits. (Exh 4: Cunningham Affidavit, 4:39-40.)  During the course of her interview of Cunningham, Cevelo told Cunningham that it was her (Cunningham's) GS-12 Benefits Supervisor position that was going to be elevated to GS-13.  (Exh 4: Cunningham Affidavit, 5:50.)

After the desk audit, Kathy Hendrickson, who was the Director of DFAS HR, submitted a request to John Witter, her boss, to approve a GS-13 Benefits

Supervisor position within the Benefits division so as to provide a career path for those employees working in Benefits division.  (Exh 19: Email from Kathleen Hendrickson to Jonathan Witter.)  Prior to this, it was impossible for anyone working in Benefits to be promoted from GS-12 to GS-13 within Benefits.  The only way to get promoted to GS-13 was to seek a promotion outside of the Benefits section because there were no GS-13 positions within the Benefits section.

The audit team concluded that a GS-13 position within Benefits was justified, and that Cunningham's current GS-12 Supervisory position was properly graded as a GS-12 *Supervisor* (emphasis supplied).  (Exh 8: Desk Audit Summary.)  The desk audit further concluded that a GS-13/14 Chief of Benefits position be created "to afford current employees with the breadth and depth of experience in the functional areas to apply/compete."  (Exh 8: Desk Audit Summary, DFAS0000726.)

Cunningham, while acting and working as the Benefits Supervisor, was forced to train white managers who had no prior experience in federal benefits to take over as Benefits Supervisor or Chief of Benefits.  Beginning around 2007, Cunningham was required to train Fran Jacobs (white), Amber Kennedy (hereinafter "Kennedy") (white female), Howard Locke (hereinafter "Locke") (white male), and Hartz (white) in federal Benefits programs, none of whom had prior federal benefits experience but all of whom were promoted to GS-13 or GS-14 as Supervisor of Benefits, but not  Cunningham. (Exh 4: Cunningham Affidavit 3:30.)

11

### d. Vacancy Announcement, October 2017.

The vacancy announcement for the GS-13 Supervisor, Benefits position was announced on October 23, 2017, and closed on November 6, 2017. (Exh 9: GS-13 Position Vacancy Announcement, 2.) The Vacancy Announcement listed the minimum qualifications to apply for the job, "One year of specialized experience equivalent in level of difficulty and responsibility to that of the next lower grade (GS-12) within the federal service, which demonstrates the ability to perform the duties of the position, is required." "Specialized Experience is defined as advising and guiding senior management and customers regarding employee Health Benefits, Retirement and/or Workers Compensation programs, regulations, policy and standards; training and reviewing the work of team members; and resolving issues involving the administration of benefits, retirement or workers compensation." (Exh 9: GS-13 Position Vacancy Announcement, 4.)

The main job responsibilities listed in the vacancy announcement were, "Serves as the first line supervisor responsible for supervising and managing the day-to-day operations of the Employee Benefits Division" and "Provides advisory and consultative services to employees and managers regarding the regulations policy and program delivery of employee retirement, health and life insurance programs; Thrift Savings Program (TSP), and workers compensation program." (Exh 9: GS-13 Position Vacancy Announcement, DFAS000013.)

Importantly, the vacancy announcement states, "There is no substitution of education for Specialized Experience at this grade level." (Exh 9: GS-13 Position Vacancy Announcement, DFAS000014.)

Around the time the GS-13 Supervisor vacancy was announced in late 2017, Anthony Opat (hereinafter "Opat") who worked under Cunningham opined to Locke that Cunningham deserved the GS-13 position. (Exh 10: Email from Tony Opat to Howard Locke.) During that same period in 2017, Locke was a named alleged discriminating management official in two EEO complaints. (Exh 11: Howard Locke EEO Complaints.)

### e. Violation of 120-day fulfillment policy.

As stated above, the vacancy announcement for the GS-13 Supervisor Benefits position was announced on October 23, 2017, and closed on November 6, 2017. (Exh 9: GS-13 Position Vacancy Announcement, DFAS000012.) Locke, white male, was the designated selecting official at the time. (Exh 21: Davenport Deposition, 56:18-58-16.) DFAS policy requires the selecting official to make his/her selection as soon as possible, but no more than 120 days from the date the announcement closes. (Exh 12: DFAS Policy 1402.1-1, DFAS000238.). Locke, however, deferred the selection for the GS-13 position until Hartz selected Griffin for the position on June 14, 2018, 220 days after the close of the vacancy announcement in early November 2017. (Exh 24: Final Agency Decision, DFAS 000309.) Locke passed off the selection decision to Hartz, the newly promoted Chief

of Benefits on April 1, 2018, despite the need to quickly fill the position so as not to hamper the Benefits department's mission fulfillment.

Locke who had much more experience than Hartz in recruiting and selecting to fill vacancies (Exh 1: Hartz Deposition, 54:4-14; Exh 16: Locke Deposition, 74:18-75:5.), intentionally deferred the selection to Hartz who did not fill the position until mid-June 2018, some eight months after the vacancy announcement closed. (Exh 21: Davenport Deposition, 56:18-58:16.)

## II.   Appellant's Statement of Material Facts in Dispute[3].

### a.   Hartz did not ask job-related questions in his interviews for the GS-13 Position.

DFAS Regulation No. 14 02.1-1 states, "*All* (emphasis supplied) questions used in a selection interview must be job related and tied to the skills or competencies identified in the job analysis. The same questions, in the same order, should be asked of all applicants who are interviewed." (Exh 12: DFAS Policy 1402.1-1, DFAS000238.)

Jones attended the interviews, primarily as an observer, and asked very few questions. (Exh 4: Cunningham Affidavit, 6.) Jones stated in a sworn statement that Hartz did not ask job-related questions. (Exh 13: Jones Declaration, DFAS000208.) For example,

> Q. (EEO Investigator) "The vacancy announcement states one of the responsibilities of the position was to provide advisory and consultative

---

[3] Appellant lists below material facts in dispute which she contends the District Court erroneously ignored in finding in favor of Defendant's Motion for Summary Judgment.

services to employees and managers regarding the regulations, policy, and program delivery of employee retirement, health and life insurance programs; Thrift Savings Plan (TSP) and workers compensation program. Please describe what knowledge skills, experience and/or training the selectee had with this function."

R: (by Jones) "*We did not ask any interview question specific to that responsibility* (emphasis supplied). Based on the responses in the interview, he had experience in several areas of HR, to include classification, benefits, and EEO. He had experience in leadership for more than 30 years." (Exh 13: Jones Declaration, DFAS000208.)

Another example of non-job-related interview question:

Q. (EEO Investigator) "The Vacancy announcement states one of the responsibilities of the position was to represent the Agency to serviced customers in providing high level policy advisory services regarding current or proposed program regulations or service delivery. Please describe what knowledge, skills, experience, and/or training the selectee had with this function."

R. (Jones) "*We did not ask any interview question specific to that responsibility* (emphasis supplied), No responses during the interview demonstrated the knowledge, skills, experience, and/or training he had with this function." (Exh 13: Jones Declaration, DFAS000208.)

Rather, Hartz asked aspirational questions related to general human resource experience. For example, his first interview question is, "Describe your background and experience with *HR and* (emphasis provided) Benefits. What area of HR/Benefits is your most in-depth experience." (Exh 23: Hartz's Interview Notes.)

In late May 2018, Hartz interviewed Cunningham and Griffin for the GS-13 Supervisor position. Hartz memorialized the interviewee's answers to his interview questions in the form of hand-written notes. *Id.* Hartz stated in his affidavit that Griffin used his allotted time to answer Hartz's interview questions and that

15

Cunningham did not. (Exh 14: Declaration of Andrew Hartz, 3:9.) Hartz does not specify the "allotted" amount of time for each interview. Griffin testified under oath that his interview lasted about 45 – 60 minutes. (Exh 6: Griffin Deposition, 40:8-13.) Cunningham testified that her interview lasted about fifteen to thirty minutes. (Exh 15: Cunningham Deposition, 63:23-24; Exh 4: Cunningham Affidavit 7:82.) A quick math calculation shows that Griffin spent an average of eight to ten minutes answering the six interview questions. Cunningham, on the other hand, spent only about 2.5 to five minutes on average answering Hartz's interview questions.

> **b. Cunningham's job-related qualifications were significantly greater than Griffin's. Her superior qualifications classified her as "best qualified."**

The chart below reflects the comparative qualifications of Cunningham and Griffin and is submitted for the ease and convenience of the Court:

**Comparison of Qualifications for GS-13 Supervisor (Benefits) as of November 2017**

|  | Cunningham | Griffin |
|---|---|---|
| **Federal Benefits Experience** | 23 years<br><br>(Maintains regulatory compliance. Retirement, Disability, Employee Wellness, Fed. Workers' Comp, health insurance, life insurance for DFAS, DISA, DTIC, NDU, USAFMCOM, Veteran, Reserve and Active-Duty Service Members.) | None<br><br>(Exh 3: Griffin Resume.) |

| | (Exh 5: Cunningham Resume; Exh 2: Standard Form 50-B Gwendolyn D. Johnson (Cunningham).) | |
|---|---|---|
| **Subject Matter Expert Federal Benefits (SME)** | Yes<br><br>(SME in Federal Employees Health Insurance (FEHB), Long Term Care (LTC), Federal Employees Group Life Insurance (FEGLI), Civil Service Retirement System (CSRS), Federal Employees Retirement System (FERS), Thrift Saving Plan (TSP).)<br><br>(Exh 16: Locke Deposition, 28:13-19; Exh 5: Cunningham Resume; Exh 17: Wyatt Deposition, 19:17-22.) | No<br><br>(Exh 3: Griffin Resume; Exh 17: Wyatt Deposition, 19:17-22.) |
| **Federal Service Supervisory Experience** | 6 years 4 months<br><br>(Supervises 8-10 employees, authority to impose discipline and issue performance appraisals, implementation of strategic planning in times of surges and RIFs, delegates workloads, mentoring, maintains fiscal responsibility, developmental training for employees, establishes processes and procedures.)<br><br>(Exh 5: Cunningham Resume; Exh 15: | None<br><br>(Exh 3: Griffin Resume; Exh 17: Wyatt Deposition, 21:9-11; Exh 15: Cunningham Deposition, 35:11-13; Exh 1: Hartz Deposition, 47:15-17) |

|  | Cunningham Deposition, 34:21-25; Exh 1: Hartz Deposition, 47:12-14; Exh 17: Wyatt Deposition, 21:6-8; Exh 16: Locke Deposition, 12:12-13.) |  |
|---|---|---|
| **Acting Chief of Benefits Experience** | Sixteen years' experience -since 2002, served as Acting Chief of Benefits in the absence of incumbent Chief of Benefits<br><br>(Exh 4: Cunningham Affidavit, 4:39-40.) | None<br><br>(Exh 3: Griffin Resume.) |
| **Federal Workers' Comp Experience** | 6 years 4 months<br><br>(Exh 5: Cunningham Resume.) | None<br><br>(Exh 3: Griffin Resume.) |
| **Private Sector Workers' Comp Experience** | None<br><br>(Exh 5: Cunningham Resume.) | 2 years - over 14 years ago in 2001-2003<br><br>(Exh 3: Griffin Resume.) |

Defendant contended that Hartz believed, based on his interview answers, that Griffin gave better answers regarding his leadership skills compared to Cunningham. (Dkt 45: Def. Brief in Support of Mtn. for Summ. Judg., 14.) However, Cunningham received the top rating of "Exceeds" in the *Leadership, Communication, and Employee Engagement* component of her 2016-2017 Performance Evaluation from Locke. (Exh 20: Cunningham Performance Reviews, DFAS001465-DFAS001466.) Notably, Defendant failed to provide Griffin's performance evaluations even though they were requested in discovery. Cunningham also received the top rating of "Exceeds" in *Mission, Program, and*

*Project Accomplishment* for 2016 and 2017. (Exh 20: Cunningham Performance Reviews, DFAS001460, DFAS001465.)

    **c. Fisher was more qualified than Griffin for the GS-13 Supervisor Position.**

Ms. Fisher also applied for the GS-13 Supervisor position and was interviewed by Hartz and Jones. (Exh 23: Hartz' Interview Notes.) Ms. Fisher was Team Leader over the Workers Compensation team and had a record of successful experience in Federal Workers Compensation program at the time Mr. Hartz selected Mr. Griffin for the GS-13 Supervisor position. (Exh 1: Hartz's Deposition, 33:14-21.) Ms. Fisher had "much more" experience in supervising and managing the Federal Workers' Compensation Program than Griffin. (Exh 1: Hartz's Deposition, 35:24-36:5.) In his interview notes, Hartz noted several of Fisher and Cunningham's answers as "practical." (Exh 23: Hartz' Interview Notes.) Hartz only desribed the female interviewees' answers as "practical" and did not describe the male interviewees' answers as such. Conversely, Hartz noted several of the answers from Griffin and Opat, the other male interviewee, were "tactical." *Id.* The "tactical" trait was not used to describe the female interviewees. Moreover, Opat opined in an email to Locke prior to the interviews, stating "I think your two well qualified candidates are 1. Denise & 2. Anita." (Exh 10: Email from Tony Opat to Howard Locke.)

19

### III.    Procedural History

On January 21, 2022, Cunningham filed suit under Title VII ("sex plus" race discrimination) against Defendant in the United States District Court for the Southern District of Indiana. (Dkt 1: Pl. Compl.)  December 1, 2023, the District Court granted Defendant's Motion for Summary Judgment. (Dkt 63: District Court's Ord. Granting Def. Mtn. for Summ. Judg.)  Cunningham filed her *ex parte* Motion for Enlargement of Time to File Her Notice of Appeal on December 11, 2023, which the District Court granted. (Dkt 65: Pl. Ex Parte Mtn. for Extension of Time to File Pl. Not. of Appeal.; Dkt 66: Ord. on Pl. Ex Parte Mtn. for Extension of Time to File Pl. Not. of Appeal.)  On January 30, 2024, Cunningham timely filed her Notice of Appeal to the District Court. (Dkt. 67: Pl. Notice of Appeal.) Cunningham timely files her brief and appendix in accordance with Seventh Circuit's grant of her First and Second Motions for Extension of Time to File Brief and Appendix. (Dkt 71: Notice of Docketing.)

### SUMMARY OF ARGUMENT

First, the District Court erred in failing to construe the material facts in dispute presented in the summary judgment proceedings in the light most favorable to Cunningham, the non-moving party.

Second, the District Court erred in substituting its judgment for that of the trier of fact in holding that no reasonable juror could find that Cunningham's qualifications were significantly better than Griffin's. Under the summary judgment standard, the District Court should have credited Cunningham's

argument that Griffin did not meet the qualifications for the GS-13 position, and that Cunningham's own qualifications were significantly better than Griffin's. Furthermore, the District Court erred in crediting Defendant's argument that Griffin's lengthy resume was justification for his selection for the GS-13 position.

Third, the District Court erroneously ignored the evidence of pretext presented by Cunningham in favor of Defendant. The District Court erred in not finding that Defendant's violation of DFAS policy by (1) not asking job-related questions in the interviews for the GS-13 position and (2) not making the selection for the GS-13 position within 120 days of the close of the vacancy announcement as evidence of pretext. The District Court further erred in not finding that Defendant's reliance on subjective criteria in making the GS-13 selection was evidence of pretext.

Fourth, the District Court erred in erroneously considered the Defendant's honest belief affirmative defense because it was not raised until the summary judgment phase of the proceedings. As such, Cunningham was not given sufficient notice of the defense, was not provided an opportunity to conduct discovery related to the defense, and was ultimately prejudiced by the District Court's acceptance of the defense.

Fifth, the District Court erred in not inferring from Locke's failure to non-competitively promote Cunningham to the GS-13 position as evidence of discrimination.

Sixth, the District Court erred in excluding the statistical evidence presented by Cunningham by finding that the evidence was not applicable to her claim of disparate treatment, and instead was applicable only to a claim of disparate impact.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*, viewing all facts and inferences in the light most favorable to the non-moving party. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Kellogg v. Ball State Univ.*, 984 F.3d 525, 527 (7th Cir. 2021).

A genuine issue of fact exists if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Because employment discrimination cases, such as the one at hand here, often turn on questions of intent and credibility, courts in these cases should scrutinize a motion for summary judgment even more rigorously than other cases. *See Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993); *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989).

"On summary judgment *a court may not make credibility determinations* (emphasis supplied), weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. Rather, the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Johnson v. Advocate Health & Hospitals Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). The Court must therefore look at the evidence as a jury might, "construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Id.*

The only task for a district court is to determine, based on the record of evidence, whether there is a genuine dispute of a material fact that requires a trial. *Id.* If there is a genuine dispute of material fact in dispute, summary judgment must not be granted. *Id.* In other words, if there is even one material fact in dispute, summary judgment is to be denied.

## ARGUMENT

I. **Cunningham's qualifications were so significantly superior to Griffin's that a reasonable jury could disbelieve Hartz's reason for selecting Griffin (was "more rounded" in HR).**

Briefly, the selection process in DFAS begins with identifying a need for hire or promotion; requesting DFAS HR create and announce a vacancy announcement; DFAS HR publishing minimum job requirements and applicant qualifications, including "specialized experience" in order to qualify to apply for the position; candidates submitting their respective applications; DFSA HR screening the applications; forwarding the qualified applicant list of candidates to the selection official; and, finally, the selecting official making her/his selection. DFAS Regulation 1402.1 governs the selection process. (Exh 12: DFAS Policy 1402.1-1.)

Both federal government policy and DFAS policy require the selecting official select the best-qualified applicant.  *Id.*

### a. Griffin did not meet the minimum qualifications for the GS-13 position listed in the vacancy announcement.

The selectee, Griffin, was not qualified to even apply for the vacancy because he did not meet the minimum qualifications listed in the vacancy announcement.

The vacancy announcement listed minimum qualifications of "One year of *specialized experience* (emphasis supplied) equivalent in level of difficulty and responsibility to that of the next lower grade (GS-12) *within the federal service* (emphasis supplied), which demonstrates the ability to perform the duties of the position, is required."  (Exh 9: Vacancy Announcement, DFAS 000014.)

"Specialized Experience is defined as advising and guiding senior management and customers regarding employee Health Benefits, Retirement and/or Workers Compensation programs, regulations, policy and standards; training and reviewing the work of team members; and resolving issues involving the administration of benefits, retirement or workers compensation."  (Exh 9: Vacancy Announcement, DFAS 000014.)  Although not explicit, implicit in the vacancy announcement is that the specialized experience must be in *federal* benefits, not in private sector experience.  Susan Davenport (hereinafter "Davenport"), the HR staffing specialist who prepared the vacancy announcement, admitted that the vacancy announcement referred to *federal* benefits.  (Exh 21: Davenport Deposition, 81:6-82:12.)

Davenport further admitted that the vacancy announcement required candidates to have a minimum of one-year *specialized experience* in *federal* employee retirement, *federal* health and life insurance programs, *federal* thrift savings program, and *federal* Workers Compensation. (Exh 9: Davenport Deposition, 82:24-83:5, 81:6-82:12.) The vacancy announcement also required that applicant to have such specialized experience *within the federal service*. (Exh 21: Davenport Deposition, 82:24-83:5.)

The vacancy announcement states, "There is no substitution of education for Specialized Experience at this grade level." (Exh 9: Vacancy Announcement, DFAS 000014.) Thus, the District Court should have found Cunningham presented sufficient evidence to establish a genuine dispute of material fact as to whether Hartz was precluded from crediting Griffin's college degree as a substitute qualification for the position of GS-13 Supervisor, which he apparently did. (Dkt 63: District Court's Ord. Granting Def. Mtn. for Summ. Judg., 22.)

Moreover, nowhere in either the vacancy announcement or the position description is there a reference to "more rounded" or "well rounded" HR experience. Instead, both documents are very specific as to the job-related requirements in accordance with government rules and regulations.

Cunningham met all the minimum qualifications by virtue of her performing the job for the last six years as a GS-12. Griffin, on the other hand, had no such specialized experience in *federal* benefits or in *federal* Workers Compensation.

Griffin's lack of experience in federal benefits or federal Workers Compensation is strong evidence of pretext which would allow the reasonable juror to find for Cunningham, the non-movant.

### b. Cunningham's qualifications were significantly superior to Griffin's.

It is presumed that in the normal course of business an employer will hire the most qualified candidate. *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1047. (8th Cir. 2002). Here, Cunningham's past relevant experience as a GS-12 Benefits Supervisor for the GS-13 Benefits Supervisor position was clearly superior to Griffin's experience as Customer Care Center Team Lead as the relative qualifications chart above shows.

The chart, included in Appellant's Statement of the Case on pg. 16, reflects the comparative qualifications of Cunningham and Griffin and is submitted for the ease of analysis and convenience of the Court. The chart reflects that Cunningham had twenty-three years of direct experience in federal Benefits.

Griffin, on the other hand, possessed some peripheral experience because his CCC team fielded some calls related to federal benefits. His team, upon receiving calls related to processing of federal benefits would refer the caller to the Benefits team which was supervised by Cunningham. (Exh 4: Cunningham Affidavit, 5:58.) Griffin had never worked in the federal benefits section actually processing benefits until he was selected for the GS-13 Benefits Supervisor position in June 2018. (Exh. 3: Griffin Resume.)

Cunningham was designated as the "Subject Matter Expert" for federal benefits; Griffin was not. (Exh 1: Hartz Deposition, 64:9-23; 99:14-100:8; 104:9-15.) Cunningham had federal employee supervisory experience; Griffin did not. (Exh 1: Hartz Deposition, 55:5-11; 47:8-48:24; Exh 17: Wyatt Deposition, 20:7-21:23.) Cunningham had over six years of experience as a federal employee supervisor immediately preceding her application for the GS-13 Supervisory position; Griffin had none. (Exh 4: Cunningham Affidavit, 1:10-3:33; Exh 5: Cunningham Resume.) Additionally, Cunningham had ten years of experience (2002 – 2012) as a Team Lead of the Benefits team prior to being appointed as GS-12 Supervisor of the Benefits team. (Exh 4: Cunningham Affidavit, 1:11-13.) Hartz admitted that he knew Griffin's position as Team Lead of CCC did not involve any supervisory duties. (Exh 1: Hartz Deposition, 46: l3-18.)

From 2003 to 2018, Cunningham served as the acting Chief of Benefits whenever the Chief position was vacant or whenever the Chief was on leave or otherwise absent. As acting Chief, Cunningham gained extensive experience supervising the federal Workers Compensation team. Griffin had no experience supervising or working in federal workers compensation. (Exh 4: Cunningham Affidavit, 4:39-40; 5:57-58.)

This is strong evidence that the employer did not hire the "most qualified candidate." That the employer did not hire the "most qualified" candidate is strong evidence of pretext.

27

Cunningham's significantly superior qualifications can evidence pretext if the differences in qualifications are so significant that no reasonable juror would dispute that she was more qualified than the selectee. *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 738 (7th Cir 2006). Put in a more plaintiff friendly way, "If a factfinder *can* (emphasis supplied) conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate—something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture. *Stoe v. Barr,* 960 F.3d 627, 642 (D.C. Cir. 2020) (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998)).

Here, Cunningham's qualifications are so significantly better than Griffin's that the question qualifies to be put before a jury.

In *Ash v Tyson Foods, Inc.,* the Supreme Court recognized that superior qualifications, even if not significantly superior, combined with other evidence may be probative of evidence of pretext. *Ash v Tyson Foods, Inc.* 546 U.S. 454, 457-58 (2006).

In addition to Cunningham's significantly superior qualifications, Opat, who worked in federal benefits with both Cunningham, Fisher, and Griffin, opined that Cunningham and Fisher were the well qualified candidates. (Exh 10: Email from Tony Opat to Howard Locke, DFAS009740.) Opat further opined to Locke that Cunningham deserved the GS-13 position. *Id.* Indeed, Griffin, himself, admitted to

Cunningham that she was more qualified than him. (Exh 4: Cunningham Affidavit, 5:61.) Thus, Cunningham meets the test of "superior qualifications combined with other evidence." The District Court below erred when it failed to credit Cunningham's foregoing evidence in the light most favorable to her as the non-movant.

> ### c. The District Court erred in crediting Defendant's argument that Griffin's lengthy resume was justification for his selection for the GS-13 position over Cunningham.

The District Court credited Defendant's argument that Griffin's lengthy Resume compared to Cunningham's two-page Resume was justification for its selection decision. (Dkt 63: District Court's Ord. Granting Def. Mtn. for Summ. Judg., 20, 22.) Cunningham tailored her Resume to the requirements of the vacancy announcement.

Griffin's lengthy Resume also contained only two pages describing his *federal* service. (Exh 3: Griffin Resume.) Griffin's Resume states that he is "[f]amiliar with a wide variety of benefits and entitlements programs and services to include Thrift Savings Plan (TSP), health benefits, Federal Employees Group Life Insurance (FEGLI), retirement programs/options." (Exh 3: Griffin Resume, DFAS 000084.) The best Griffin's resume could do for him was to get him an interview. The District Court failed to take into account that the portion of Griffin's resume describing his *federal service* was no more than two pages long, that his resume was nothing more than a laundry list of tasks related to his job as Team Lead of the

Customer Care Center, and contained no verbiage of any *experience* whatsoever in federal employee retirement, federal health and life insurance programs, federal thrift savings program, or federal Workers Compensation. (Exh 3: Griffin Resume.)

The District Court credited Defendant's argument that Griffin's eleven-page Resume, was more comprehensive, covering his entire work career, his college education, and military service of twenty-three years. (Dkt 63: District Court's Ord. Granting Def. Mtn. for Summ. Judg., 20, 22.) However, Defendant provided no evidence of superior leadership experience other than a conclusory assertion. (Dkt 45: Def. Brief in Support of Mtn. for Summ. Judg., 14.)

Cunningham's Resume was two pages long and covered all her experience as Benefits Supervisor and Workers Compensation experience. (Exh 5: Cunningham Resume.)

It is common knowledge, especially in HR circles, that a Resume should be shorter, rather than longer and cover the specific expertise or experience of the job being applied for. A reasonable juror, possessing the common knowledge of what a Resume should look like, could easily find that Griffin's Resume amounted to nothing more than an effort to "puff up" his qualifications when in fact he possessed few, if any, qualifications for the Benefits Supervisor position. In short, comparing the two candidates' experience in federal sector, Cunningham was far better qualified, both by virtue of her relevant experience in federal benefits and Griffin's lack of experience in federal benefits. The District Court erred, under the summary judgment standard, in crediting Defendant's argument that Griffin's lengthy

Resume compared to Cunningham's two-page Resume was justification for its selection decision.

## II.    Pretext.

This is a strong pretext case.  The District Court found that Cunningham was able to make out a prima facie case of sex discrimination and that Defendant satisfied its obligation of providing a legitimate nondiscriminatory reason for Cunningham's non-selection (See Dkt No. 63 at 19-20), leaving only the question of whether Cunningham mounted sufficient evidence of pretext such that a jury could find in her favor.

Under the Supreme Court's holding in *Reeves,* a plaintiff need only proffer evidence of pretext, and in doing so, a jury *may* find for the plaintiff.  "Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148 (2000).  Sufficient evidence of pretext consists of "weaknesses, implausibilities, inconsistencies, or contradictions in the purported reasons [for non-selection] that a jury could find them unworthy of credence and hence infer that [the employer] did not act for the asserted non-discriminatory reasons." *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 541 (7th Cir. 2007) (citing *Reeves,* 530 U.S. at 143).

### a.  Hartz's violation of DFAS policy is pretext for discrimination.

Courts have held that an employer's failure to follow its own employment procedures may constitute evidence of pretext.  *Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 727. (7th Cir. 2005).  "Significant, unexplained, or systematic deviations from established policies or practices can no doubt be relative and probative circumstantial evidence of [unlawful] conduct."  *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 645 (7th Cir. 2013).

### i.  Hartz violated government and DFAS interview policy by asking non-job-related questions in his interviews of the candidates.

DFAS Regulation No. 14 02.1-1 states, "*All* (emphasis supplied) questions used in a selection interview must be job related and tied to the skills or competencies identified in the job analysis.  The same questions, in the same order, should be asked of all applicants who are interviewed." (Exh 12: DFAS Policy 1402.1-1, 19.)

A careful review of the questions Hartz asked or did not ask, reveals that he failed to limit his interview questions to job-related function as required by DFAS Policy No. 1402.1-1. (Exh 13: Jones Declaration, DFAS000208.)

Jones, who attended the applicant interviews that Hartz conducted, stated in a sworn statement that Hartz did not ask job-related questions. For example,

> Q. (EEO Investigator) "The vacancy announcement states one of the responsibilities of the position was to provide advisory and consultative services to employees and managers regarding the regulations, policy, and program delivery of employee retirement, health and life insurance programs; Thrift Savings Plan (TSP) and workers compensation program.  Please

describe what knowledge skills, experience and/or training the selectee had with this function."

R: (by Jones) "*We did not ask any interview question specific to that responsibility* (emphasis supplied).  Based on the responses in the interview, he had experience in several areas of HR, to include classification, benefits, and EEO.  He had experience in leadership for more than 30 years." (Exh 13: Jones Declaration, DFAS000208.)

Another example of non-job-related interview question:

> Q. (EEO Investigator) "The Vacancy announcement states one of the responsibilities of the position was to represent the Agency to serviced customers in providing high level policy advisory services regarding current or proposed program regulations or service delivery.  Please describe what knowledge, skills, experience, and/or training the selectee had with this function."
>
> R.  (Jones) "*We did not ask any interview question specific to that responsibility* (emphasis supplied), No responses during the interview demonstrated the knowledge, skills, experience, and/or training he had with this function." (Exh 13: Jones Declaration, DFAS000208.)

As in *Hobgood*, Hartz's deviation from DFAS Policy requiring the interviewer to limit his/her questions to job-related questions is circumstantial evidence of discrimination. Accordingly, whether the interview questions should have been limited to job-related is a material fact in dispute, and the District Court erred in finding that the interview questions were job related.  (Dkt 63: District Court's Ord. Granting Def. Mtn. for Summ. Judg., 20, 22.)

> ii.  **Locke violated DFAS policy by not making the selection for the GS-13 position within 120 days from the date the announcement closes and instead deferring the selection to Hartz.**

DFAS policy requires the selecting official to make his/her selection as soon as possible, but no more than 120 days from the date the announcement closes.

(Exh 12: DFAS Policy 1402.1-1, DFAS000238.)  Locke, however, deferred the

selection for the GS-13 position until Hartz selected Griffin for the position on June

14, 2018, 220 days after the close of the vacancy announcement in early November

2017.  (Exh 24: Final Agency Decision, DFAS 000309.)  Locke passed off the

selection decision to Hartz, the newly promoted Chief of Benefits, despite the need

to fill the position so as not to hamper the Benefits department's mission

fulfillment. Logically assuming that a vacancy needs to be filled as soon as possible

in order to fulfill an agency responsibility, Locke should have filled the vacancy as

soon as possible.

Locke was in the best position, compared to Hartz, to select for the GS-13

Benefits Supervisor because he had supervised the Benefits division for two years

and was far more familiar with qualifications of the respective candidates than was

Hartz.  Locke had been the Supervisor of the Benefits department since 2015,

having taken over for Kennedy, the previous Supervisor of Benefits.  (Exh 16: Locke

Deposition, 19:14-18; 26:10-14.)

For the three years preceding Hartz's on-boarding as Chief of Benefits, Locke

had supervised and observed all the applicants' job performances– Cunningham,

Fisher, Opat, and Griffin (Exh 16: Locke Deposition, 29:6-17; 29:18-30:5; 30:6-23;

65:3-23.)  Hartz, on the other hand, had only two months (April – June 2018)

experience working with or supervising the candidates.

Locke had issued at least two performance evaluations to Cunningham; thus,

he was well aware of her performance and leadership potential. (Exh 20:

Cunningham Performance Plan & Evaluations.) For 2016-2017, the year prior to the GS-13 selection, Locke issued Cunningham the top rating of "Exceeds" in *Leadership, Communication, and Employee Engagement* component of her Performance Evaluation. (Exh 20: Cunningham Performance Reviews, DFAS001465-DFAS001466.)

Notably, in the Leadership, Communication, and Employee Engagement section of her 2016-2017 Performance Evaluation, Locke stated,

> Denise exceeds this element based on the strength of her engagement with the benefits staff and the HR Customer Care Center staff. Denise reviews the new work received daily and determines to whom it should be assigned. Denise assigns new work through the QSL log and provides clear direction to employees pointing out unusual cases and situations that require review or special attention. Denise successfully balances the workload among the staff less experienced staff and staff in training receive assignments that develop them without overwhelming them.
>
> Denise regularly conducts team meetings to go over unusual cases and to discuss the policy or regulatory questions, solicit staff input, and answer any lingering questions. Denise's verbal and written communication are clear and concise and appropriately includes the Division chief on new or unusual issues, issues that may become sensitive, or issues likely to be elevated to higher level. Denise exercises excellent judgment in these situations for possible unintended consequences.
>
> This rating year Denise integrated one new employee to the team. This task was complicated because while this person is learning his new job he continues to support the HR Customer Care Center. Denise's challenge was further exacerbated this year because two important clerical support positions were vacant longer than intended due to the government-wide hiring freeze.
>
> Denise provides daily feedback to the staff tailored to the staff member and the situation. Denise is highly engaged in the day-to-day operational activities of the team. Denise is unfailingly available to any and all staff to discuss any situation, provide guidance or

make a decision. This includes assisting the Customer Care Center staff responding promptly to telephone inquiries. Denise will drop whatever she is doing to ensure the CCC can provide the best possible service to our callers. Denise by her own example has instilled in all of us the customer service expectation that resulted in everyone, whether their responsibility or not, volunteers to assist at the customer service desk.

(Exh 20: Cunningham Performance Reviews, DFAS001465-DFAS001466.)  Locke's evaluation of Cunningham's leadership ability as "Exceeds" undermines Defendant's argument that Griffin had better leadership qualities.

Admittedly, Locke explained his deviation from the 120-day fulfillment policy as his desire to allow the incoming Chief to make the selection.  However, a jury could easily disbelieve his explanation given that: 1) a vacancy announcement pre-supposes a need; 2) a need presupposes that it should be filled as quickly as possible; 3) Locke was the most knowledgeable regarding the candidates; 4) Locke was better qualified than Hartz to make the best selection;  5) DFAS policy requires the selection of the best qualified candidate;  and 6) the selection of the best qualified candidate would enhance the quality of the agency's operations.

Locke's failure to select within 120 days is circumstantial evidence of pretext and discrimination.

Locke's deferral of making the selection decision begs the question, why? Locke had been the subject of two EEO complaints around the time of the selection.

Despite the fact that Locke rated Cunningham as "Exceeds" in Leadership, he denigrated her leadership skills in his deposition.  For example,

Q: The question was, did Ms. Cunningham lack the talent or the skills to motivate her employees.  That's either yes or no.

> A: I don't feel like Ms. Cunningham has leadership, motivation, communication, political savvy to be, at that time, my experience with Ms. Cunningham when I supervised her was I had to intercede in situations that I didn't think she handled well.

(Exh 16: Locke Deposition, 81:2-12.

In 2016 and 2017, Locke had two EEO Complaints filed against him, one of which was for race discrimination complaint and the other was retaliation. (Exh 16: Locke Deposition, 82:13-83:22; Exh 11: Howard Locke EEO Complaints.) The reasonable juror could conclude that Locke avoided making the GS-13 Supervisor selection in November 2017 because he did not want to have to select Cunningham who was the best qualified and if he did not select her, risk another EEO complaint against him.

A substantial delay of 220 days in making the selection is evidence of pretext and should be resolved by the jury. The reasonable juror could logically conclude that the delay in selecting for the GS-13 position hampered agency operations which is not what an employer would normally do. This intentional delay, which presumably hampered agency operations, is also evidence of pretext and should be adjudicated by a jury.

**b. Hartz relying on subjective interview criteria to make the GS-13 selection is evidence of pretext.**

A reasonable jury could find pretext where the employer relies on subjective interviews. *Levine v. DeJoy*, 64 F.4th 789, 800 (6th Cir. 2023); *Stoe*, 960 F.3d at 644. "[A]lthough employers may of course take subjective considerations into

account in their employment decisions, courts traditionally treat explanations that rely heavily on subjective considerations with caution." *Stoe*, 960 F.3d at 644. For summary judgment purposes, it is "highly inappropriate" for a court to assume Defendant's subjective decision is accurate. *Levine*, 64 F.4th at 800. An employer's stated reliance on a subjective interview is "easily susceptible to manipulation in order to mask the interviewer's true reasons for making the promotion decision." *Id.* "[S]ince the very issue in dispute is whether the reasons given by [the interviewer] for [his] decision should be believes, it would be highly inappropriate for [the Court] to assume … that [his] own subjective perception of [the plaintiff was] accurate." *Id.*

Hartz relied almost exclusively on his subjective interviews and thereby manipulated the interview process to "mask" Cunningham's superior qualifications. Indeed, Hartz gave two subjective answers regarding the reason for selecting Griffin. He gave Cunningham his subjective reason that Griffin was "more rounded." (Exh 15: Cunningham Deposition, 81:21-82:1.) He gave a different answer in his deposition that Griffin gave "stronger answers" to the interview questions. (Exh 1: Hartz Deposition, 99:14-100:8.)

Hartz's manipulation of the interview, i.e., asking non-job-related questions, is analogous to *Stoe*, where the DC Circuit Court of Appeals stated that a reasonable jury could easily see evidence of pretext where the plaintiff's second-line supervisor designed the interview process to mask the plaintiff's superior qualifications and to manipulate the scoring of candidates by writing and weighing

the interview questions himself and adopting his own criteria. *Stoe,* 960 F.3d at 644. In *Stoe*, where the selecting official made the decision entirely on interviews and where plaintiff had superior qualifications, the Court held that a reasonable jury could *easily* (emphasis supplied) see this as evidence of pretext. *Id.*

Here, although Hartz did not base his selection "entirely" on his interviews, he relied "heavily," or 80%, on his interviews. This amounts to a distinction without a difference, particularly when he did not explain what other basis, i.e., the remaining 20%, he relied on to make his decision. Indeed, Jones, the observer/witness to Hartz's interviews, confirmed that Hartz did not ask any job-related questions in his interviews. (Exh 13: Jones Declaration, DFAS000208.)

Hartz ignored the qualifications guidelines and the job responsibilities listed in the vacancy announcement and applied his own criteria by crediting Griffin with his private sector HR experience. Griffin's private sector HR experience was over nine years old at the time of his selection, and was irrelevant to the job of federal benefits supervisor. (Exh 3: Griffin Resume.) Hartz ignored Cunningham's contemporaneous and relevant experience in supervising the federal benefits team. Hartz also ignored the fact that Cunningham was actually performing all the essential elements of the GS-13 position in question, albeit at the lower grade of GS-12.

Cunningham presented evidence of pretext by pointing out that the selecting official only announced his selection criteria post hoc when he told Cunningham that he selected Griffin because he was "more rounded." (Exh 15: Cunningham

Deposition, 81:21-82:1.)  But Hartz did not notify any of the candidates prior to his interviews that he was looking for "more rounded" experience in HR outside of federal benefits experience.  (Exh 15: Cunningham Deposition, 81:21-82:1.)

The District Court also failed to credit Cunningham with other evidence of pretext.  E.g. Cunningham produced evidence that Griffin never took on the supervisory responsibility for the Workers Compensation team; rather, Hartz retained that responsibility.  Hartz had Griffin continue to supervise the Customer Care Center.  (Exh 6: Griffin Deposition, 33:4-23.)

Thus, a jury could find that Hartz's selection of Griffin was nothing more than a sham because Hartz did not hold Griffin to the full level of responsibilities called for in the GS-13 Supervisor position.  The GS-13 Supervisor position called for the incumbent supervise the Workers Compensation team and the benefits team, but not the Customer Care Center. (Exh 9: Vacancy Announcement.)

## III.    The District Court erroneously considered Defendant's honest belief affirmative defense.

An "honest belief" defense is an affirmative defense.  See, e.g., *Ousley v CG Consulting,* No. 2:19-cv-01744, 2023 U.S. Dist. LEXIS 130661, *1-2 (S.D. Ohio July 27, 2023); *Hance v. BNSF Ry. Co.*, 645 Fed. Appx. 356, 366 (6th Cir. 2016).

The Seventh Circuit has held that a Defendant who fails to plead an affirmative defense in its Answer to the Complaint may have forfeited it.  *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 478 (7th Cir 2019).  Here, Defendant failed to raise its affirmative defense of "honest belief" until the summary judgment stage

when it raised for the first time its "honest belief" defense in its Brief in Support of Motion for Summary Judgment.  (Dkt 45:  p 22, 23, Def. Brief. in Support of Mtn. for Summ. Judg.)

"A defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense." *Venters v. City of Delphi*, 123 F.3d 956, 968 (7th Cir. 1997).  "The appropriate thing for the defendant to do, of course, is to promptly seek the court's leave to amend his answer."  *Id.*  "His failure to do so risks a finding that he has waived the defense."  *Id.*  Thus, a defendant is obligated to timely notify the opposing party of its affirmative defense so as to provide adequate notice to the opposing party.  *Id.*  The District Court is not bound to apply the forfeiture rule rigidly but should apply it if the plaintiff is harmed by the defendant's delay in asserting it.

Because Defendant in this case did not assert its "honest belief" affirmative defense until well after discovery closed and raised such defense only in its Brief in Support of Motion for Summary Judgment, Plaintiff was harmed because she had no notice of the defense and no opportunity for discovery related to the belated defense.  Cunningham has been prejudiced by the District Court's acceptance of Defendant's "honest belief" defense.

The "honest belief" defense is an affirmative defense which Defendant is required to prove, rather than merely assert.  Here, Defendant has offered no proof, other than a series of conclusory subjective opinion statements, that Hartz legitimately selected Griffin because he was the best-qualified candidate.

41

Even if this Court accepts Defendant's "honest belief" affirmative defense for consideration, Cunningham argues that the District Court erroneously credited Hartz, based on his subjective interviews, as having held an "honest and well-intentioned belief" that he had selected the best qualified candidate. (Dkt 63: District Court's Ord. Granting Def. Mtn. for Summ. Judg., 20, 23.).

In doing so, the District Court mischaracterized Cunningham's testimony regarding what Hartz was thinking when he selected Griffin. The District Court mischaracterized Cunningham's testimony as "conced[ing] the non-pre-textual grounds for her non-selection when she stated in her deposition that Mr. Hartz likely "thought Mr. Griffin was more suitable." *Id.* Cunningham was not conceding, she was merely parroting the reason(s) given to her by Hartz as to why he selected Griffin.

This does not mean that Cunningham agreed with Hartz's reasoning. The District Court ignored Cunningham's other testimony as to why Hartz did not select her – because she is an African American female. She testified in her deposition that she believed Hartz did not select her because he was "not looking forward to working with a female." (Exh 15: Cunningham Deposition, 108:24-109:6.) She also testified that "I felt like I was the best qualified for this GS-13 position that I didn't get and Mr. Hartz and his management chain apparently supported his selection." (Exh 15: Cunningham Deposition, 103:13-16.) The District Court selectively accepted Defendant's honest belief argument, ignoring Cunningham's evidence of pretext.

42

Pretext as a cognizable reason to defeat summary judgment was established in *St. Mary's Honor Ctr* by the Supreme Court. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). If a jury disbelieves the honesty of the reason articulated by a defendant, it may find for the plaintiff. *Id.* at 511. Interestingly, the Supreme Court has never endorsed the affirmative defense of "honest belief." The "honest belief" defense is a single edged sword designed to give defendants an escape hatch, merely by asserting that it held an honest belief that it was doing the right thing.

Assessing Defendant's "honest belief" defense necessarily involves *determining credibility,* the role which the District Court erroneously assumed for itself. Credibility assessments are within the sole province of the jury. Moreover, if evidence of pretext is persuasive, then the reasonable juror could find that Defendant's so-called "honest belief" is really not true.

In *Stoe v Barr,* quoting from *Salazar v. Wash. Metro. Area Transit Auth.*, 401 F.3d 504, 510 (D.C. Cir. 2005), the court found that a reasonable jury could infer that the interview panelists "selected an interview agenda which, though facially acceptable, was designed to downplay [the plaintiff's] strengths." *Stoe*, 960 F.3d at 645.

The Supreme Court has held that evidence submitted by an interested party, if controverted by other evidence, including sworn testimony, is to be ignored. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151 (2000). Here, Hartz is an "interested party" with a substantial stake in the outcome of the Court's decision.

Because Hartz is an "interested party," the District Court should not have accepted his subjective opinion that he selected Griffin because he was "more rounded."

The District Court erroneously credited Defendant with Hartz's "honest belief" that Griffin was better qualified than Cunningham and in doing so, declared that "her personal beliefs are no substitute for Mr. Hartz's honest and well-intentioned beliefs about who ultimately qualified as the best selectee." (Dkt 63: District Court's Ord. Granting Def. Mtn. for Summ. Judg., 23.) It should have been the other way around – the District Court should have drawn all inferences of Cunningham's vastly superior qualifications and experience in favor of Cunningham.

Thus, because Hartz is an "interested party" and whose testimony is controverted by Cunningham's evidence, the District Court should not have credited Hartz's stated reason for selecting Griffin as a matter of law.

Hartz's testimony that he selected Griffin because he was "more rounded" is controverted by the fact that:

    1) Hartz did not ask any questions regarding the respective candidates' past experience relevant to the Benefits Supervisor position;

    2) Hartz failed to take into consideration the fact that Cunningham was already doing the job, albeit at a lower grade level.

Courts have held that a selecting official's failure to consider that the applicant is actually performing the job is evidence of pretext. E.g., "Moreover, Tillery did not ask any questions regarding experience relevant to the position. This

is critical, because Stoe had been performing many of the responsibilities of the Division Director position already." *Stoe*, 960 F.3d at 645.

Hartz admitted that the better predictor of future successful performance than *a single interview* is a record of successful past performance. (Exh 1: Hartz Deposition, 54:18-55:4.) He also admitted that both Cunningham's position as Supervisor of Benefits and Fisher's position as Team Lead of Worker's Compensation were more similar to the GS-13 Supervisor job than Griffin's job as Team Lead of the Customer Care Center. (Exh 1: Hartz Deposition, 53:16-54:3.).

In this case, Cunningham, not Griffin, had the record of successful past performance in benefits. Hartz did not make his selection based on his own admitted evaluative standard of predicting successful future job performance by examining successful past performance. Instead, he made the selection based on a single interview. Thus, he admitted to using a less effective method of selection. (Exh 1: Hartz Deposition, 54:18-55:18.) Hartz's selecting the male applicant, Griffin, over two more qualified female applicants, Cunningham and Fisher, is evidence of pretext.

## IV. Cunningham could have been non-competitively promoted to GS-13 and GS-14 due to the accretion of the additional duty of supervising the Workers Compensation team.

In the spring of 2017, DFAS HR Classification team, led by Kim Cevelo, conducted a "desk audit" of Cunningham's GS-12 Benefits Supervisor position for the dual purpose of increasing the position from GS-12 to GS-13 so as to provide a

possible career path for promotion from GS-12 to GS-14 from within the Benefits division and to examine whether the position was properly graded.

Part of the process of conducting the "desk audit" is to obtain information as to the duties and responsibilities of the position being audited. (Exh 4: Cunningham Affidavit, 4:47.) Cevelo interviewed Cunningham regarding the duties and responsibilities because Cunningham had been deemed to be the Subject Matter Expert for federal benefits. (Exh 4: Cunningham Affidavit, 4:47-49.) As reflected in her Resume, Cunningham had, periodically, assumed responsibility for the Workers Compensation team, thus reflecting an accretion of additional duties beyond her assigned duties as Benefits Supervisor. (Exh 5: Cunningham Resume.) Moreover, she had additional accretion of duties as acting Benefits Chief in the absence (sometimes for months when the Benefits Chief position went unfilled) of the assigned Chief of Benefits. (Exh 4: Cunningham Affidavit, 4:39-40.) During the course of her interview of Cunningham, Cevelo told Cunningham that it was her (Cunningham's) GS-12 Benefits Supervisor position that was going to be elevated to GS-13. (Exh 4: Cunningham Affidavit, 5:50.)

After the desk audit, Hendrickson, who was the Director of DFAS HR, submitted a request to John Witter, her boss, to approve a GS-13 Benefits Supervisor position within the Benefits division so as to provide a career path for those employees working in Benefits division. (Exh 19: Email from Kathleen Hendrickson to Jonathan Witter.) Prior to this, it was impossible for anyone working in Benefits to be promoted from GS-12 to GS-13 within Benefits. The only

way to get promoted to GS-13 was to seek a promotion outside of the Benefits section because there were no GS-13 positions within the Benefits section.

The audit team concluded that a GS-13 position within Benefits was justified, and that Cunningham's current GS-12 Supervisory position was properly graded as a GS-12 *Supervisor* (emphasis supplied). (Exh 8: Desk Audit Summary.) The desk audit further concluded that a GS-13/14 Chief of Benefits position be created "to afford current employees with the breadth and depth of experience in the functional areas to apply/compete." (Exh 8: Desk Audit Summary, DFAS0000726.)

DFAS Reg 1402.1-1, Exceptions To Competitive Procedures section, allows for non-competitive promotion to a "development" position, e.g. GS-13/14, wherein the incumbent employee is first non-competitively promoted to GS-13, then automatically promoted to the full position of GS-14.

In creating the GS-13/14 position, DFAS management overlooked its opportunity to non-competitively promote Cunningham in accordance with DFAS Reg 1402.1-1 to GS-13/14 even though she was for all practical purposes performing the job of Chief of Benefits without the supervisory responsibility over Workers Compensation. After the completion of the desk audit, Cunningham asked Locke if she would be promoted to the GS-13 position but he never responded. (Exh 4: Cunningham Affidavit, 5:52.) As the incumbent of the position that had accreted addition duties, Cunningham met the criteria outlined in the "accretion of Duties" that permits "[p]romotion of an employee when his/her position is classified to a

47

higher grade due to accretion of duties and responsibilities…" (Exh 12: DFAS Policy 1402.1-1, DFAS000228-DFAS000229.)

In every situation up until Cunningham was finally promoted to GS-13 in August 2022, she was bypassed for promotion even though Defendant could have non-competitively promoted her using the developmental promotion tool outlined in DFAS Policy 1402.1. Cunningham, while acting and working as the Benefits Supervisor, was forced to train white managers who had no prior experience in federal benefits to take over as Benefits Supervisor or Chief of Benefits. Since around 2007, Cunningham was required to train Fran Jacobs (white), Kennedy (white female), Locke (white male), and Hartz (white) in federal Benefits programs, none of whom had prior federal benefits experience but all of whom were promoted to GS-13 or GS-14 as Supervisor of Benefits, but not Cunningham. (Exh 4: Cunningham Affidavit 3:30.)

Therefore, the District Court could have inferred that Locke's failure to non-competitively promote Cunningham to the GS-13 position is evidence of discrimination.

## V.      The District Court erroneously excluded Cunningham's statistical evidence included in the MD 715 Report.

At some point prior to 2017, DFAS launched an initiative to obtain data, ostensibly for the purpose of rectifying the problem under-promoting African American females within DFAS, including DFAS HR. DFAS created a "Black Female Barrier Actions Advisory Group." This group collected data with respect to

48

the level of minorities represented in upper management (GS-11 and above). The data was collected in a report known as MD-715. (Exh 22: DFAS MD-715 Report.)

The MD-715 report shows that in Fiscal Year 2017 (October 1, 2016 – September 30, 2017), African American females within DFAS HR (where Cunningham worked) had a much lower rate of selection (3.57%) for promotion to grade above GS-10 than African American males (15.38%). (Exh 22: DFAS MD-715, 28.) The report also reflects a pattern of not promoting HR African American females to GS-13 (only 5.26%) even though African American females represented 26.60% of the GS-12 population within DFAS HR. (Exh 22: DFAS MD-715, 26.)

"[A] plaintiff can demonstrate pretext in a variety of ways, including by presenting evidence of the employer's past treatment of the plaintiff or its practices with respect to minority employment" *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 739 (7th Cir 2006). Cunningham presented statistical evidence of how the employer treated "minority employment" in the past in the form of the MD-715 Report.

Here, the District Court erroneously excluded Cunningham's statistical evidence in ruling that the Fiscal Year 2018 MD 715 report showing that African American females were promoted to GS-11 – GS-15 at a significantly lower rate was applicable only to disparate impact claims and not applicable to Cunningham's disparate treatment claim. (Dkt 63: District Court's Ord. Granting Def. Mtn. for Summ. Judg., 17.) Statistical information may be used to show discrimination and/or pretext in disparate treatment cases.

49

Moreover, Cunningham presented evidence of "past treatment" of her. She presented evidence that she was overlooked for non-competitive promotion to GS-13/14 as suggested by the "desk audit." (Dkt 48: Pl. Brief in Opp. To Def. Mtn. for Summ. Judg., 4, 8.). Locke, in November 2017, declined to make the selection within 120 days as required by DFAS policy so as to avoid the anticipated outcome that Cunningham would be selected because of her superior qualifications of being subject matter expert, because she had been serving successfully as Benefits supervisor for over six years, and because of her superior qualifications compared to Griffin's qualifications.

Statistical evidence may be used in conjunction with other evidence of disparate treatment, such as pretext. "In conjunction with other evidence of disparate treatment, however, statistics can be probative of whether the alleged disparity is the result of discrimination." *Kidd v. Illinois State Police,* 167 F.3d 1084, 1101 n.16 (7th Cir. 1999) (citing *McDonnell-Douglas Corp. v. Green*, 411 U.S 792, 805 (1973)). "Although the statistics in this case may be too broad to support a prima facie case of systemic disparate treatment, they can be admitted as probative evidence indicating pretext." *Bell v. EPA*, 232 F.3d 546, 552-553 (7th Cir. 2000).

The MD-715 report reflects the proverbial "glass ceiling" African American women hit at DFAS. The MD-715 report, which the District Court rejected, shows that African American females were promoted to GS-11 through GS-15 positions at less than 25% the rate of promotion for African American males within HR. The "glass ceiling" effect is probative of discrimination against Cunningham as an

African American female when combined with other evidence of pretext. Cunningham acknowledges that statistical evidence alone does not prove pretext; however, when combined with other evidence of pretext such as her superior qualifications and experience, statistical evidence is probative of pretext.

## VI.    Cunningham's "abandoned claim" was not presented as an active claim but was presented to show a past pattern of non-selection.

It is true that Cunningham abandoned her claim of discrimination of Defendant refusing to recruit for Chief of Benefits position as a GS-13/14 so as to allow Cunningham (the likely successful applicant) from getting promoted.

However, Cunningham argues that even though she does not make a legal claim of discrimination when Defendant did not exercise its discretion to non-competitively promote her to GS-13/14, the facts surrounding the refusal to promote her is submitted as evidence of pattern of non-selection and Defendant's ongoing state of mind.  This evidence, combined with MD-715 report and her non-selection despite her vastly superior qualifications could lead a jury to conclude that Defendant had a continuing bias against Cunningham based on her status as an African American female.

Cunningham agrees that this evidence alone would not likely lead a jury to find for her; however, this evidence combined with the deliberate selection of Hartz, a white male who had no prior experience in federal benefits, as the GS-14 Chief of Benefits, combined with the other evidence described above could lead the reasonable jury to find for Cunningham.

## CONCLUSION

Because Cunningham has produced ample evidence of pretext and pointed to many material facts in dispute, this Court should reverse the District Court's grant of Defendant's Motion for Summary Judgment.

Respectfully submitted,

*/s/ Tae Sture*
Tae Sture, Attorney No. 25120-29
Sture Legal Services, LLC
155 East Market Street, Suite 501
Indianapolis, IN 46204
Email: tae@sturelaw.com
Ph: (317) 577-9090
Fax: (317) 577-1102

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed electronically on June 17, 2024. Notice of this filing will be sent electronically to the following parties via the Court's electronic filing system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system. Parties may access this filing through the Court's electronic filing system.

Rachana N. Fischer
Assistant United States Attorney Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis, IN 46204-3048
Telephone No.: (317) 226-6333
Fax No.: (317) 226-5027
Email: rachana.fischer@usdoj.gov

*/s/ Tae Sture*
Tae Sture
Attorney for the Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    _x_ this document contains 12127 words, **or**

    __this brief uses a monospaced typeface and contains [state the number of ] lines of text.

2. This brief complies with the typeface requirements of Fed. R. App. P 32 (a)(5) and the type style requirements of Fed. R. App. P 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word, Centruy, 12-point font.

*/s/ Tae Sture*
Tae Sture
Attorney for the Plaintiff-Appellant
Sture Legal Services, LLC
155 East Market Street, Ste 501
Indianapolis, IN  46204
Ph: (317) 570-9090
Fax: (317) 577-1102
Email:  tae@sturelaw.com

## CERTIFICATION

I hereby certify that all materials required by Circuit Rule 30(a) and (b) are included in this Short Appendix of Appellant.

*/s/Tae Sture*
Tae Sture
Attorney for the Plaintiff-Appellant


## CIRCUIT RULE 31(B) CERTIFICATION

I, Tae Sture, hereby certify that the fifteen paper copies of the Appellant's Reply Brief and required Short Appendix will be sent within 7 days of filing via the Court's ECF system via commercial carrier to:

United States Court of Appeals
Seventh Circuit
219 S. Dearborn, Room 2722
Chicago, IL 60604


*/s/ Tae Sture*
Tae Sture
Attorney for the Plaintiff-Appellant

**THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| GWENDOLYN D. CUNNINGHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CASE NO.:  1:22-cv-00165-SEB-TAB |
| v. | ) |
| | ) |
| LLOYD J. AUSTIN III, in His Official | ) |
| Capacity as Secretary of the United States | ) |
| Department of Defense, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S NOTICE OF APPEAL**

Notice is hereby given that Plaintiff, Gwendolyn D. Cunningham, by counsel, hereby

appeals to the United States Court of Appeals for the Seventh Circuit on the *Opinion and Order*

granting Defendants' Motion for Summary Judgment entered in this action on the 1st day of

December 2023.

Plaintiff files her Notice on this date because the Court, upon Ex Parte Motion from

Plaintiff, extended the time to file her Notice of Appeal from December 29, 2023, to January 30,

2024.  See Dkt. No. 66.


*/s/ Tae Sture*_____
Tae Sture
Sture Legal Services, LLC
Attorney for Gwendolyn D. Cunningham
155 E. Market Street, Suite 501
Indianapolis, IN 46204
Ph:  (317) 577-9090
Fax:  (317) 577-1102
E-mail: tae@sturelaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed electronically on January 30, 2024.  Notice of this filing will be sent to the following parties via the Court's electronic filing system.  Parties may access this filing through the Court's electronic filing system.

Rachana N. Fischer
Assistant United States Attorney
Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis, IN 46204-3048
Telephone No.: (317) 226-6333
Fax No.: (317) 226-5027
Email: rachana.fischer@usdoj.gov


*/s/ Tae Sture*
Tae Sture

THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

GWENDOLYN D. CUNNINGHAM,    )
                           )
        Plaintiff,         )
                           )   CASE NO.:  1:22-cv-00165-SEB-TAB
        v.                 )
                           )
LLOYD J. AUSTIN III, in His Official   )
Capacity as Secretary of the United States   )
Department of Defense,     )
                           )
        Defendant.         )

## PLAINTIFF'S DOCKETING STATEMENT

Pursuant to the Court's Order on June 2, 2022, Appellant (Plaintiff), Gwendolyn D. Cunningham, by counsel, hereby files her Docketing Statement as follows:

## I.    JURISDICTION OF THE DISTRICT COURT

The district court had jurisdiction as a civil action arising under the laws of the United States pursuant to 29 U.S.C. § 2615 *et seq*, U.S.C. S 12101, *et seq*, and 42 U.S.C. § 1983.

## II.    JURISDICTION OF THE COURT OF APPEALS

This appeal is taken from the final decision of the U.S. District Court for Southern District Court on December 1, 2023.

The Court of Appeals has jurisdiction over this appeal pursuant to 28, U.S.C. § 1291.

The original due date for the filing of the Notice of Appeal was December 31, 2023.  On December 11, 2023, Appellant (Plaintiff) filed her *Ex Parte Motion for Enlargement of Time to File Her Notice of Appeal* (DKT 65).  On December 13, 2023, the District Court granted

Appellant's (Plaintiff's) *Ex Parte Motion for Enlargement of Time to File Her Notice of Appeal*, which extended the time to file to January 30, 2024 (DKT 66).

Because this appeal is from a summary judgment in favor of Defendants, there was no disposition of any motion for a new trial.

This case is not a direct appeal from a decision of a Magistrate Judge.

This appeal is sought from the final judgment (DKT #64) of the U.S. District Court for Southern District Court issued on December 1, 2023, which disposes of all claims with respect to all parties.

Dated this 30th day of January 2024

Respectfully submitted,

*/s/ Tae Sture*
Tae Sture
Sture Legal Services, LLC
155 E. Market St., Ste. 501
Indianapolis, IN  46204
Ph:     (317)577-9090
Fax:    (317)577-1102
Email:  tae@sturelaw.com

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on January 30, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


     Rachana N. Fischer
     Assistant United States Attorney
     Office of the United States Attorney
     10 West Market Street, Suite 2100
     Indianapolis, IN 46204-3048
     Telephone No.: (317) 226-6333
     Fax No.: (317) 226-5027
     Email: rachana.fischer@usdoj.gov


     */s/ Tae Sture*
     Tae Sture

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GWENDOLYN D CUNNINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00165-SEB-TAB |
| | ) | |
| LLOYD J AUSTIN in His Official Capacity as | ) | |
| Secretary of the U.S. Department of Defense, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Gwendolyn D. Cunningham ("Ms. Cunningham") filed this lawsuit against her employer, Defendant Lloyd J. Austin ("Defendant"), in his official capacity as Secretary of the United States Department of Defense, alleging that she was denied a promotion based on her race and sex, in violation of Title VII. *See generally* 42 U.S.C. § 2000e-2. Defendant moved for summary judgment. Dkt. 44. For the reasons explained below, Defendant's Motion for Summary Judgment is **GRANTED**.

## I.    STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment standard requires "no *genuine* issue of *material* fact," meaning that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247−48 (1986) (emphasis in original).

1

Material facts are those that "might affect the outcome of the suit," and a dispute of material fact is genuine when "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

Summary judgment is neither "a vehicle for resolving factual disputes" nor a means to a "paper trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). As such, in evaluating a summary judgment motion, the district court need not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Id.* Indeed, those tasks belong to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). "The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge*, 24 F.3d at 920 (citing *Anderson,* 477 U.S. at 249–50). When deciding whether a genuine dispute of material fact exists, the court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572 (7th Cir. 2021).

At summary judgment, parties may support their assertions of undisputed facts by citing to record materials, including affidavits, declarations, and depositions. *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 955 (7th Cir. 2021) (citing Fed. R. Civ. P. 56(c)(1)(A)). Despite the reality that these record materials "by their nature are self-serving," they are nonetheless admissible on a summary judgment motion. *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013).

Recognizing that summary judgment motions are often "tedious and time consuming," our Local Rules require parties to "submit factual statements to assist with identifying

2

and isolating the disputed from the undisputed—all to help the court assess whether a particular claim should proceed to trial or instead can be resolved on the existing record." *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020) (citing S.D. Ind. L. R. 56-1). Our Local Rules specifically require the non-moving party to respond with a "Statement of Material Facts in Dispute" that "identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." S.D. Ind. L. R. 56-1(b). To comply with this rule, the nonmovant's response "should contain concise statements of fact, not extended statements of argument." *Pike v. Caldera*, 188 F.R.D. 519, 525 (S.D. Ind. 1999)[1]; *see* S.D. Ind. L.R. 56-1 (Advisory Committee Comments Re: 2002 Amendments) (statement of facts must "state facts, not the party's argument"); *Hinterberger*, 966 F.3d at 527 (stating that the Local Rules "prohibit[ ] the inclusion of any argument—which should be saved for briefing"). "[F]actual inferences do not constitute an appropriate inclusion" in a statement of facts, for courts "must have a clear picture of the facts" before deriving reasonable inferences therefrom. *Id.*

## II.    FACTUAL & PROCEDURAL BACKGROUND

Before turning to our recitation of the facts, we pause to comment briefly on Ms. Cunningham's noncompliance with our Local Rules. Her "Statement of Material Facts in Dispute" contains numerous legal arguments, *see, e.g.*, Pl.'s Resp. at 9, 11, 19, dkt. 48,

---

[1] Though this decision discusses the since-amended Local Rule on summary judgment procedure, its admonition against integrating legal argument into factual assertions remains consistent with our current rule.

APPELLANT000008

which our Local Rules explicitly prohibit from being inserted as disputed material facts. Ms. Cunningham's intermingling of facts and arguments hinders what ought to be the parties' clear mustering of the facts.

The Seventh Circuit has "repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings." *Stevo v. Frasor*, 662 F.3d 880, 887–88 (7th Cir. 2011). Though we choose not to exercise the full breadth of our authority here (for example, by striking non-compliant portions of Plaintiff's submissions), we remind Ms. Cunningham's counsel of the "responsibility to present th[e] facts in the manner dictated by local court rules." *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002).

Notwithstanding the challenges imposed by Ms. Cunningham's non-compliance, we have successfully culled the facts as follow below, drawing all reasonable inferences in Ms. Cunningham's favor.

### A.    Ms. Cunningham's Employment at the Defense Finance and Accounting Service

The Defense Finance and Accounting Service ("DFAS"), a sub-agency of the Department of Defense, is responsible for processing all payments to servicemembers, employees, retirees, annuitants, and major Department of Defense contractors and vendors. Ms. Cunningham began her work for the DFAS in 1988 as a parttime secretary, a position ranked at the GS-4 level.[2] In 1991, Ms. Cunningham transitioned to a fulltime secretarial

---

[2] "GS level" refers to the General Schedule classification and pay system used for most federal civilian jobs. There are fifteen grades, starting at GS-1 and ending at GS-15.

APPELLANT000009

position, and, by 1994, she was promoted to retirement counselor at the GS-5 or 6 level. As a retirement counselor, Ms. Cunningham provided other employees with certain estimates of their predicted monthly annuity payments. She progressed through the ranks while in this role, eventually hitting the GS-7, GS-9, and GS-11 ranks.

The Benefits and Services Division ("Benefits Division"), a division of the DFAS's Human Resources Department, oversees retirement calculations, workers compensation claims, and a Customer Care Center. Prior to a 2018 restructuring, the Benefits Division was led by a GS-14 Benefits Division Chief ("GS-14 Division Chief"), who oversaw three teams: the Benefits and Services team, the Customer Care Center team, and the Workers Compensation team. Each team was led by a specific GS-12 employee: Ms. Cunningham led the Benefits team as Benefits Supervisor, which role she assumed in 2012 after ten years as a team lead; Emanuel Griffin ("Mr. Griffin") led the Customer Care Center as a team lead; and Anita Fisher ("Ms. Fisher") led Workers Compensation as a team lead.

Though similarly ranked as GS-12 positions, team leads had less supervisory responsibilities than supervisors, like Ms. Cunningham, who issued performance evaluations, disciplined employees, and approved requests for two or more days of annual leave. From 2003 to 2018, Ms. Cunningham also served as the acting Chief of Benefits, stepping into that role when it was temporarily vacant due to the current Division Chief's absence.

### B.    New GS-13 Supervisor Position

In Spring 2017, Howard Locke ("Mr. Locke") was promoted from GS-14 Division Chief to GS-15 Director of the Human Resources Shared Services Center. While awaiting his GS-14 replacement, Mr. Locke performed both roles. During this time, he sought to

5

create opportunities for GS-12 employees to advance to the GS-14 Division Chief role because there had otherwise been no GS-13 openings for those employees to advance through the ranks.

Upon Mr. Locke's request, a Classification team reviewed the Benefits Division's structure and suggested that Mr. Locke convert an existing GS-12 vacancy to a GS-13 position, whose occupant would oversee a newly combined Benefits and Worker's Compensation team. As a result of this revised structure, the GS-12 Benefits Supervisor would become a non-supervisory technical position, and the Workers Compensation team lead would become a non-team lead. The Classification team also conducted a desk audit of various positions within the Benefits Division, and, in relevant part, concluded that the Benefits Supervisor was properly categorized as a GS-12 rank.

In October 2017, the DFAS posted a vacancy announcement for the newly created GS-13 Supervisory Human Resources Specialist (Employee Benefits) position ("GS-13 Supervisor position"), which was open to federal employees, certain qualifying veterans, and other non-federal employees. To qualify for the position, applicants were required to have "[o]ne year of specialized experience equivalent in level of difficulty and responsibility to that of the next lower grade (GS-12) within the federal service, which demonstrates the ability to perform the duties of the position." Dkt. 44-13 at 3. "Specialized experience" meant "advising and guiding senior management and customers regarding employee Health Benefits, Retirement and/or Workers Compensation programs, regulations, policy and standards; training and reviewing the work of team members; and resolving issues involving the administration of benefits, retirement or workers compensation programs."

6

*Id.* Because the vacancy was open to certain non-federal applicants, such as disabled veterans, both federal and private sector past employment were considered relevant to a candidate's "specialized experience."

According to the vacancy announcement, the GS-13 Supervisor's responsibilities included:

- Serving as the first line supervisor and manager of day-to-day operations of the Employee Benefits Division;

- Providing advisory and consultative services to employees and managers about the regulations, policy, and program delivery of employee retirement, health and life insurance programs, Thrift Savings Program ("TSP"), and workers compensation program;

- Representing the DFAS to serviced customers by providing high level policy advisory services regarding current or proposed program regulations or service delivery;

- Evaluating program delivery for efficiency and effectiveness and implementing policy and procedural changes to improve operations;

- Providing programmatic analysis of the impact of various benefits programs to assist leadership in short-term and long-term workforce planning; and

- Supervising a team of specialists and support staff to include planning, assigning, and overseeing work, training, and developing staff, and resolving grievances and complaints.

APPELLANT000012

Dkt. 44-13 at 2.

The application window closed on November 6, 2017. Ordinarily, DFAS policy required hiring selections within 120 days of the application's closing date, but because Mr. Locke sought to have the incoming GS-14 Division Chief (to whom the new GS-13 Supervisor would report) to make the selection, he postponed the interviews. Ms. Cunningham evidently shared this understanding, explaining that "interviews were delayed because we had a new person coming in as chief, and I guess management wanted him to be able to review the resumes." Cunningham Dep. 62:12–26, dkt. 44-1.

On April 1, 2018, Andrew Hartz ("Mr. Hartz") (Caucasian male) replaced Mr. Locke as GS-14 Division Chief. Before interviewing candidates for the GS-13 Supervisor position, Mr. Hartz asked Shante Jones ("Ms. Jones") (African American female), then-GS-14 supervisor of Talent Management and Integration, to join him because they had worked together previously, and he knew of her prior experience with HR work processes. Mr. Hartz developed four categories to evaluate candidates: (1) HR & Benefits Subject Matter Expert ("SME"); (2) Supervisory/Leadership skills; (3) Teamwork & Process Innovation; and (4) Customer Service. In each category, Mr. Hartz identified the specific abilities and characteristics that an ideal candidate would demonstrate. Additionally, Mr. Hartz actively consulted with Ms. Jones in developing six interview questions based on the responsibilities listed in the vacancy announcement. These interview questions included the following:

(1)     Describe your background and experience with HR and Benefits. What area of HR/Benefits is your most in-depth experience?

8

(2)       Why do you want to be the Employee Benefits Supervisor?

(3)       If selected, this job will require you to manage the workload of a large team. How do you juggle conflicting priorities?

(4)       Since 2016, HR has had a rapid increase in size (headcount), which presents both opportunities and challenges for our organization. Can you give some examples of how you've developed the technical skills of team members assigned to you?

(5)       As we mentioned in the beginning, this is a new position that will change the structure of the Benefits Division by combining the [Workers Compensation] Team and Employee Benefits. If you were selected, what do you think would be your largest challenge or highest priority in the first 30-90 days?

(6)       What is your style for handling a difficult conversation?

Dkt. 49-15.

## C.    The Applicants & Interviews

Ultimately, four individuals applied for the GS-13 Supervisor position: Ms. Cunningham (African American female), Ms. Fisher (Caucasian female), Mr. Griffin (African American male), and Anthony Opat ("Mr. Opat") (Caucasian male).[3] Mr. Hartz and Ms.

---

[3] Human resources personnel had also created two Certificates of Eligibles, or lists of applicants qualified for the GS-13 Supervisor position. The first list provided candidates who could be hired through Competitive Merit Promotion and included Ms. Cunningham, the two team leads—Ms. Fisher and Mr. Griffin—Mr. Opat, and Tracy Zimmerman ("Ms. Zimmerman"). The other list, the Merit Referral List, provided only Mr. Griffin's name because he was eligible for non-competitive selection based on his status as a thirty percent or more service-connected disabled veteran. Mr. Hartz did not review either Certificate of Eligibles and thus was unaware of the names on these lists.

APPELLANT000014

Jones conducted interviews on May 31, 2018, and June 1, 2018. Approximately ninety minutes before each interview, Mr. Hartz and Ms. Jones disclosed questions three and four to the incoming interviewee, thereby providing each candidate with the benefit of a bit of advance preparation.

Though four candidates applied and interviewed for the position, the following recitation of facts focuses—as did the parties' briefs—on both African American candidates, who were also the finalists for the job, Ms. Cunningham and Mr. Griffin.

       1.     <u>Ms. Cunningham's Resume & Interview</u>

Ms. Cunningham's two-page resume enumerated only one aspect of her employment history—her current role as a GS-12 Benefits Supervisor, which position she had occupied since 2012. Her resume listed no other experience, education, training, professional licenses, or certificates. Presumably misreading the vacancy announcement, Ms. Cunningham believed the vacancy announcement had instructed applicants to list only five or six years of relevant experience. Cunningham Dep. 46:21–47:4, dkt. 44-1 (describing her "[v]ague memory . . . that the vacancy asked for six years—five, six years of service"). To the extent her resume did not accurately encapsulate her work experience, Ms. Cunningham stated that she "relayed that information in [her] interview." Cunningham EEOC Decl. at 7, dkt. 44-2. Ms. Cunningham also mistakenly omitted the last four digits of her then-supervisor Mr. Locke's phone number. Mr. Hartz, who at this time had only worked

APPELLANT000015

with Ms. Cunningham for a short period, *id.* at 62:24–63:1, later recalled that Ms. Cunningham's resume "appeared incomplete." Hartz EEOC Decl. at 8, dkt. 44-21.[4]

Ms. Cunningham recalled that her interview lasted approximately thirty minutes (irrespective of how much time had been allotted by the interviewer). Cunningham Dep. 63:23–24, dkt. 44-1. In his interview notes, Mr. Hartz marked that Ms. Cunningham was the "Best SME" but that her interest in the GS-13 Supervisor position was, at least in part, an effort to maintain "status quo." Dkt. 44-17 at 4. He also described several of Ms. Cunningham's responses as "good . . . but tactical" and another as "practical . . . [between] tactical and strategic."[5] *Id.* at 5–6. When Ms. Cunningham discussed how she developed the technical skills of her team members, she recounted how she personally trained each employee, and Mr. Hartz recorded in his interview notes that "in the current env[ironment] this approach doesn't scale well." *Id.* at 5. Mr. Hartz later "remember[ed] being disappointed" with Ms. Cunningham's interview responses because he believed she did not "fully prepare[ ]" or "capitalize on th[e] opportunity" to prepare thorough answers, despite having received certain questions in advance. Hartz EEOC Decl. at 8, dkt. 44-21. Though

---

[4] Ms. Cunningham objects to our consideration of testimonial evidence from DFAS management officials, like Mr. Hartz, under the "interested witness" rule, which directs courts to ignore controverted evidence submitted by an interested witness or party. Pl.'s Resp. at 23–24, dkt. 48 (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151 (2000) (deciding a motion for judgment as a matter of law)). However, the Seventh Circuit has "repeatedly emphasized over the past decade" that "the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill*, 724 F.3d at 967. Plaintiff's invocation of this rule, therefore, is groundless, and we shall and do therefore properly consider Defendant's proffered evidence.

[5] Mr. Hartz elaborated in his deposition that "tactical" describes short-term thinking that is focused on the operational aspects of HR, whereas "strategic" describes a longer-term perspective that considers HR as a whole. Hartz Dep. 26:3–27:19, dkt. 44-9.

11

contesting that she was unprepared, Ms. Cunningham conceded that she "may not have offered as much information as [the interviewers] were looking for" because she "simply tr[ied] to answer the questions as asked, instead of elaborating on things that were not asked." Cunningham EEOC Reply Decl. at 3, dkt. 44-3.

2.    <u>Mr. Griffin's Resume & Interview</u>

Mr. Griffin's nine-page resume captured thirty-two years of education and experience, listing a bachelor's degree in construction engineering technology, a Master's in Business Administration ("MBA"), and a myriad of certifications. After twenty-three years of service in the United States Air Force, Mr. Griffin worked as an Industrial Relations Manager for the City of Indianapolis. In 2009, he joined DFAS as a Labor Management and Employee Relations Specialist, training employees and advising upper management on human resource issues. In 2016, he joined the Benefits Division as the Customer Care Center team lead, in which role he led and operated a call center for matters related to staffing, benefits, and entitlements.

Mr. Griffin estimated that his interview lasted "[p]robably 45 minutes to an hour," despite repeatedly stating that he actually "d[id]n't know" how long it took. Griffin Dep. 40:8–13, dkt. 49-8.  During the interview, Mr. Hartz noted that Mr. Griffin was a "wide SME," albeit "not deep in fed[eral] bene[fits]." Dkt. 44-17 at 10. Mr. Griffin explained that he applied for the position to change the division atmosphere and to lead by example, which struck Mr. Hartz as a "strategic response." *Id.* Mr. Hartz believed that Mr. Griffin had demonstrated "leadership" by crafting an answer from "multiple angles." *Id.* at 11. For half of the interview questions, Mr. Hartz noted that Mr. Griffin gave the "best response" of all

12

the candidates. *Id.* at 11–12. In describing Mr. Griffin's interview, Mr. Hartz remembered that Mr. Griffin "brought more of a strategic view" and that he "touched on several facets of the question[s]," including "both tactics and strategy in his responses." Dkt. 44-21 at 3.

### D.   Selection

At the conclusion of all four interviews, Mr. Hartz and Ms. Jones narrowed their top selectees to Ms. Cunningham and Mr. Griffin. There is no dispute that both remaining candidates satisfied the minimum qualifications for the GS-13 Supervisor position, as they each had at least one year of specialized experience from their respective GS-12 positions. Likewise, there is no dispute that Mr. Hartz, the sole decisionmaker, did not review any candidates' prior performance evaluations. Hartz Dep. 35:2–17, dkt. 44-9 ("Performance appraisals are not part of the selection process.").

Mr. Hartz relied primarily on the candidates' resumes and interview performances to gauge the strength of their technical expertise, leadership, innovation, and customer service. *Id.* at 51:3–10, 96:1–19. Though Ms. Cunningham had superior technical expertise in federal benefits, she and Mr. Griffin ranked similarly in their leadership skills. Specifically, Mr. Hartz recognized that Ms. Cunningham had "a lot of experience in benefits teams" at DFAS, while Mr. Griffin "brought a lot of outside experience [and] military experience[ ]" to the table." *Id.* at 99:24–100:5. Mr. Griffin, however, showed better innovation and customer service skills from his time at the Customer Care Center, *id.* at 100:9–19, which ultimately led Mr. Hartz to conclude that Mr. Griffin "brought a broader skills mix to the table" and was the most qualified person for the role. Hartz EEOC Decl. at 8, dkt. 44-21.

APPELLANT000018

Mr. Griffin's selection for the GS-13 Supervisor position was announced on June 18, 2018. Somewhere around that time, Mr. Hartz explained to Ms. Cunningham that she was not selected because "he was looking for a more rounded person." Cunningham Dep. 82:1, dkt. 44-1.

### E.    The MD-715 Report

For Fiscal Year 2018, DFAS collected department-wide data on minority representation in upper management into the Management Directive 715 Equal Employment Opportunity Program Status Report ("MD-715 Report"). Dkt. 49-23. According to this report (and the portions cited by Ms. Cunningham), only 3.57% of qualified African American females were selected for GS-11 through GS-15 promotions, compared to a 15.38% selection rate for African American males. *Id.* at 28. Relatedly, African American females represented 20.59% of the GS-12 rank within HR but only 5.26% of the GS-13 rank. *Id.* at 26.

### F.    The First EEOC Complaint

On August 7, 2018, Ms. Cunningham filed a formal complaint of discrimination, averring that her non-selection for the GS-13 Supervisor position was the product of race/color, sex, and age discrimination. Cunningham EEOC Decl. at 2–3, dkt. 44-2. DFAS accepted Ms. Cunningham's allegations for investigation on August 10, 2018. Dkt. 44-6 at 1.

According to Ms. Cunningham, she "ha[d] been consistently looked over for promotion," despite "feel[ing] like [she] was the best qualified for the position." Cunningham EEOC Decl. at 3, dkt. 44-2; dkt. 44-5 at 1. Her evidence was "just [Mr. Hartz's] verbal conversation with [her], where he stated that he wanted a more well-rounded person for the

14

position." Cunningham EEOC Decl. at 3, dkt. 44-2. Her race/color discrimination claim rested on her belief that "they wanted someone else to work with" and that Mr. Griffin had been "placed" in the Call Center, "knowing the [GS-13] vacancy was coming open," so that she "would have less footing to stand on due to [them] being of the same race/color." *Id.* at 7. Ms. Cunningham believed she was discriminated against based on sex because "[t]he selecting official preferred a male," *id.*, which belief she described in her deposition as "[h]eartfelt," Cunningham Dep. 108:24–109:8, dkt. 44-1. Finally, she alleged age discrimination because she was retirement eligible while Mr. Griffin was not. Cunningham EEOC Decl. at 7, dkt. 44-2. Overall, the crux of Ms. Cunningham's allegations was that she was "imminently more qualified than the selectee," based on his lack of federal benefits and supervisory experience. *Id.*

On November 3, 2021, DFAS issued a Final Agency Decision wherein it concluded that Ms. Cunningham did not demonstrate that she had been discriminated against. Specifically, DFAS explained that management articulated legitimate, non-discriminatory reasons for its hiring decision; that record evidence and testimony suggested management's stated reasons were credible; and that Ms. Cunningham failed to provide sufficient persuasive evidence to undermine management's reasons. Dkt. 44-20 at 7. The Final Agency Decision also informed Ms. Cunningham of her right to sue in federal district court within ninety days. *Id.* at 9.

## G.    The Second EEOC Complaint

On August 14, 2020, Ms. Cunningham filed a second EEOC complaint, claiming that the 2017 desk audit revealed her GS-12 position should have been ranked as GS-14.

APPELLANT000020

As an incumbent who had been successfully performing her job duties for nine years, she therefore believed that she "should have been non-competitively promoted to GS-13/14." Dkt. 44-7 at 1. Notwithstanding her prior assumptions about the desk audit, Ms. Cunningham reviewed the audit during her deposition and acknowledged that nothing therein suggested her position should have been reclassified to a higher grade. Cunningham Dep. 133:14–16, dkt. 44-1. Whatever the merits of this second EEOC complaint, it was ultimately dismissed as untimely. *Id.* at 126:7–9. In her Statement of Claims filed on November 16, 2022, Ms. Cunningham did not reference this noncompetitive promotion claim. Dkt. 34.

### H.    This Lawsuit & Subsequent Developments

On January 21, 2022, Ms. Cunningham sued her employer, arguing that it discriminated against her on the basis of her sex and race by selecting "a less qualified African American male" for the GS-13 Supervisor position. Dkt. 1. In August 2022, Mr. Griffin left DFAS, vacating the GS-13 Supervisor position. Ms. Cunningham applied for and, this time, was selected as the GS-13 Supervisor. Accordingly, she seeks to recover damages for the approximate four years that she was a GS-12 rather than a GS-13. Defendant moved for summary judgment on May 10, 2023, which motion is now fully briefed and ripe for ruling.

## III.   DISCUSSION

### A.    Title VII

Title VII prohibits employers from discriminating against an individual on the basis of protected characteristics, such as sex and race. 42 U.S.C. § 2000e-2(a)(1). A complainant

can establish that her employer discriminated against her by demonstrating that sex or race "was a motivating factor . . . for the challenged employment practice." *Id.* § 2000e–2(m). Accordingly, a Title VII plaintiff will survive summary judgment if a trier of fact would find that, at the time of the adverse employment decision, the employer was motivated by the employee's sex, race, or other protected characteristic. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (discussing disparate treatment claims).

Here, Ms. Cunningham contends that her employer discriminated against her in violation of federal law by not selecting her for the GS-13 Supervisor position because of her sex and race.[6] She asserts an intersectional "sex-plus" theory of discrimination, arguing that she experienced discrimination based on sex in conjunction with another characteristic, namely, her race. Though the Seventh Circuit has "not yet decided" whether to recognize this iteration of Title VII protection, it has acknowledged that the term "sex-plus" is "simply a heuristic . . . developed in the context of Title VII to affirm that plaintiffs can, under certain circumstances, survive summary judgment even when not all members of a

---

[6] Ms. Cunningham's claim in this lawsuit is framed as a disparate treatment cause of action—not disparate impact, which involves a challenge to an employment practice that, while facially neutral, impacts a particular group unfavorably and cannot be justified by business necessity. *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). Disparate impact claims require plaintiffs: (1) to identify a specific, facially neutral employment practice that is "allegedly responsible for an[ ] observed statistical disparit[y]"; and (2) to offer statistical evidence that the challenged policy caused that disparity. *Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005) (internal citations omitted). Ms. Cunningham's reference to the MD-715 Report in her factual averments would be relevant, if at all, only to a disparate impact claim. *See generally* Pl.'s Resp. at 19–20, dkt. 48. Nowhere beyond this passing reference does she develop her argument. Because courts are not "obliged to research and construct legal arguments for the parties," we decline further exploration of evidence left untethered by a party to a legal argument. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

17

disfavored class are discriminated against." *Coffman v. Indianapolis Fire Dep't.*, 578 F.3d 559, 564 (7th Cir. 2009) (addressing claim of discrimination based on sex plus height).

Since the Seventh Circuit's most recent discussion of "sex-plus" discrimination claims in *Coffman*, several district courts within this judicial circuit have allowed sex-plus claims to proceed, reasoning, in part, that the EEOC Compliance Manual expressly protects individuals from intersectional discrimination based on multiple protected characteristics. EEOC Compliance Manual, Section 15: Race and Color Discrimination, at https://www.eeoc.gov/laws/guidance/section-15-race-and-color-discrimination#IVC  (last visited November 29, 2023) ("Title VII prohibits discrimination not just because of one protected trait (e.g., race), but also because of the intersection of two or more protected bases (e.g., race and sex)."); *see*, *e.g.*, *Kimble v. Wis. Dep't of Workforce Dev.*, 690 F. Supp. 2d 765, 770 (E.D. Wis. 2010) ("African-American men, like African-American women, may bring intersectional claims."); *Chaikin v. Methodist Med. Ctr. of Ill.*, No. 18-cv-1208, 2018 WL 4643016, at *2 (C.D. Ill. Sept. 27, 2018) ("[T]he Court has seen examples of intersectional forms of discrimination under a *single* statute advance before federal courts—for example race and gender under Title VII . . . .").[7]

---

[7] We note, too, that many of the federal circuits permit intersectional discrimination claims to proceed. *Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1032 (5th Cir. 1980) (race and sex); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1416–17 (10th Cir. 1987) (race and sex); *Lam v. Univ. of Haw.*, 40 F.3d 1551, 1562 (9th Cir. 1994) (race and sex); *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 958 (6th Cir. 2014) (race and sex); *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643 (4th Cir. 2021) (sex and age). *Cf. Bryant v. Int'l Schs. Servs., Inc.*, 675 F.2d 562, 573 n.18 (3d Cir. 1982) (sex and marital status); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 118 (2d Cir. 2004) (sex and parenthood status); *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 43 (1st Cir. 2009) (sex and parenthood status).

APPELLANT000023

Notwithstanding the viability of a sex-plus discrimination claim, a plaintiff alleging any version of sex discrimination must proffer evidence that sex was a motivating factor in her non-selection for a promotion. *Coffman*, 578 F.3d at 563–65; 42 U.S.C. § 2000e–2(m). In other words, the plaintiff must show that she suffered an adverse employment action "at least in part because she is female." *Coffman*, 578 F.3d at 564. To satisfy this burden, plaintiffs may use the *McDonnell Douglas* "burden shifting analysis." *David v. Bd. of Trs. Of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). Under that framework, the plaintiff must first demonstrate a *prima facie* case that she (1) belongs to a protected class, (2) meets her employer's legitimate performance expectations, (3) suffered an adverse employment action, and (4) was treated worse than similarly situated employees outside the protected class. *Id.* at 225. Assuming that the plaintiff satisfies each element of her prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action, at which point the burden returns to the plaintiff to show that the defendant's reason was pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

## A.     Ms. Cunningham's Prima Facie Case

Here, Defendant does not contest Ms. Cunningham's prima facie case of sex discrimination. First, as an African American woman, she clearly belongs to a protected class. Second, the undisputed facts show that she met her employer's legitimate performance expectations. Third, she suffered an adverse employment action when she was not selected for the GS-13 Supervisor position. Lastly, a similarly situated person outside her protected

19

class, namely, Mr. Griffin who was an African American male, was treated better than she when he was selected for the position.

### B.  Defendant's Legitimate Nondiscriminatory Reasons for Ms. Cunningham's Non-selection

Defendant argues that it had legitimate, nondiscriminatory reasons for selecting Mr. Griffin over Ms. Cunningham; to wit, he had a stronger resume, a better interview, a broader mix of skills, and a strategic approach that, combined, made him better qualified. It is well-established that an employer may hire someone it believes is best qualified for a position. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838 (7th Cir. 2009) (hiring better qualified person is a nondiscriminatory action). Courts do "not sit as a superpersonnel department that reexamines an entity's business decisions," and the qualifications for a position, albeit subjective, are precisely the type of business decision with which the judicial apparatus ought not interfere. *Baron v. City of Highland Park*, 195 F.3d 333, 341 (7th Cir. 1999) (internal quotation and citation omitted); *see also Murray v. Golden Rule Ins. Co./United Health Corp.*, 23 F. Supp. 3d 938, 953 (S.D. Ind. 2014) (stating that courts do not "weigh[ ] the prudence of employment decisions"). Accordingly, Defendant has satisfied its burden of providing a legitimate, nondiscriminatory explanation for Ms. Cunningham's non-selection.

### C.  Pretext

Once an employer proffers a legitimate nondiscriminatory reason for the plaintiff's non-selection, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered . . . were a pretext for discrimination." *Texas Dep't. of Cmty. Affairs*

APPELLANT000025

*v. Burdine*, 450 U.S. 248, 253 (1981) (citation omitted). Pretext is "a lie, specifically a phony reason for some action," or "an employer's efforts to cover its tracks and hide the real reasons for not selecting an applicant." *Chatman v. Bd. of Educ. of City of Chi.*, 5 F.4th 738, 746 (7th Cir. 2021) (internal quotations and citations omitted). A showing of pretext— without more—is insufficient; a plaintiff must also show that the employer acted on pro- hibited animus. *Id.* at 747.

Our sole concern regarding the issue of pretext is the honesty of the decisionmaker's explanation. *O'Connor v. DePaul Univ.*, 123 F.3d 665, 671 (7th Cir. 1997). Because courts are not superpersonnel departments, a decisionmaker's sincere, nondiscriminatory beliefs do not offend the law. *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004). Thus, an employer's mistaken or incorrect conclusions do not evince pretext. *Baron*, 195 F.3d at 341 (explaining that "the overall correctness or desirability of the reasons proffered is not relevant to the determination of pretext . . . , [d]espite the plaintiff's contentions to the contrary, [when] there is no evidence in the record to demonstrate that any of the[ ] reasons are fallacious").

Faced with Defendant's legitimate, nondiscriminatory reasons for Mr. Griffin's se- lection, Ms. Cunningham attempts to thread a pretextual needle, arguing that she was sig- nificantly more qualified than Mr. Griffin. She bases this argument on her subjective view of her own qualifications and unsubstantiated speculation of the decisionmaker's state of mind, but, at bottom, she fails to create a genuine issue of material fact that precludes sum- mary judgment.

APPELLANT000026

Though selection of a less-qualified candidate may serve as probative evidence of pretext, the difference in qualifications "must be a significant one." *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 738 (7th Cir. 2006) (citing *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 458 (2006)). "[U]nless th[e] differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue," competing qualifications are ordinarily insufficient to evince pretext. *Mlynczak v. Bodman*, 442 F.3d 1050, 1059 (7th Cir. 2006) (quoting *Millbrook v. IBP, Inc.*, 280 F.3d 1169 (7th Cir. 2002)) (internal quotation marks omitted). To succeed on this theory of pretext, the plaintiff must demonstrate that her comparative qualifications are "clearly superior" or "significantly better" than the selectee's qualifications. *Id.* at 1060 (quoting *Ash*, 546 U.S. at 457–58).

Ms. Cunningham has not produced evidence to show that she was either clearly or significantly better qualified than Mr. Griffin. The record evidence instead shows that, although only partially captured in her resume, Ms. Cunningham's many years of experience in federal benefits were known to Mr. Hartz at the time of his decision. Though her greater length of service at DFAS is undisputed, so too are Mr. Griffin's credentials, including a college degree, an MBA, relevant military and private sector experience, numerous military awards, and various certifications. *See, e.g.*, *Rowe v. Shulkin*, No. 17-cv-9258, 2019 WL 2060951, at *14 (N.D. Ill. May 9, 2019) (seniority alone did not evince pretext when selectee had superior college performance, a master's degree, specialized training, military awards, and other relevant leadership experience) (citing cases). Further, Ms. Cunningham has produced no evidence (beyond mere speculation) to contradict Mr. Hartz's stated

22

impression that her interview responses "were the least thorough of any of the interview-ees." Dkt. 49-13 at 9. Therefore, Ms. Cunningham has not satisfied her burden of estab-lishing that reasonable persons of impartial judgment would find that she was clearly better qualified for the GS-13 Supervisor position than Mr. Griffin.

Courts have repeatedly stressed that employers are entitled to act on their honest, subjective evaluations of an applicant's qualifications. *See Blise v. Antaramian*, 409 F.3d 861, 867–68 (7th Cir. 2005). Aside from a subjective appraisal of her own credentials, Ms. Cunningham offers no evidence to undermine Mr. Hartz's honest assessment that favored Mr. Griffin. Rather, she has conceded the non-pretextual grounds for her non-selection. For instance, Ms. Cunningham stated in her deposition that Mr. Hartz likely "thought Mr. Griffin was more suitable," "wanted a more well-rounded person for the position," and maybe "wanted something different . . . for the benefits division . . . and felt like he could take that or do that with someone other than myself." Cunningham Dep. 109:23–110:24, 103:6–16, 109:9–22, dkt. 44-1. No doubt Ms. Cunningham was also qualified for the GS-13 position, but her personal beliefs are no substitute for Mr. Hartz's honest and well-in-tentioned beliefs about who ultimately qualified as the best selectee.

Ms. Cunningham next argues that Mr. Hartz improperly deviated from DFAS inter-view policy by asking "non-job related [sic] questions." Pl.'s Resp. at 17, dkt. 48. Deviation from internal policy may indeed evince pretext, *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 931 (7th Cir. 2020), but such deviation must also be discriminatorily motivated and prejudicial to the plaintiff. *Guinto v. Exelon Generation Co., LLC*, 341 F. App'x 240, 247 (7th Cir. 2009) (stating that consistent "misapplication" of internal policy does not evince

23

pretext); *see also Monroe v. City of Lawrence, Kan.*, 124 F. Supp. 3d 1097, 1118 (D. Kan. 2015) (explaining that the "mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent"). Absent any legitimate explanation, an employer's "highly unusual" deviation from normal practice regarding a single employee can signal pretext. *Baines v. Walgreen Co.*, 863 F.3d 656, 664 (7th Cir. 2017). On the other, an employer's (perhaps erroneous) reading of an internal policy—so long as applied consistently to all employees—does not cast doubt on the employer's legitimate, nondiscriminatory explanations. *Ellis v. United Parcel Serv.*, 523 F.3d 823, 829–30 (7th Cir. 2008).

Here, DFAS's internal policy required that "[a]ll questions used in a selection interview must be job related and tied to the skills or competencies identified in the job analysis. The same questions, in the same order, should be asked of all applicants who are interviewed." Dkt. 49-19 at 20. It is undisputed that Mr. Hartz asked each candidate the same six questions and provided the same two questions in advance. *But see Blise*, 409 F.3d at 868 (noting that there is no legal requirement under Title VII to ask the same questions of different applicants). Ms. Cunningham's critique that the interview questions were "generic, vague, and sought general human resources experience" leaves undeveloped any argument that they were crafted with discriminatory intent or prejudicial effect. Pl.'s Surreply at 14–15, dkt. 56. In fact, the undisputed record shows that these purportedly "non-job-related" interview questions were derived from the responsibilities enumerated in the vacancy announcement and were asked to each candidate; thus, insofar as the questions fell

24

out of compliance with DFAS policy, Ms. Cunningham has proffered no evidence that the questions were posed with discriminatory intent or otherwise prejudiced her based on sex.

Ms. Cunningham also challenges the length of her interview, calling attention to the fact that Mr. Griffin's interview was appreciably longer than her interview.[8] We are confident that the difference in interview lengths does not, in this case, indicate pretext. As mentioned above, it is undisputed here that Mr. Hartz asked the same questions of each applicant. Nevertheless, exploring an applicant's background, professional qualifications, and "personality, poise, and manners"—i.e., a fundamental undertaking in an interview—is "often a give-and-take process" hardly capable of uniform repetition from candidate to candidate. *Blise*, 409 F.3d at 868. Mr. Hartz's recollection that Ms. Cunningham had the "least thorough" responses, coupled with her own admission that she did not readily offer information, leaves her shorter interview time entirely plausible and her criticism a far cry from being evidence of pretext. Ms. Cunningham's efforts to undermine the integrity of the interview process rest on nothing more than conjecture and, thus, do not create a triable issue of fact for a jury.

Finally, Ms. Cunningham asserts that Mr. Hartz's use of the military terms "tactical" and "strategic" to describe candidates' interview responses evinces bias toward males because "the military is predominately male." Pl.'s Resp. at 34, dkt. 48. The record discredits this conclusion, as Mr. Hartz testified that he did not necessarily borrow these terms from

---

[8] Though the record is unclear as to the specific amount of time formally allotted for each interview, Defendant does not dispute Ms. Cunningham's averment, premised on her and Mr. Griffin's deposition testimonies, that Mr. Griffin's interview was longer. As explained above, any such difference in time spent on the respective interviews is immaterial.

APPELLANT000030

the military; rather, he utilized these terms "to interpret things [he was] seeing in different candidates." Hartz Dep. 27:14–28:7, dkt. 44-9. Moreover, Mr. Hartz used "tactical" to describe responses from Mr. Opat, a Caucasian male, *see* dkt. 44-17, undermining the theory that Mr. Hartz's terminology was coded with improper bias. Even accepting that these descriptive terms were wholly derivative from the military, neither term relates to prohibited sex-based stereotypes, and Ms. Cunningham has not pointed to any legal authority concluding otherwise.

A holistic view of the evidentiary record does not suggest that Mr. Hartz's GS-13 selection was the product of sex (or sex plus race) discrimination. Based on the undisputed facts before us, no reasonable trier of fact could find that Ms. Cunningham's sex was a motivating factor in her non-selection for the GS-13 Supervisor position. Ms. Cunningham cannot defeat summary judgment by relying on her suppositions that are ultimately not borne out by the facts. *Rothman v. Emory Univ.*, 123 F.3d 446, 453 (7th Cir. 1997). Accordingly, we grant Defendant's motion for summary judgment on Ms. Cunningham's discrimination claim.

### B.    Abandoned Claims

Before concluding, we briefly remark on two claims omitted from Ms. Cunningham's Statement of Claims but included in her responsive brief (1) that Mr. Locke should have selected her in November 2017 at the close of the application window; and (2) that she should have been non-competitively promoted to a GS-13/14 position after the 2017 desk audit. *See* Pl.'s Resp. at 24, dkt. 48.

APPELLANT000031

Courts in this district have consistently held (and the Seventh Circuit has affirmed) that failure to assert a claim in a Statement of Claims, even if such claim arises under the same statute, operates as an abandonment of that claim. *Jackson v. Regions Bank*, No. 1:19-cv-01019-JMS-MPB, 2020 WL 4430588, at *4–5 (S.D. Ind. July 31, 2020), *aff'd*, 838 F. App'x 195 (7th Cir. 2021) (collecting cases). As Defendant points out, had Ms. Cunningham included these additional claims in her Statement of Claims, dkt. 34, it could have addressed them in its opening brief and designated appropriate evidence. Def.'s Reply at 2, dkt. 51. Ms. Cunningham offers no rebuttal to this argument in her surreply. *See generally* Pl.'s Surreply, dkt. 56. Accordingly, we find that she has effectively abandoned the two claims omitted from her Statement of Claims.

Even if these claims had not been abandoned, they would still fail for separate reasons. First, Ms. Cunningham takes issue with Mr. Hartz, rather than Mr. Locke, as the selecting official because an internal DFAS policy requires selection within 120 days of the close of a vacancy announcement. Dkt. 49-19 at 19. Here, the vacancy announcement closed at the end of November 2017, but Mr. Hartz did not make his selection until June 18, 2018, almost eight months later. This delay, Ms. Cunningham contends, indicates discriminatory pretext. However, as she readily acknowledged in her deposition, the interviews were postponed so that Mr. Hartz, as the incoming GS-14 Chief, could make the selection. Cunningham Dep. 62:12–16, dkt. 44-1. Moreover, the DFAS policy explicitly allows certain exceptions, provided that the requesting party "work[s] with the staffing specialist." Dkt. 49-19 at 19. Indeed, as previously explained, pretextual deviation from internal policy must be accompanied with discriminatory intent or prejudicial effect. *Joll*,

27

953 F.3d at 931; *Guinto*, 341 F. App'x at 247. Here, Ms. Cunningham has produced no evidence that postponing the GS-13 Supervisor selection was a discriminatorily motivated decision or that it prejudiced her because of her sex.

Second, Ms. Cunningham's noncompetitive promotion claim fails on separate grounds: she did not exhaust her administrative remedies and, even if she had, the documentary evidence plainly belies the veracity of her claim. A Title VII plaintiff must exhaust administrative remedies before filing suit in federal court. *Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003); *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 (7th Cir. 2013). According to the applicable administrative procedure, a federal employee must contact a Counselor within forty-five days of the aggrieved incident. 29 C.F.R § 1614.105(a). If no timely resolution results, the Counselor notifies the complainant of her right to file a formal complaint with the relevant agency. *Id.* § 1614.105(d). Only after the agency authorizes federal suit may the complainant sue her employer.

Here, Ms. Cunningham filed her second EEOC complaint on August 14, 2020, alleging that, per the 2017 desk audit, she should have been non-competitively promoted in April 2018—well past the forty-five-day deadline to file such a complaint. In fact, this noncompetitive promotion claim has already been dismissed as untimely. Even if such claim were properly before us, Ms. Cunningham has expressly acknowledged in her deposition that the 2017 desk audit reported no such conclusion; rather, it stated that her position was correctly categorized as GS-12 and in no way suggested that she was entitled to a non-competitive promotion.

APPELLANT000033

Notwithstanding the explications provided above, we regard the claims omitted from Ms. Cunningham's Statement of Claims as abandoned.

## CONCLUSION

For the reasons explicated above, Defendant's Motion for Summary Judgment is **GRANTED**. Dkt. 44. Final judgment shall be entered accordingly.

IT IS SO ORDERED.

Date:
    12/1/2023

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Rachana Nagin Fischer
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
rachana.fischer@usdoj.gov

Tae K. Sture
STURE LEGAL SERVICES LLC
tae@sturelaw.com

APPELLANT000034

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GWENDOLYN D CUNNINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00165-SEB-TAB |
| | ) | |
| LLOYD J AUSTIN in His Official Capacity as | ) | |
| Secretary of the U.S. Department of Defense, | ) | |
| | ) | |
| Defendant. | ) | |

**FINAL JUDGMENT**

The Court having this day made its Order directing the entry of final judgment, the

Court now enters FINAL JUDGMENT.

Judgment is entered in favor of Defendant and against Plaintiff. Plaintiff shall take

nothing by her complaint and this action is terminated.

IT IS SO ORDERED.

Date:  _____12/1/2023_____        _Sarah Evans Barker_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Rachana Nagin Fischer
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
rachana.fischer@usdoj.gov

Tae K. Sture
STURE LEGAL SERVICES LLC
tae@sturelaw.com

1

# *** PUBLIC DOCKET ***

APPEAL,CLOSED

## U.S. District Court
## Southern District of Indiana (Indianapolis)
## CIVIL DOCKET FOR CASE #: 1:22-cv-00165-SEB-TAB

CUNNINGHAM v. AUSTIN
Assigned to: Judge Sarah Evans Barker
Referred to: Magistrate Judge Tim A. Baker
Cause: 42:2000e Job Discrimination (Employment)

Date Filed: 01/21/2022
Date Terminated: 12/01/2023
Jury Demand: Both
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**GWENDOLYN D CUNNINGHAM**            represented by   **Tae K. Sture**
                                                        STURE LEGAL SERVICES LLC
                                                        155 E. Market Street
                                                        Suite 700
                                                        Indianapolis, IN 46204
                                                        (317)577-9090
                                                        Fax: (317) 577-1102
                                                        Email: tae@sturelaw.com
                                                        *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**LLOYD J AUSTIN**                    represented by   **Rachana Nagin Fischer**
*in His Official Capacity as Secretary of the*          UNITED STATES ATTORNEY'S OFFICE
*U.S. Department of Defense*                            (Indianapolis)
                                                        10 West Market Street
                                                        Suite 2100
                                                        Indianapolis, IN 46204
                                                        (317) 229-2414
                                                        Fax: (317) 226-5027
                                                        Email: rachana.fischer@usdoj.gov
                                                        *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/21/2022 | 1 | COMPLAINT against LLOYD J AUSTIN, filed by GWENDOLYN D CUNNINGHAM. (Filing fee $402, receipt number AINSDC-6936939) (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons Proposed Summons for Attorney General, # 3 Proposed Summons Proposed Summons for Secretary of Department of Defense, # 4 Proposed Summons Proposed Summons for US Attorney)(Sture, Tae) (Entered: 01/21/2022) |
| 01/21/2022 | 2 | NOTICE of Appearance by Tae K. Sture on behalf of Plaintiff GWENDOLYN D CUNNINGHAM. (Sture, Tae) (Entered: 01/21/2022) |

CM/ECF LIVE                                                        https://insd-ecf.sso.dcn/cgi-bin/DktRpt-insd.pl?143933817355753-L_1_0-1

Case 1:22-cv-00165-SEB-TAB   Document 70   Filed 01/30/24   Page 37 of 41 PageID #: 2086
Case: 24-1133     Document: 13     Filed: 06/17/2024     Pages: 141

| 01/24/2022 | 3 | Summons Issued as to LLOYD J AUSTIN. (LMK) (Entered: 01/24/2022) |
| 01/24/2022 | 4 | MAGISTRATE JUDGE's NOTICE of Availability to Exercise Jurisdiction issued. (LMK) (Entered: 01/24/2022) |
| 02/15/2022 | 5 | AFFIDAVIT of Service for Complaint served on Defendants on 1/27/2022, filed by GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Exhibit A_Proof of Service for Austin, # 2 Exhibit B_Proof of Service for Garland, # 3 Exhibit C_Proof of Service for Myers)(Sture, Tae) (Entered: 02/15/2022) |
| 03/21/2022 | 6 | NOTICE of Appearance by Rachana Nagin Fischer on behalf of Defendant LLOYD J AUSTIN. (Fischer, Rachana) (Entered: 03/21/2022) |
| 03/21/2022 | 7 | NOTICE of Parties' First Extension of Time re Filing a response to pleading defined by Fed. R. Civ. P. 7(a), filed by Defendant LLOYD J AUSTIN. (Fischer, Rachana) (Entered: 03/21/2022) |
| 03/29/2022 | 8 | SCHEDULING ORDER: Initial Pretrial Conference set for 5/3/2022 10:00 AM in room #234, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana before Magistrate Judge Tim A. Baker. If a proposed Case Management Plan ("CMP") has not yet been filed, the parties are ordered to confer prior to the initial pretrial conference and prepare a proposed CMP. See Order for additional information. Signed by Magistrate Judge Tim A. Baker on 3/29/2022.(SWM) (Entered: 03/30/2022) |
| 04/28/2022 | 9 | CASE MANAGEMENT PLAN TENDERED, filed by Plaintiff GWENDOLYN D CUNNINGHAM . (Sture, Tae) (Entered: 04/28/2022) |
| 04/29/2022 | 10 | *Defendant's* ANSWER to 1 Complaint *and Demand for Jury Trial*, filed by LLOYD J AUSTIN. (Fischer, Rachana) (Entered: 04/29/2022) |
| 05/04/2022 | 11 | ORDER: CASE MANAGEMENT PLAN APPROVED AS SUBMITTED. Parties appeared by counsel on 5/3/2022, for an Initial Pretrial Conference. Dispositive Motions due by 1/23/2023. Discovery due by 11/21/2022. Status Conference set for 10/4/2022 10:00 AM (Eastern Time) in Telephonic before Magistrate Judge Tim A. Baker. Signed by Magistrate Judge Tim A. Baker on 5/4/2022.(SWM) (Entered: 05/04/2022) |
| 05/09/2022 | 12 | *** WITHDRAWN PER DKT. NO. 15 *** MOTION to Strike 10 Answer to Complaint , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Sture, Tae) Modified on 5/10/2022 (SWM). (Entered: 05/09/2022) |
| 05/09/2022 | 13 | MOTION to Withdraw 12 MOTION to Strike 10 Answer to Complaint , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Text of Proposed Order)(Sture, Tae) (Entered: 05/09/2022) |
| 05/09/2022 | 14 | Amended MOTION to Strike 10 Answer to Complaint , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Sture, Tae) (Entered: 05/09/2022) |
| 05/10/2022 | 15 | ORDER granting Plaintiff's 13 MOTION to Withdraw Document 12. The Clerk is directed to withdraw Document 12. Signed by Magistrate Judge Tim A. Baker on 5/10/2022. (SWM) (Entered: 05/10/2022) |
| 05/23/2022 | 16 | NOTICE of Service of Initial Disclosures , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Sture, Tae) (Entered: 05/23/2022) |
| 05/23/2022 | 17 | *** STRICKEN PER DKT. NO. 21 *** *DEFENDANT'S AMENDED* ANSWER to Complaint *and Demand for Jury Trial*, filed by LLOYD J AUSTIN.(Fischer, Rachana) Modified on 6/7/2022 (SWM). (Entered: 05/23/2022) |
| 05/27/2022 | 18 | Witness List *Preliminary*, filed by Plaintiff GWENDOLYN D CUNNINGHAM, Exhibit List *Preliminary*, filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Sture, Tae) (Entered: 05/27/2022) |

APPELLANT000037

| 06/02/2022 | 19 | SCHEDULING ORDER - Final Pretrial Conference has been set for 11/7/2023 at 2:00 PM in room #216, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana before Judge Sarah Evans Barker. Jury Trial has been set for 11/20/2023 at 9:30 AM in room #216, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana before Judge Sarah Evans Barker. (See Order). Signed by Judge Sarah Evans Barker on 6/2/2022.(AKH) (Entered: 06/02/2022) |
|---|---|---|
| 06/06/2022 | 20 | Exhibit List *[Preliminary]*, filed by Defendant LLOYD J AUSTIN, Witness List *[Preliminary]*, filed by Defendant LLOYD J AUSTIN. (Fischer, Rachana) (Entered: 06/06/2022) |
| 06/07/2022 | 21 | MARGINAL ENTRY re Plaintiff's 14 Amended MOTION to Strike 10 Answer to Complaint - Defendant did not object or respond to this motion, though Defendant did file an amended answer. [Filing No. 17.] However, Defendant did not request leave to file an amended answer. Accordingly, Defendant's amended answer is stricken. Defendant shall file a response/objection to this motion by June 10, 2022. Also by this date, Plaintiff shall file a proposed order proposed order as required by Local Rule 5-5(d). Signed by Magistrate Judge Tim A. Baker on 6/7/2022.(SWM) (Entered: 06/07/2022) |
| 06/08/2022 | 22 | Submission of Proposed Order , re 14 Amended MOTION to Strike 10 Answer to Complaint , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Sture, Tae) (Entered: 06/08/2022) |
| 06/09/2022 | 23 | MOTION for Leave to File *Amended Answer*, filed by Defendant LLOYD J AUSTIN. (Attachments: # 1 Defendant's Amended Answer to Complaint and Demand for Jury Trial, # 2 Text of Proposed Order)(Fischer, Rachana) (Entered: 06/09/2022) |
| 06/10/2022 | 24 | RESPONSE in Opposition re 14 Amended MOTION to Strike 10 Answer to Complaint , filed by Defendant LLOYD J AUSTIN. (Fischer, Rachana) (Entered: 06/10/2022) |
| 06/13/2022 | 25 | MARGINAL ENTRY re Plaintiff's 14 Amended Motion to Strike 10 Answer to Complaint - Motion denied as moot in light of Filing No. 23. Signed by Magistrate Judge Tim A. Baker on 6/13/2022. (SWM) (Entered: 06/13/2022) |
| 06/13/2022 | 26 | ORDER granting Defendant's 23 Motion for Leave to File Amended Answer. Signed by Magistrate Judge Tim A. Baker on 6/13/2022. (SWM) (Entered: 06/13/2022) |
| 06/13/2022 | 27 | AMENDED ANSWER to Complaint and Demand for Jury Trial, filed by Defendant LLOYD J AUSTIN. (SWM) (Entered: 06/13/2022) |
| 07/15/2022 | 28 | Joint MOTION for Protective Order *[Uniform Stipulated] and Protective Order [Privacy Act], filed by Plaintiff, Gwendolyn D. Cunningham, and*, filed by Defendant LLOYD J AUSTIN. (Attachments: # 1 Uniform Stipulated Protective Order and Privacy Act Protective Order, # 2 Text of Proposed Order)(Fischer, Rachana) (Entered: 07/15/2022) |
| 07/18/2022 | 29 | UNIFORM STIPULATED PROTECTIVE ORDER AND PRIVACY ACT PROTECTIVE ORDER 28 APPROVED AND SO ORDERED. Signed by Magistrate Judge Tim A. Baker on 7/18/2022. (SWM) (Entered: 07/18/2022) |
| 09/14/2022 | 30 | Unopposed MOTION for Extension of Time to January 27, 2023 and March 24, 2023 , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Text of Proposed Order)(Sture, Tae) (Entered: 09/14/2022) |
| 09/15/2022 | 31 | ORDER granting Plaintiff's 30 Motion for Extension of Time - Dispositive Motions due by 2/24/2023. Discovery due by 1/27/2023. Signed by Magistrate Judge Tim A. Baker on 9/15/2022. (SWM) (Entered: 09/15/2022) |
| 10/05/2022 | 33 | ORDER ON OCTOBER 4, 2022, TELEPHONIC STATUS CONFERENCE AND ORDER SETTING TELEPHONIC STATUS CONFERENCE - Parties appeared by counsel October 4, 2022, for a telephonic status conference. Discussion held regarding discovery, settlement, and related matters. Given the parties' settlement positions, it does not appear that a court-supervised settlement conference would be productive at this time. The parties shall notify the court promptly if there is any material change in their settlement positions. This cause is set for a telephonic status conference at 9:30 a.m. on January 18, 2023. Parties shall participate in this conference by counsel. |

APPELLANT000038

| | | |
|---|---|---|
| | | The call-in instructions will be issued by separate order. The purpose of this conference is to discuss case status and settlement. Date: 10/5/2022 Signed by Magistrate Judge Tim A. Baker. (MGG) (Entered: 10/05/2022) |
| 11/16/2022 | 34 | Statement *of the Claims* by All Plaintiffs. (Sture, Tae) (Entered: 11/16/2022) |
| 11/28/2022 | 35 | Statement *of Defenses* by LLOYD J AUSTIN. (Fischer, Rachana) (Entered: 11/28/2022) |
| 01/17/2023 | 37 | Unopposed MOTION for Extension of Time to March 13, 2023 and April 10, 2023 , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Text of Proposed Order Proposed Order)(Sture, Tae) (Entered: 01/17/2023) |
| 01/18/2023 | 38 | MINUTE ORDER for proceedings held before Magistrate Judge Tim A. Baker: Telephonic Status Conference held on 1/18/2023; Discovery due by 3/13/2023., Dispositive Motions due by 4/10/2023. **SEE ORDER** Signed by Magistrate Judge Tim A. Baker. (MGG) (Entered: 01/18/2023) |
| 03/13/2023 | 39 | Joint MOTION for Extension of Time to *Certain Pretrial Deadlines*, filed by Defendant LLOYD J AUSTIN. (Attachments: # 1 Proposed Order)(Fischer, Rachana) (Entered: 03/13/2023) |
| 03/14/2023 | 40 | ORDER granting Parties' 39 Joint Motion for Extension of Certain Pretrial Deadlines - IT IS THEREFORE ORDERED that the deadline for non-expert witness discovery and discovery relating to liability issues is extended to and including April 12, 2023, and the deadline for the filing of dispositive motions is extended to and including May 10, 2023. As a result, the dispositive motions briefing schedule will be strictly enforced. Signed by Magistrate Judge Tim A. Baker on 3/14/2023.(SWM) (Entered: 03/14/2023) |
| 03/21/2023 | 41 | Witness List *[Preliminary]*, filed by Defendant LLOYD J AUSTIN, Exhibit List *[Preliminary]*, filed by Defendant LLOYD J AUSTIN. (Kirklin, J. Taylor) (Entered: 03/21/2023) |
| 03/21/2023 | 42 | Exhibit List , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Sture, Tae) (Entered: 03/21/2023) |
| 03/21/2023 | 43 | Witness List , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Sture, Tae) (Entered: 03/21/2023) |
| 05/10/2023 | 44 | MOTION for Summary Judgment , filed by Defendant LLOYD J AUSTIN. (Attachments: # 1 Exhibit 1 - Deposition Transcript of Cunningham, # 2 Exhibit 2 - EEO Declaration of Cunningham, # 3 Exhibit 3 - EEO Reply Declaration of Cunningham, # 4 Exhibit 4 - Interrogatory Responses of Cunningham, # 5 Exhibit 5 - EEO Complaint of Cunningham, # 6 Exhibit 6 - Acceptance of Claim, # 7 Exhibit 7 - EEO Amended Complaint of Cunningham, # 8 Exhibit 8 - Deposition Transcript of Locke, # 9 Exhibit 9 - Deposition Transcript of Hartz, # 10 Exhibit 10 - Declaration of Hartz, # 11 Exhibit 11 - Organizational Chart, # 12 Exhibit 12 - Witter Email, # 13 Exhibit 13 - Vacancy Announcement, # 14 Exhibit 14 - Certificate of Eligables, # 15 Exhibit 15 - Cunningham Application, # 16 Exhibit 16 - Griffin Application, # 17 Exhibit 17 - Interview Notes, # 18 Exhibit 18 - Email with Interview Questions, # 19 Exhibit 19 - Interview Questions Advanced, # 20 Exhibit 20 - Final Agency Decision, # 21 Exhibit 21 - EEO Declaration of Hartz, # 22 Exhibit 22 - Desk Audit)(Fischer, Rachana) (Entered: 05/10/2023) |
| 05/10/2023 | 45 | BRIEF/MEMORANDUM in Support re 44 MOTION for Summary Judgment , filed by Defendant LLOYD J AUSTIN. (Fischer, Rachana) (Entered: 05/10/2023) |
| 05/15/2023 | 46 | Unopposed MOTION for Extension of Time to File Response to 06/21/2023 re 44 MOTION for Summary Judgment , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Text of Proposed Order)(Sture, Tae) (Entered: 05/15/2023) |
| 05/16/2023 | 47 | ORDER granting Plaintiff's 46 Unopposed MOTION for Extension of Time to File Response to 06/21/2023 re 44 MOTION for Summary Judgment. Signed by Magistrate Judge Tim A. Baker on 5/16/2023. (SWM) (Entered: 05/16/2023) |

APPELLANT000039

| 06/21/2023 | 48 | RESPONSE in Opposition re 44 MOTION for Summary Judgment , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Sture, Tae) (Entered: 06/21/2023) |
|---|---|---|
| 06/21/2023 | 49 | Designation of Evidence re 48 Response in Opposition to 44 Motion for Summary Judgment, filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Exhibit A_Deposition of Andrew Hartz, # 2 Exhibit B_Certificate of Eligibles, # 3 Exhibit C_Standard Form 50-B Gwendolyn D. Johnson (Cunningham), # 4 Exhibit D_Emanuel M. Griffin, Jr. Resume, # 5 Exhibit E_Affidavit of Gwendolyn D. Cunningham, # 6 Exhibit F_Deposition of Zephfina Wyatt, # 7 Exhibit G_Gwendolyn D. Cunningham Resume, # 8 Exhibit H_Deposition of Emanuel Griffin, # 9 Exhibit I_GS-12 Supervisory Human Resources Specialist Position Description, # 10 Exhibit J_Desk Audit, # 11 Exhibit K_Email from Tony Opat to Howard Locke, # 12 Exhibit L_Howard Locke EEO Complaints, # 13 Exhibit M_Declaration of Andrew Hartz, # 14 Exhibit N_Declaration of Shante Jones, # 15 Exhibit O_Andrew Hartzs Interview Notes of all Interviewees, # 16 Exhibit P_Deposition of Gwendolyn D. Cunningham, # 17 Exhibit Q_Gwendolyn D. Cunningham Performance Evaluations, # 18 Exhibit R_Emanuel Griffin DD214, # 19 Exhibit S_DFAS 1402.1-1 Merit Promotion and Internal Placement, # 20 Exhibit T_Email from Kathleen Hendrickson to Jonathan Witter, # 21 Exhibit U_Deposition of Howard Locke, # 22 Exhibit V_Deposition of Susan Marie Davenport, # 23 Exhibit W_DFAS MD-715 Parts A through E, FY 2018, # 24 Exhibit X_GS-13 Supervisory Human Resources Specialists (Employee Benefits) Vacancy Announcement, # 25 Exhibit Y_GS-13 Supervisory HR Specialist (Employee Benefits) Position Description)(Sture, Tae) Modified on 6/22/2023 to create link to related motion (LBT). (Entered: 06/21/2023) |
| 06/27/2023 | 50 | NOTICE of Change of Attorney Information. Consistent with Local Rule 5-3, Tae K. Sture hereby notifies the Clerk of the court of changed contact information. (Sture, Tae) (Entered: 06/27/2023) |
| 07/05/2023 | 51 | REPLY in Support of Motion re 44 MOTION for Summary Judgment , filed by Defendant LLOYD J AUSTIN. (Fischer, Rachana) (Entered: 07/05/2023) |
| 07/06/2023 | 52 | MOTION for Extension of Time to 08/02/2023 in which to File a Surreply to 51 Reply in Support of Motion , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Text of Proposed Order)(Sture, Tae) Modified on 7/7/2023 (LBT). (Entered: 07/06/2023) |
| 07/10/2023 | 53 | ORDER ON PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE SURREPLY - Plaintiff, Gwendolyn D. Cunningham, by Counsel, having filed her Motion for Extension of Time to File Surreply and the Court having reviewed same, hereby GRANTS Plaintiff's Motion. [Filing No. 52 .] Plaintiff's Motion for Extension of Time to File Surreply is extended to August 2, 2023. Signed by Magistrate Judge Tim A. Baker on 7/10/2023. (JSR) (Entered: 07/10/2023) |
| 07/24/2023 | 54 | Second MOTION for Extension of Time to File Response to 08/09/2023 re 44 MOTION for Summary Judgment , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Text of Proposed Order)(Sture, Tae) (Entered: 07/24/2023) |
| 07/25/2023 | 55 | ORDER granting 54 PLAINTIFF'S SECOND MOTION FOR EXTENSION OF TIME TO FILE SURREPLY - IT IS THEREFORE ORDERED and AGREED that Plaintiff's Second Motion forExtension of Time to File Surreply is extended to August 9, 2023. Signed by Magistrate Judge Tim A. Baker on 07/25/2023. (AAS) (Entered: 07/25/2023) |
| 08/09/2023 | 56 | Surreply re 44 MOTION for Summary Judgment , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Exhibit Z_DFAS Regulation 1404.4-I)(Sture, Tae) (Entered: 08/09/2023) |
| 08/14/2023 | 57 | ORDER - The magistrate judge conferred with counsel August 10, 2023, on the issue of settlement. In follow up to this, Defendant shall serve an updated settlement proposal on Plaintiff by August 24, 2023. Plaintiff shall serve an updated settlement response on Defendant by August 31, 2023. The parties shall indicate in their settlement proposals whether they believe a Court-supervised settlement conference would be productive at this time, and the Court encourages counsel to confer with one another to help determine the usefulness of such a settlement conference. The parties shall provide the magistrate judge with a copy of their settlement proposals via email (MJBaker@insd.uscourts.gov) at the time of service on opposing counsel. (MGG) (Entered: |

APPELLANT000040

| | | |
|---|---|---|
| | | 08/14/2023) |
| 08/29/2023 | 58 | ORDER SETTING TELEPHONIC SETTLEMENT CONFERENCE AND RELATED DEADLLINES - This matter is set for a telephonic settlement conference at 1:30 p.m. (Eastern Time) on October 5, 2023. The information needed by counsel of record to participate in this telephonic conference will be provided by separate notification. **SEE ORDER**(MGG) (Entered: 08/29/2023) |
| 09/19/2023 | 59 | Joint MOTION to Vacate *Settlement Conference, filed by Plaintiff, Gwendolyn Cunningham and*, filed by Defendant LLOYD J AUSTIN. (Attachments: # 1 Text of Proposed Order)(Fischer, Rachana) (Entered: 09/19/2023) |
| 09/20/2023 | 60 | Joint MOTION for Continuance *of Trial*, filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Text of Proposed Order)(Sture, Tae) (Entered: 09/20/2023) |
| 09/20/2023 | 61 | ORDER - This matter is before the Court on the parties' Joint Motion to Vacate Settlement Conference. The Court, having reviewed the motion and being duly advised in the premises, now GRANTS the Motion. [Filing No. 59 .] The settlement conference set for October 5, 2023, in this matter is VACATED. It will not be reset at this time. (See Order.) Signed by Magistrate Judge Tim A. Baker on 9/20/2023. (JSR) (Entered: 09/20/2023) |
| 09/26/2023 | 62 | ORDER granting 60 Motion for Continuance - The final pretrial conference currently set for November 7, 2023, and the jury trial currently set for November 20, 2023, are hereby VACATED. New dates will be established, if necessary, after the Court rules on the pending motion for summary judgment. Signed by Judge Sarah Evans Barker on 9/26/2023.(JRB) (Entered: 09/27/2023) |
| 12/01/2023 | 63 | ORDER granting 44 Motion for Summary Judgment - Final judgment shall be entered accordingly. SEE ORDER. Signed by Judge Sarah Evans Barker on 12/1/2023. (JRB) (Entered: 12/04/2023) |
| 12/01/2023 | 64 | FINAL JUDGMENT - The Court having this day made its Order directing the entry of final judgment, the Court now enters FINAL JUDGMENT. Judgment is entered in favor of Defendant and against Plaintiff. Plaintiff shall take nothing by her complaint and this action is terminated. Signed by Judge Sarah Evans Barker on 12/1/2023.(JRB) (Entered: 12/04/2023) |
| 01/30/2024 | 67 | NOTICE OF APPEAL as to 64 Closed Judgment, 63 Order on Motion for Summary Judgment, filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Filing fee $605, receipt number AINSDC-8003098) (Sture, Tae) (Entered: 01/30/2024) |
| 01/30/2024 | 68 | DOCKETING STATEMENT by GWENDOLYN D CUNNINGHAM re 67 Notice of Appeal (Sture, Tae) (Entered: 01/30/2024) |
| 01/30/2024 | 69 | PARTIES' SHORT RECORD re 67 Notice of Appeal **- Instructions for Attorneys/Parties attached.** (KAA) (Entered: 01/30/2024) |

**Case #: 1:22-cv-00165-SEB-TAB**

APPELLANT000041

No. 24-1133

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| GWENDOLYN D. CUNNINGHAM, | ) | On Appeal from the United States |
| | ) | District Court for the Southern |
| Plaintiff-Appellant, | ) | District of Indiana, Indianapolis |
| | ) | Division |
| v. | ) | |
| | ) | No. 1:22-cv-00165-SEB-TAB |
| LLOYD J. AUSTIN, III, in his official | ) | |
| Capacity as Secretary of the United | ) | |
| States Department of Defense, | ) | The Honorable |
| | ) | SARAH EVANS BARKER |
| Defendant-Appellee. | ) | District Judge Presiding |

## <u>PLAINTIFF-APPELLANT'S DOCKETING STATEMENT</u>

**I.      JURISDICTION OF THE DISTRICT COURT**

The District Court had jurisdiction as a civil action arising under the laws of the United States pursuant to Title VII of the Civil Rights Act of 1964, 28 U.S.C. § 1391(b).

**II.     JURISDICTION OF THE COURT OF APPEALS**

This appeal is taken from the final decision of the U.S. District Court for the Southern District of Indiana on December 1, 2023.

The Seventh Circuit Court of Appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

The original due date for the filing of the Notice of Appeal was December 31, 2023. On December 11, 2023 , Appellant (Plaintiff) filed her *Ex Parte Motion for Enlargement of Time to*

1

*File Plaintiff's Notice of Appeal.*  On December 13, 2023, the District Court granted Appellant's (Plaintiff's) *Ex Parte Motion for Enlargement of Time to File Plaintiff's Notice of Appeal*, which extended the time to file her Notice of Appeal to January 30, 2024.

Because this appeal is from a summary judgment in favor of Defendant, there was no disposition of any motion for a new trial.

This case is not a direct appeal from a decision of a Magistrate Judge.

This appeal is sought from the final judgment (DKT #64) of the U.S. District Court for the Southern District of Indiana issued on December 1, 2023, which disposed of all claims with respect to all parties.

Appellee (Defendant), Lloyd J. Austin was the Secretary of the U.S. Department of Defense at all relevant times of this litigation.

Dated this Seventeenth day of June 2024.

> Respectfully submitted,
> */s/ Tae Sture*_____
> Tae Sture, Attorney No. 25120-29
> Sture Legal Services, LLC
> 155 East Market Street, Suite 501
> Indianapolis, IN 46204
> Email: tae@sturelaw.com
> Ph: (317) 577-9090
> Fax: (317) 577-1102

APPELLANT000043

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 17, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Rachana N. Fischer
Assistant United States Attorney Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis, IN 46204-3048
Telephone No.: (317) 226-6333
Fax No.: (317) 226-5027
Email: rachana.fischer@usdoj.gov

*/s/ Tae Sture*
Tae Sture
Attorney for the Plaintiff-Appellant

APPELLANT000044

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GWENDOLYN D CUNNINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00165-SEB-TAB |
| | ) | |
| LLOYD J AUSTIN in His Official Capacity as | ) | |
| Secretary of the U.S. Department of Defense, | ) | |
| | ) | |
| Defendant. | ) | |

**FINAL JUDGMENT**

The Court having this day made its Order directing the entry of final judgment, the

Court now enters FINAL JUDGMENT.

Judgment is entered in favor of Defendant and against Plaintiff. Plaintiff shall take

nothing by her complaint and this action is terminated.

IT IS SO ORDERED.


Date: ___12/1/2023___                    _Sarah Evans Barker_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Rachana Nagin Fischer
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
rachana.fischer@usdoj.gov

Tae K. Sture
STURE LEGAL SERVICES LLC
tae@sturelaw.com

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GWENDOLYN D CUNNINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00165-SEB-TAB |
| | ) | |
| LLOYD J AUSTIN in His Official Capacity as | ) | |
| Secretary of the U.S. Department of Defense, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Gwendolyn D. Cunningham ("Ms. Cunningham") filed this lawsuit against her employer, Defendant Lloyd J. Austin ("Defendant"), in his official capacity as Secretary of the United States Department of Defense, alleging that she was denied a promotion based on her race and sex, in violation of Title VII. *See generally* 42 U.S.C. § 2000e-2. Defendant moved for summary judgment. Dkt. 44. For the reasons explained below, Defendant's Motion for Summary Judgment is **GRANTED**.

**I.      STANDARD OF REVIEW**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment standard requires "no *genuine* issue of *material* fact," meaning that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247−48 (1986) (emphasis in original).

1

Material facts are those that "might affect the outcome of the suit," and a dispute of material fact is genuine when "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

Summary judgment is neither "a vehicle for resolving factual disputes" nor a means to a "paper trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). As such, in evaluating a summary judgment motion, the district court need not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Id.* Indeed, those tasks belong to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). "The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge*, 24 F.3d at 920 (citing *Anderson,* 477 U.S. at 249–50). When deciding whether a genuine dispute of material fact exists, the court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572 (7th Cir. 2021).

At summary judgment, parties may support their assertions of undisputed facts by citing to record materials, including affidavits, declarations, and depositions. *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 955 (7th Cir. 2021) (citing Fed. R. Civ. P. 56(c)(1)(A)). Despite the reality that these record materials "by their nature are self-serving," they are nonetheless admissible on a summary judgment motion. *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013).

Recognizing that summary judgment motions are often "tedious and time consuming," our Local Rules require parties to "submit factual statements to assist with identifying

2

and isolating the disputed from the undisputed—all to help the court assess whether a par-

ticular claim should proceed to trial or instead can be resolved on the existing record."

*Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020) (citing S.D. Ind. L.

R. 56-1). Our Local Rules specifically require the non-moving party to respond with a

"Statement of Material Facts in Dispute" that "identifies the potentially determinative facts

and factual disputes that the party contends demonstrate a dispute of fact precluding sum-

mary judgment." S.D. Ind. L. R. 56-1(b). To comply with this rule, the nonmovant's re-

sponse "should contain concise statements of fact, not extended statements of argument."

*Pike v. Caldera*, 188 F.R.D. 519, 525 (S.D. Ind. 1999)[1]; *see* S.D. Ind. L.R. 56-1 (Advisory

Committee Comments Re: 2002 Amendments) (statement of facts must "state facts, not

the party's argument"); *Hinterberger*, 966 F.3d at 527 (stating that the Local Rules "pro-

hibit[ ] the inclusion of any argument—which should be saved for briefing"). "[F]actual

inferences do not constitute an appropriate inclusion" in a statement of facts, for courts

"must have a clear picture of the facts" before deriving reasonable inferences therefrom.

*Id.*

## II.   FACTUAL & PROCEDURAL BACKGROUND

Before turning to our recitation of the facts, we pause to comment briefly on Ms.

Cunningham's noncompliance with our Local Rules. Her "Statement of Material Facts in

Dispute" contains numerous legal arguments, *see*, *e.g.*, Pl.'s Resp. at 9, 11, 19, dkt. 48,

---

[1] Though this decision discusses the since-amended Local Rule on summary judgment procedure,
its admonition against integrating legal argument into factual assertions remains consistent with
our current rule.

APPELLANT000048

which our Local Rules explicitly prohibit from being inserted as disputed material facts. Ms. Cunningham's intermingling of facts and arguments hinders what ought to be the parties' clear mustering of the facts.

The Seventh Circuit has "repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings." *Stevo v. Frasor*, 662 F.3d 880, 887–88 (7th Cir. 2011). Though we choose not to exercise the full breadth of our authority here (for example, by striking non-compliant portions of Plaintiff's submissions), we remind Ms. Cunningham's counsel of the "responsibility to present th[e] facts in the manner dictated by local court rules." *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002).

Notwithstanding the challenges imposed by Ms. Cunningham's non-compliance, we have successfully culled the facts as follow below, drawing all reasonable inferences in Ms. Cunningham's favor.

## A.   Ms. Cunningham's Employment at the Defense Finance and Accounting Service

The Defense Finance and Accounting Service ("DFAS"), a sub-agency of the Department of Defense, is responsible for processing all payments to servicemembers, employees, retirees, annuitants, and major Department of Defense contractors and vendors. Ms. Cunningham began her work for the DFAS in 1988 as a parttime secretary, a position ranked at the GS-4 level.[2] In 1991, Ms. Cunningham transitioned to a fulltime secretarial

---

[2] "GS level" refers to the General Schedule classification and pay system used for most federal civilian jobs. There are fifteen grades, starting at GS-1 and ending at GS-15.

APPELLANT000049

position, and, by 1994, she was promoted to retirement counselor at the GS-5 or 6 level. As a retirement counselor, Ms. Cunningham provided other employees with certain estimates of their predicted monthly annuity payments. She progressed through the ranks while in this role, eventually hitting the GS-7, GS-9, and GS-11 ranks.

The Benefits and Services Division ("Benefits Division"), a division of the DFAS's Human Resources Department, oversees retirement calculations, workers compensation claims, and a Customer Care Center. Prior to a 2018 restructuring, the Benefits Division was led by a GS-14 Benefits Division Chief ("GS-14 Division Chief"), who oversaw three teams: the Benefits and Services team, the Customer Care Center team, and the Workers Compensation team. Each team was led by a specific GS-12 employee: Ms. Cunningham led the Benefits team as Benefits Supervisor, which role she assumed in 2012 after ten years as a team lead; Emanuel Griffin ("Mr. Griffin") led the Customer Care Center as a team lead; and Anita Fisher ("Ms. Fisher") led Workers Compensation as a team lead.

Though similarly ranked as GS-12 positions, team leads had less supervisory responsibilities than supervisors, like Ms. Cunningham, who issued performance evaluations, disciplined employees, and approved requests for two or more days of annual leave. From 2003 to 2018, Ms. Cunningham also served as the acting Chief of Benefits, stepping into that role when it was temporarily vacant due to the current Division Chief's absence.

## B.    New GS-13 Supervisor Position

In Spring 2017, Howard Locke ("Mr. Locke") was promoted from GS-14 Division Chief to GS-15 Director of the Human Resources Shared Services Center. While awaiting his GS-14 replacement, Mr. Locke performed both roles. During this time, he sought to

create opportunities for GS-12 employees to advance to the GS-14 Division Chief role because there had otherwise been no GS-13 openings for those employees to advance through the ranks.

Upon Mr. Locke's request, a Classification team reviewed the Benefits Division's structure and suggested that Mr. Locke convert an existing GS-12 vacancy to a GS-13 position, whose occupant would oversee a newly combined Benefits and Worker's Compensation team. As a result of this revised structure, the GS-12 Benefits Supervisor would become a non-supervisory technical position, and the Workers Compensation team lead would become a non-team lead. The Classification team also conducted a desk audit of various positions within the Benefits Division, and, in relevant part, concluded that the Benefits Supervisor was properly categorized as a GS-12 rank.

In October 2017, the DFAS posted a vacancy announcement for the newly created GS-13 Supervisory Human Resources Specialist (Employee Benefits) position ("GS-13 Supervisor position"), which was open to federal employees, certain qualifying veterans, and other non-federal employees. To qualify for the position, applicants were required to have "[o]ne year of specialized experience equivalent in level of difficulty and responsibility to that of the next lower grade (GS-12) within the federal service, which demonstrates the ability to perform the duties of the position." Dkt. 44-13 at 3. "Specialized experience" meant "advising and guiding senior management and customers regarding employee Health Benefits, Retirement and/or Workers Compensation programs, regulations, policy and standards; training and reviewing the work of team members; and resolving issues involving the administration of benefits, retirement or workers compensation programs."

6

*Id.* Because the vacancy was open to certain non-federal applicants, such as disabled veterans, both federal and private sector past employment were considered relevant to a candidate's "specialized experience."

According to the vacancy announcement, the GS-13 Supervisor's responsibilities included:

- Serving as the first line supervisor and manager of day-to-day operations of the Employee Benefits Division;

- Providing advisory and consultative services to employees and managers about the regulations, policy, and program delivery of employee retirement, health and life insurance programs, Thrift Savings Program ("TSP"), and workers compensation program;

- Representing the DFAS to serviced customers by providing high level policy advisory services regarding current or proposed program regulations or service delivery;

- Evaluating program delivery for efficiency and effectiveness and implementing policy and procedural changes to improve operations;

- Providing programmatic analysis of the impact of various benefits programs to assist leadership in short-term and long-term workforce planning; and

- Supervising a team of specialists and support staff to include planning, assigning, and overseeing work, training, and developing staff, and resolving grievances and complaints.

APPELLANT000052

Dkt. 44-13 at 2.

The application window closed on November 6, 2017. Ordinarily, DFAS policy required hiring selections within 120 days of the application's closing date, but because Mr. Locke sought to have the incoming GS-14 Division Chief (to whom the new GS-13 Supervisor would report) to make the selection, he postponed the interviews. Ms. Cunningham evidently shared this understanding, explaining that "interviews were delayed because we had a new person coming in as chief, and I guess management wanted him to be able to review the resumes." Cunningham Dep. 62:12–26, dkt. 44-1.

On April 1, 2018, Andrew Hartz ("Mr. Hartz") (Caucasian male) replaced Mr. Locke as GS-14 Division Chief. Before interviewing candidates for the GS-13 Supervisor position, Mr. Hartz asked Shante Jones ("Ms. Jones") (African American female), then-GS-14 supervisor of Talent Management and Integration, to join him because they had worked together previously, and he knew of her prior experience with HR work processes. Mr. Hartz developed four categories to evaluate candidates: (1) HR & Benefits Subject Matter Expert ("SME"); (2) Supervisory/Leadership skills; (3) Teamwork & Process Innovation; and (4) Customer Service. In each category, Mr. Hartz identified the specific abilities and characteristics that an ideal candidate would demonstrate. Additionally, Mr. Hartz actively consulted with Ms. Jones in developing six interview questions based on the responsibilities listed in the vacancy announcement. These interview questions included the following:

(1)     Describe your background and experience with HR and Benefits. What area of HR/Benefits is your most in-depth experience?

8

(2)     Why do you want to be the Employee Benefits Supervisor?

(3)     If selected, this job will require you to manage the workload of a large team. How do you juggle conflicting priorities?

(4)     Since 2016, HR has had a rapid increase in size (headcount), which presents both opportunities and challenges for our organization. Can you give some examples of how you've developed the technical skills of team members assigned to you?

(5)     As we mentioned in the beginning, this is a new position that will change the structure of the Benefits Division by combining the [Workers Compensation] Team and Employee Benefits. If you were selected, what do you think would be your largest challenge or highest priority in the first 30-90 days?

(6)     What is your style for handling a difficult conversation?

Dkt. 49-15.

## C.    The Applicants & Interviews

Ultimately, four individuals applied for the GS-13 Supervisor position: Ms. Cunningham (African American female), Ms. Fisher (Caucasian female), Mr. Griffin (African American male), and Anthony Opat ("Mr. Opat") (Caucasian male).[3] Mr. Hartz and Ms.

---

[3] Human resources personnel had also created two Certificates of Eligibles, or lists of applicants qualified for the GS-13 Supervisor position. The first list provided candidates who could be hired through Competitive Merit Promotion and included Ms. Cunningham, the two team leads—Ms. Fisher and Mr. Griffin—Mr. Opat, and Tracy Zimmerman ("Ms. Zimmerman"). The other list, the Merit Referral List, provided only Mr. Griffin's name because he was eligible for non-competitive selection based on his status as a thirty percent or more service-connected disabled veteran. Mr. Hartz did not review either Certificate of Eligibles and thus was unaware of the names on these lists.

APPELLANT000054

Jones conducted interviews on May 31, 2018, and June 1, 2018. Approximately ninety

minutes before each interview, Mr. Hartz and Ms. Jones disclosed questions three and four

to the incoming interviewee, thereby providing each candidate with the benefit of a bit of

advance preparation.

   Though four candidates applied and interviewed for the position, the following rec-

itation of facts focuses—as did the parties' briefs—on both African American candidates,

who were also the finalists for the job, Ms. Cunningham and Mr. Griffin.

   1.   Ms. Cunningham's Resume & Interview

   Ms. Cunningham's two-page resume enumerated only one aspect of her employ-

ment history—her current role as a GS-12 Benefits Supervisor, which position she had

occupied since 2012. Her resume listed no other experience, education, training, profes-

sional licenses, or certificates. Presumably misreading the vacancy announcement, Ms.

Cunningham believed the vacancy announcement had instructed applicants to list only five

or six years of relevant experience. Cunningham Dep. 46:21–47:4, dkt. 44-1 (describing

her "[v]ague memory . . . that the vacancy asked for six years—five, six years of service").

To the extent her resume did not accurately encapsulate her work experience, Ms. Cun-

ningham stated that she "relayed that information in [her] interview." Cunningham EEOC

Decl. at 7, dkt. 44-2. Ms. Cunningham also mistakenly omitted the last four digits of her

then-supervisor Mr. Locke's phone number. Mr. Hartz, who at this time had only worked

APPELLANT000055

with Ms. Cunningham for a short period, *id.* at 62:24–63:1, later recalled that Ms. Cunningham's resume "appeared incomplete." Hartz EEOC Decl. at 8, dkt. 44-21.[4]

Ms. Cunningham recalled that her interview lasted approximately thirty minutes (irrespective of how much time had been allotted by the interviewer). Cunningham Dep. 63:23–24, dkt. 44-1. In his interview notes, Mr. Hartz marked that Ms. Cunningham was the "Best SME" but that her interest in the GS-13 Supervisor position was, at least in part, an effort to maintain "status quo." Dkt. 44-17 at 4. He also described several of Ms. Cunningham's responses as "good . . . but tactical" and another as "practical . . . [between] tactical and strategic."[5] *Id.* at 5–6. When Ms. Cunningham discussed how she developed the technical skills of her team members, she recounted how she personally trained each employee, and Mr. Hartz recorded in his interview notes that "in the current env[ironment] this approach doesn't scale well." *Id.* at 5. Mr. Hartz later "remember[ed] being disappointed" with Ms. Cunningham's interview responses because he believed she did not "fully prepare[ ]" or "capitalize on th[e] opportunity" to prepare thorough answers, despite having received certain questions in advance. Hartz EEOC Decl. at 8, dkt. 44-21. Though

---

[4] Ms. Cunningham objects to our consideration of testimonial evidence from DFAS management officials, like Mr. Hartz, under the "interested witness" rule, which directs courts to ignore controverted evidence submitted by an interested witness or party. Pl.'s Resp. at 23–24, dkt. 48 (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151 (2000) (deciding a motion for judgment as a matter of law)). However, the Seventh Circuit has "repeatedly emphasized over the past decade" that "the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill*, 724 F.3d at 967. Plaintiff's invocation of this rule, therefore, is groundless, and we shall and do therefore properly consider Defendant's proffered evidence.
[5] Mr. Hartz elaborated in his deposition that "tactical" describes short-term thinking that is focused on the operational aspects of HR, whereas "strategic" describes a longer-term perspective that considers HR as a whole. Hartz Dep. 26:3–27:19, dkt. 44-9.

APPELLANT000056

contesting that she was unprepared, Ms. Cunningham conceded that she "may not have offered as much information as [the interviewers] were looking for" because she "simply tr[ied] to answer the questions as asked, instead of elaborating on things that were not asked." Cunningham EEOC Reply Decl. at 3, dkt. 44-3.

2.   Mr. Griffin's Resume & Interview

Mr. Griffin's nine-page resume captured thirty-two years of education and experience, listing a bachelor's degree in construction engineering technology, a Master's in Business Administration ("MBA"), and a myriad of certifications. After twenty-three years of service in the United States Air Force, Mr. Griffin worked as an Industrial Relations Manager for the City of Indianapolis. In 2009, he joined DFAS as a Labor Management and Employee Relations Specialist, training employees and advising upper management on human resource issues. In 2016, he joined the Benefits Division as the Customer Care Center team lead, in which role he led and operated a call center for matters related to staffing, benefits, and entitlements.

Mr. Griffin estimated that his interview lasted "[p]robably 45 minutes to an hour," despite repeatedly stating that he actually "d[id]n't know" how long it took. Griffin Dep. 40:8–13, dkt. 49-8.  During the interview, Mr. Hartz noted that Mr. Griffin was a "wide SME," albeit "not deep in fed[eral] bene[fits]." Dkt. 44-17 at 10. Mr. Griffin explained that he applied for the position to change the division atmosphere and to lead by example, which struck Mr. Hartz as a "strategic response." *Id.* Mr. Hartz believed that Mr. Griffin had demonstrated "leadership" by crafting an answer from "multiple angles." *Id.* at 11. For half of the interview questions, Mr. Hartz noted that Mr. Griffin gave the "best response" of all

12

the candidates. *Id.* at 11–12. In describing Mr. Griffin's interview, Mr. Hartz remembered that Mr. Griffin "brought more of a strategic view" and that he "touched on several facets of the question[s]," including "both tactics and strategy in his responses." Dkt. 44-21 at 3.

### D.   Selection

At the conclusion of all four interviews, Mr. Hartz and Ms. Jones narrowed their top selectees to Ms. Cunningham and Mr. Griffin. There is no dispute that both remaining candidates satisfied the minimum qualifications for the GS-13 Supervisor position, as they each had at least one year of specialized experience from their respective GS-12 positions. Likewise, there is no dispute that Mr. Hartz, the sole decisionmaker, did not review any candidates' prior performance evaluations. Hartz Dep. 35:2–17, dkt. 44-9 ("Performance appraisals are not part of the selection process.").

Mr. Hartz relied primarily on the candidates' resumes and interview performances to gauge the strength of their technical expertise, leadership, innovation, and customer service. *Id.* at 51:3–10, 96:1–19. Though Ms. Cunningham had superior technical expertise in federal benefits, she and Mr. Griffin ranked similarly in their leadership skills. Specifically, Mr. Hartz recognized that Ms. Cunningham had "a lot of experience in benefits teams" at DFAS, while Mr. Griffin "brought a lot of outside experience [and] military experience[ ]" to the table." *Id.* at 99:24–100:5. Mr. Griffin, however, showed better innovation and customer service skills from his time at the Customer Care Center, *id.* at 100:9–19, which ultimately led Mr. Hartz to conclude that Mr. Griffin "brought a broader skills mix to the table" and was the most qualified person for the role. Hartz EEOC Decl. at 8, dkt. 44-21.

13

Mr. Griffin's selection for the GS-13 Supervisor position was announced on June 18, 2018. Somewhere around that time, Mr. Hartz explained to Ms. Cunningham that she was not selected because "he was looking for a more rounded person." Cunningham Dep. 82:1, dkt. 44-1.

### E.     The MD-715 Report

For Fiscal Year 2018, DFAS collected department-wide data on minority representation in upper management into the Management Directive 715 Equal Employment Opportunity Program Status Report ("MD-715 Report"). Dkt. 49-23. According to this report (and the portions cited by Ms. Cunningham), only 3.57% of qualified African American females were selected for GS-11 through GS-15 promotions, compared to a 15.38% selection rate for African American males. *Id.* at 28. Relatedly, African American females represented 20.59% of the GS-12 rank within HR but only 5.26% of the GS-13 rank. *Id.* at 26.

### F.     The First EEOC Complaint

On August 7, 2018, Ms. Cunningham filed a formal complaint of discrimination, averring that her non-selection for the GS-13 Supervisor position was the product of race/color, sex, and age discrimination. Cunningham EEOC Decl. at 2–3, dkt. 44-2. DFAS accepted Ms. Cunningham's allegations for investigation on August 10, 2018. Dkt. 44-6 at 1.

According to Ms. Cunningham, she "ha[d] been consistently looked over for promotion," despite "feel[ing] like [she] was the best qualified for the position." Cunningham EEOC Decl. at 3, dkt. 44-2; dkt. 44-5 at 1. Her evidence was "just [Mr. Hartz's] verbal conversation with [her], where he stated that he wanted a more well-rounded person for the

14

position." Cunningham EEOC Decl. at 3, dkt. 44-2. Her race/color discrimination claim

rested on her belief that "they wanted someone else to work with" and that Mr. Griffin had

been "placed" in the Call Center, "knowing the [GS-13] vacancy was coming open," so

that she "would have less footing to stand on due to [them] being of the same race/color."

*Id.* at 7. Ms. Cunningham believed she was discriminated against based on sex because

"[t]he selecting official preferred a male," *id.*, which belief she described in her deposition

as "[h]eartfelt," Cunningham Dep. 108:24–109:8, dkt. 44-1. Finally, she alleged age dis-

crimination because she was retirement eligible while Mr. Griffin was not. Cunningham

EEOC Decl. at 7, dkt. 44-2. Overall, the crux of Ms. Cunningham's allegations was that

she was "imminently more qualified than the selectee," based on his lack of federal benefits

and supervisory experience. *Id.*

On November 3, 2021, DFAS issued a Final Agency Decision wherein it concluded

that Ms. Cunningham did not demonstrate that she had been discriminated against. Specif-

ically, DFAS explained that management articulated legitimate, non-discriminatory rea-

sons for its hiring decision; that record evidence and testimony suggested management's

stated reasons were credible; and that Ms. Cunningham failed to provide sufficient persua-

sive evidence to undermine management's reasons. Dkt. 44-20 at 7. The Final Agency De-

cision also informed Ms. Cunningham of her right to sue in federal district court within

ninety days. *Id.* at 9.

### G.   The Second EEOC Complaint

On August 14, 2020, Ms. Cunningham filed a second EEOC complaint, claiming

that the 2017 desk audit revealed her GS-12 position should have been ranked as GS-14.

APPELLANT000060

As an incumbent who had been successfully performing her job duties for nine years, she therefore believed that she "should have been non-competitively promoted to GS-13/14." Dkt. 44-7 at 1. Notwithstanding her prior assumptions about the desk audit, Ms. Cunningham reviewed the audit during her deposition and acknowledged that nothing therein suggested her position should have been reclassified to a higher grade. Cunningham Dep. 133:14–16, dkt. 44-1. Whatever the merits of this second EEOC complaint, it was ultimately dismissed as untimely. *Id.* at 126:7–9. In her Statement of Claims filed on November 16, 2022, Ms. Cunningham did not reference this noncompetitive promotion claim. Dkt. 34.

### H.    This Lawsuit & Subsequent Developments

On January 21, 2022, Ms. Cunningham sued her employer, arguing that it discriminated against her on the basis of her sex and race by selecting "a less qualified African American male" for the GS-13 Supervisor position. Dkt. 1. In August 2022, Mr. Griffin left DFAS, vacating the GS-13 Supervisor position. Ms. Cunningham applied for and, this time, was selected as the GS-13 Supervisor. Accordingly, she seeks to recover damages for the approximate four years that she was a GS-12 rather than a GS-13. Defendant moved for summary judgment on May 10, 2023, which motion is now fully briefed and ripe for ruling.

## III.    DISCUSSION

### A.    Title VII

Title VII prohibits employers from discriminating against an individual on the basis of protected characteristics, such as sex and race. 42 U.S.C. § 2000e-2(a)(1). A complainant

APPELLANT000061

can establish that her employer discriminated against her by demonstrating that sex or race "was a motivating factor . . . for the challenged employment practice." *Id.* § 2000e–2(m). Accordingly, a Title VII plaintiff will survive summary judgment if a trier of fact would find that, at the time of the adverse employment decision, the employer was motivated by the employee's sex, race, or other protected characteristic. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (discussing disparate treatment claims).

Here, Ms. Cunningham contends that her employer discriminated against her in violation of federal law by not selecting her for the GS-13 Supervisor position because of her sex and race.[6] She asserts an intersectional "sex-plus" theory of discrimination, arguing that she experienced discrimination based on sex in conjunction with another characteristic, namely, her race. Though the Seventh Circuit has "not yet decided" whether to recognize this iteration of Title VII protection, it has acknowledged that the term "sex-plus" is "simply a heuristic . . . developed in the context of Title VII to affirm that plaintiffs can, under certain circumstances, survive summary judgment even when not all members of a

---

[6] Ms. Cunningham's claim in this lawsuit is framed as a disparate treatment cause of action—not disparate impact, which involves a challenge to an employment practice that, while facially neutral, impacts a particular group unfavorably and cannot be justified by business necessity. *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). Disparate impact claims require plaintiffs: (1) to identify a specific, facially neutral employment practice that is "allegedly responsible for an[ ] observed statistical disparit[y]"; and (2) to offer statistical evidence that the challenged policy caused that disparity. *Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005) (internal citations omitted). Ms. Cunningham's reference to the MD-715 Report in her factual averments would be relevant, if at all, only to a disparate impact claim. *See generally* Pl.'s Resp. at 19–20, dkt. 48. Nowhere beyond this passing reference does she develop her argument. Because courts are not "obliged to research and construct legal arguments for the parties," we decline further exploration of evidence left untethered by a party to a legal argument. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

17

disfavored class are discriminated against." *Coffman v. Indianapolis Fire Dep't.*, 578 F.3d 559, 564 (7th Cir. 2009) (addressing claim of discrimination based on sex plus height).

Since the Seventh Circuit's most recent discussion of "sex-plus" discrimination claims in *Coffman*, several district courts within this judicial circuit have allowed sex-plus claims to proceed, reasoning, in part, that the EEOC Compliance Manual expressly protects individuals from intersectional discrimination based on multiple protected characteristics. EEOC Compliance Manual, Section 15: Race and Color Discrimination, at https://www.eeoc.gov/laws/guidance/section-15-race-and-color-discrimination#IVC (last visited November 29, 2023) ("Title VII prohibits discrimination not just because of one protected trait (e.g., race), but also because of the intersection of two or more protected bases (e.g., race and sex)."); *see, e.g.*, *Kimble v. Wis. Dep't of Workforce Dev.*, 690 F. Supp. 2d 765, 770 (E.D. Wis. 2010) ("African-American men, like African-American women, may bring intersectional claims."); *Chaikin v. Methodist Med. Ctr. of Ill.*, No. 18-cv-1208, 2018 WL 4643016, at *2 (C.D. Ill. Sept. 27, 2018) ("[T]he Court has seen examples of intersectional forms of discrimination under a *single* statute advance before federal courts—for example race and gender under Title VII . . . .").[7]

---

[7] We note, too, that many of the federal circuits permit intersectional discrimination claims to proceed. *Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1032 (5th Cir. 1980) (race and sex); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1416–17 (10th Cir. 1987) (race and sex); *Lam v. Univ. of Haw.*, 40 F.3d 1551, 1562 (9th Cir. 1994) (race and sex); *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 958 (6th Cir. 2014) (race and sex); *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643 (4th Cir. 2021) (sex and age). *Cf. Bryant v. Int'l Schs. Servs., Inc.*, 675 F.2d 562, 573 n.18 (3d Cir. 1982) (sex and marital status); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 118 (2d Cir. 2004) (sex and parenthood status); *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 43 (1st Cir. 2009) (sex and parenthood status).

APPELLANT000063

Notwithstanding the viability of a sex-plus discrimination claim, a plaintiff alleging any version of sex discrimination must proffer evidence that sex was a motivating factor in her non-selection for a promotion. *Coffman*, 578 F.3d at 563–65; 42 U.S.C. § 2000e–2(m). In other words, the plaintiff must show that she suffered an adverse employment action "at least in part because she is female." *Coffman*, 578 F.3d at 564. To satisfy this burden, plaintiffs may use the *McDonnell Douglas* "burden shifting analysis." *David v. Bd. of Trs. Of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). Under that framework, the plaintiff must first demonstrate a *prima facie* case that she (1) belongs to a protected class, (2) meets her employer's legitimate performance expectations, (3) suffered an adverse employment action, and (4) was treated worse than similarly situated employees outside the protected class. *Id.* at 225. Assuming that the plaintiff satisfies each element of her prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action, at which point the burden returns to the plaintiff to show that the defendant's reason was pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

## A.    Ms. Cunningham's Prima Facie Case

Here, Defendant does not contest Ms. Cunningham's prima facie case of sex discrimination. First, as an African American woman, she clearly belongs to a protected class. Second, the undisputed facts show that she met her employer's legitimate performance expectations. Third, she suffered an adverse employment action when she was not selected for the GS-13 Supervisor position. Lastly, a similarly situated person outside her protected

APPELLANT000064

class, namely, Mr. Griffin who was an African American male, was treated better than she when he was selected for the position.

### B.    Defendant's Legitimate Nondiscriminatory Reasons for Ms. Cunningham's Non-selection

Defendant argues that it had legitimate, nondiscriminatory reasons for selecting Mr. Griffin over Ms. Cunningham; to wit, he had a stronger resume, a better interview, a broader mix of skills, and a strategic approach that, combined, made him better qualified. It is well-established that an employer may hire someone it believes is best qualified for a position. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838 (7th Cir. 2009) (hiring better qualified person is a nondiscriminatory action). Courts do "not sit as a superpersonnel department that reexamines an entity's business decisions," and the qualifications for a position, albeit subjective, are precisely the type of business decision with which the judicial apparatus ought not interfere. *Baron v. City of Highland Park*, 195 F.3d 333, 341 (7th Cir. 1999) (internal quotation and citation omitted); *see also Murray v. Golden Rule Ins. Co./United Health Corp.*, 23 F. Supp. 3d 938, 953 (S.D. Ind. 2014) (stating that courts do not "weigh[ ] the prudence of employment decisions"). Accordingly, Defendant has satisfied its burden of providing a legitimate, nondiscriminatory explanation for Ms. Cunningham's non-selection.

### C.    Pretext

Once an employer proffers a legitimate nondiscriminatory reason for the plaintiff's non-selection, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered . . . were a pretext for discrimination." *Texas Dep't. of Cmty. Affairs*

APPELLANT000065

*v. Burdine*, 450 U.S. 248, 253 (1981) (citation omitted). Pretext is "a lie, specifically a phony reason for some action," or "an employer's efforts to cover its tracks and hide the real reasons for not selecting an applicant." *Chatman v. Bd. of Educ. of City of Chi.*, 5 F.4th 738, 746 (7th Cir. 2021) (internal quotations and citations omitted). A showing of pretext— without more—is insufficient; a plaintiff must also show that the employer acted on pro-hibited animus. *Id.* at 747.

Our sole concern regarding the issue of pretext is the honesty of the decisionmaker's explanation. *O'Connor v. DePaul Univ.*, 123 F.3d 665, 671 (7th Cir. 1997). Because courts are not superpersonnel departments, a decisionmaker's sincere, nondiscriminatory beliefs do not offend the law. *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004). Thus, an employer's mistaken or incorrect conclusions do not evince pretext. *Baron*, 195 F.3d at 341 (explaining that "the overall correctness or desirability of the reasons proffered is not relevant to the determination of pretext . . . , [d]espite the plaintiff's contentions to the contrary, [when] there is no evidence in the record to demonstrate that any of the[ ] reasons are fallacious").

Faced with Defendant's legitimate, nondiscriminatory reasons for Mr. Griffin's se-lection, Ms. Cunningham attempts to thread a pretextual needle, arguing that she was sig-nificantly more qualified than Mr. Griffin. She bases this argument on her subjective view of her own qualifications and unsubstantiated speculation of the decisionmaker's state of mind, but, at bottom, she fails to create a genuine issue of material fact that precludes sum-mary judgment.

APPELLANT000066

Though selection of a less-qualified candidate may serve as probative evidence of pretext, the difference in qualifications "must be a significant one." *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 738 (7th Cir. 2006) (citing *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 458 (2006)). "[U]nless th[e] differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue," competing qualifications are ordinarily insufficient to evince pretext. *Mlynczak v. Bodman*, 442 F.3d 1050, 1059 (7th Cir. 2006) (quoting *Millbrook v. IBP, Inc.*, 280 F.3d 1169 (7th Cir. 2002)) (internal quotation marks omitted). To succeed on this theory of pretext, the plaintiff must demonstrate that her comparative qualifications are "clearly superior" or "significantly better" than the selectee's qualifications. *Id.* at 1060 (quoting *Ash*, 546 U.S. at 457–58).

Ms. Cunningham has not produced evidence to show that she was either clearly or significantly better qualified than Mr. Griffin. The record evidence instead shows that, although only partially captured in her resume, Ms. Cunningham's many years of experience in federal benefits were known to Mr. Hartz at the time of his decision. Though her greater length of service at DFAS is undisputed, so too are Mr. Griffin's credentials, including a college degree, an MBA, relevant military and private sector experience, numerous military awards, and various certifications. *See, e.g., Rowe v. Shulkin*, No. 17-cv-9258, 2019 WL 2060951, at *14 (N.D. Ill. May 9, 2019) (seniority alone did not evince pretext when selectee had superior college performance, a master's degree, specialized training, military awards, and other relevant leadership experience) (citing cases). Further, Ms. Cunningham has produced no evidence (beyond mere speculation) to contradict Mr. Hartz's stated

22

impression that her interview responses "were the least thorough of any of the interview-ees." Dkt. 49-13 at 9. Therefore, Ms. Cunningham has not satisfied her burden of estab-lishing that reasonable persons of impartial judgment would find that she was clearly better qualified for the GS-13 Supervisor position than Mr. Griffin.

Courts have repeatedly stressed that employers are entitled to act on their honest, subjective evaluations of an applicant's qualifications. *See Blise v. Antaramian*, 409 F.3d 861, 867–68 (7th Cir. 2005). Aside from a subjective appraisal of her own credentials, Ms. Cunningham offers no evidence to undermine Mr. Hartz's honest assessment that favored Mr. Griffin. Rather, she has conceded the non-pretextual grounds for her non-selection. For instance, Ms. Cunningham stated in her deposition that Mr. Hartz likely "thought Mr. Griffin was more suitable," "wanted a more well-rounded person for the position," and maybe "wanted something different . . . for the benefits division . . . and felt like he could take that or do that with someone other than myself." Cunningham Dep. 109:23–110:24, 103:6–16, 109:9–22, dkt. 44-1. No doubt Ms. Cunningham was also qualified for the GS-13 position, but her personal beliefs are no substitute for Mr. Hartz's honest and well-in-tentioned beliefs about who ultimately qualified as the best selectee.

Ms. Cunningham next argues that Mr. Hartz improperly deviated from DFAS inter-view policy by asking "non-job related [sic] questions." Pl.'s Resp. at 17, dkt. 48. Deviation from internal policy may indeed evince pretext, *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 931 (7th Cir. 2020), but such deviation must also be discriminatorily motivated and prejudicial to the plaintiff. *Guinto v. Exelon Generation Co., LLC*, 341 F. App'x 240, 247 (7th Cir. 2009) (stating that consistent "misapplication" of internal policy does not evince

23

pretext); *see also Monroe v. City of Lawrence, Kan.*, 124 F. Supp. 3d 1097, 1118 (D. Kan.

2015) (explaining that the "mere fact that an employer failed to follow its own internal

procedures does not necessarily suggest that the employer was motivated by illegal dis-

criminatory intent"). Absent any legitimate explanation, an employer's "highly unusual"

deviation from normal practice regarding a single employee can signal pretext. *Baines v.*

*Walgreen Co.*, 863 F.3d 656, 664 (7th Cir. 2017). On the other, an employer's (perhaps

erroneous) reading of an internal policy—so long as applied consistently to all employ-

ees—does not cast doubt on the employer's legitimate, nondiscriminatory explanations.

*Ellis v. United Parcel Serv.*, 523 F.3d 823, 829–30 (7th Cir. 2008).

Here, DFAS's internal policy required that "[a]ll questions used in a selection inter-

view must be job related and tied to the skills or competencies identified in the job analysis.

The same questions, in the same order, should be asked of all applicants who are inter-

viewed." Dkt. 49-19 at 20. It is undisputed that Mr. Hartz asked each candidate the same

six questions and provided the same two questions in advance. *But see Blise*, 409 F.3d at

868 (noting that there is no legal requirement under Title VII to ask the same questions of

different applicants). Ms. Cunningham's critique that the interview questions were "ge-

neric, vague, and sought general human resources experience" leaves undeveloped any ar-

gument that they were crafted with discriminatory intent or prejudicial effect. Pl.'s Surreply

at 14–15, dkt. 56. In fact, the undisputed record shows that these purportedly "non-job-

related" interview questions were derived from the responsibilities enumerated in the va-

cancy announcement and were asked to each candidate; thus, insofar as the questions fell

APPELLANT000069

out of compliance with DFAS policy, Ms. Cunningham has proffered no evidence that the questions were posed with discriminatory intent or otherwise prejudiced her based on sex.

Ms. Cunningham also challenges the length of her interview, calling attention to the fact that Mr. Griffin's interview was appreciably longer than her interview.[8] We are confident that the difference in interview lengths does not, in this case, indicate pretext. As mentioned above, it is undisputed here that Mr. Hartz asked the same questions of each applicant. Nevertheless, exploring an applicant's background, professional qualifications, and "personality, poise, and manners"—i.e., a fundamental undertaking in an interview— is "often a give-and-take process" hardly capable of uniform repetition from candidate to candidate. *Blise*, 409 F.3d at 868. Mr. Hartz's recollection that Ms. Cunningham had the "least thorough" responses, coupled with her own admission that she did not readily offer information, leaves her shorter interview time entirely plausible and her criticism a far cry from being evidence of pretext. Ms. Cunningham's efforts to undermine the integrity of the interview process rest on nothing more than conjecture and, thus, do not create a triable issue of fact for a jury.

Finally, Ms. Cunningham asserts that Mr. Hartz's use of the military terms "tactical" and "strategic" to describe candidates' interview responses evinces bias toward males because "the military is predominately male." Pl.'s Resp. at 34, dkt. 48. The record discredits this conclusion, as Mr. Hartz testified that he did not necessarily borrow these terms from

---

[8] Though the record is unclear as to the specific amount of time formally allotted for each interview, Defendant does not dispute Ms. Cunningham's averment, premised on her and Mr. Griffin's deposition testimonies, that Mr. Griffin's interview was longer. As explained above, any such difference in time spent on the respective interviews is immaterial.

APPELLANT000070

the military; rather, he utilized these terms "to interpret things [he was] seeing in different candidates." Hartz Dep. 27:14–28:7, dkt. 44-9. Moreover, Mr. Hartz used "tactical" to describe responses from Mr. Opat, a Caucasian male, *see* dkt. 44-17, undermining the theory that Mr. Hartz's terminology was coded with improper bias. Even accepting that these descriptive terms were wholly derivative from the military, neither term relates to prohibited sex-based stereotypes, and Ms. Cunningham has not pointed to any legal authority concluding otherwise.

A holistic view of the evidentiary record does not suggest that Mr. Hartz's GS-13 selection was the product of sex (or sex plus race) discrimination. Based on the undisputed facts before us, no reasonable trier of fact could find that Ms. Cunningham's sex was a motivating factor in her non-selection for the GS-13 Supervisor position. Ms. Cunningham cannot defeat summary judgment by relying on her suppositions that are ultimately not borne out by the facts. *Rothman v. Emory Univ.*, 123 F.3d 446, 453 (7th Cir. 1997). Accordingly, we grant Defendant's motion for summary judgment on Ms. Cunningham's discrimination claim.

### B.    Abandoned Claims

Before concluding, we briefly remark on two claims omitted from Ms. Cunningham's Statement of Claims but included in her responsive brief (1) that Mr. Locke should have selected her in November 2017 at the close of the application window; and (2) that she should have been non-competitively promoted to a GS-13/14 position after the 2017 desk audit. *See* Pl.'s Resp. at 24, dkt. 48.

APPELLANT000071

Courts in this district have consistently held (and the Seventh Circuit has affirmed) that failure to assert a claim in a Statement of Claims, even if such claim arises under the same statute, operates as an abandonment of that claim. *Jackson v. Regions Bank*, No. 1:19-cv-01019-JMS-MPB, 2020 WL 4430588, at *4–5 (S.D. Ind. July 31, 2020), *aff'd*, 838 F. App'x 195 (7th Cir. 2021) (collecting cases). As Defendant points out, had Ms. Cunningham included these additional claims in her Statement of Claims, dkt. 34, it could have addressed them in its opening brief and designated appropriate evidence. Def.'s Reply at 2, dkt. 51. Ms. Cunningham offers no rebuttal to this argument in her surreply. *See generally* Pl.'s Surreply, dkt. 56. Accordingly, we find that she has effectively abandoned the two claims omitted from her Statement of Claims.

Even if these claims had not been abandoned, they would still fail for separate reasons. First, Ms. Cunningham takes issue with Mr. Hartz, rather than Mr. Locke, as the selecting official because an internal DFAS policy requires selection within 120 days of the close of a vacancy announcement. Dkt. 49-19 at 19. Here, the vacancy announcement closed at the end of November 2017, but Mr. Hartz did not make his selection until June 18, 2018, almost eight months later. This delay, Ms. Cunningham contends, indicates discriminatory pretext. However, as she readily acknowledged in her deposition, the interviews were postponed so that Mr. Hartz, as the incoming GS-14 Chief, could make the selection. Cunningham Dep. 62:12–16, dkt. 44-1. Moreover, the DFAS policy explicitly allows certain exceptions, provided that the requesting party "work[s] with the staffing specialist." Dkt. 49-19 at 19. Indeed, as previously explained, pretextual deviation from internal policy must be accompanied with discriminatory intent or prejudicial effect. *Joll*,

27

953 F.3d at 931; *Guinto*, 341 F. App'x at 247. Here, Ms. Cunningham has produced no evidence that postponing the GS-13 Supervisor selection was a discriminatorily motivated decision or that it prejudiced her because of her sex.

Second, Ms. Cunningham's noncompetitive promotion claim fails on separate grounds: she did not exhaust her administrative remedies and, even if she had, the documentary evidence plainly belies the veracity of her claim. A Title VII plaintiff must exhaust administrative remedies before filing suit in federal court. *Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003); *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 (7th Cir. 2013). According to the applicable administrative procedure, a federal employee must contact a Counselor within forty-five days of the aggrieved incident. 29 C.F.R § 1614.105(a). If no timely resolution results, the Counselor notifies the complainant of her right to file a formal complaint with the relevant agency. *Id.* § 1614.105(d). Only after the agency authorizes federal suit may the complainant sue her employer.

Here, Ms. Cunningham filed her second EEOC complaint on August 14, 2020, alleging that, per the 2017 desk audit, she should have been non-competitively promoted in April 2018—well past the forty-five-day deadline to file such a complaint. In fact, this noncompetitive promotion claim has already been dismissed as untimely. Even if such claim were properly before us, Ms. Cunningham has expressly acknowledged in her deposition that the 2017 desk audit reported no such conclusion; rather, it stated that her position was correctly categorized as GS-12 and in no way suggested that she was entitled to a non-competitive promotion.

APPELLANT000073

Notwithstanding the explications provided above, we regard the claims omitted from Ms. Cunningham's Statement of Claims as abandoned.

## CONCLUSION

For the reasons explicated above, Defendant's Motion for Summary Judgment is **GRANTED**. Dkt. 44. Final judgment shall be entered accordingly.

IT IS SO ORDERED.

Date:

_____12/1/2023_____

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Rachana Nagin Fischer
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
rachana.fischer@usdoj.gov

Tae K. Sture
STURE LEGAL SERVICES LLC
tae@sturelaw.com

29

CM/ECF LIVE                                    https://insd-ecf.sso.dcn/cgi-bin/DktRpt-insd.pl?930982397823137-L_1_0-1

Case 1:22-cv-00165-SEB-TAB   Document 69   Filed 01/30/24   Page 42 of 47 PageID #: 2044
Case: 24-1133   Document: 13   Filed: 06/17/2024   Pages: 141

# *** PUBLIC DOCKET ***

APPEAL,CLOSED

## U.S. District Court
## Southern District of Indiana (Indianapolis)
## CIVIL DOCKET FOR CASE #: 1:22-cv-00165-SEB-TAB

CUNNINGHAM v. AUSTIN                          Date Filed: 01/21/2022
Assigned to: Judge Sarah Evans Barker        Date Terminated: 12/01/2023
Referred to: Magistrate Judge Tim A. Baker   Jury Demand: Both
Cause: 42:2000e Job Discrimination (Employment)  Nature of Suit: 442 Civil Rights: Jobs
                                             Jurisdiction: Federal Question

**Plaintiff**

**GWENDOLYN D CUNNINGHAM**      represented by   **Tae K. Sture**
                                                STURE LEGAL SERVICES LLC
                                                155 E. Market Street
                                                Suite 700
                                                Indianapolis, IN 46204
                                                (317)577-9090
                                                Fax: (317) 577-1102
                                                Email: tae@sturelaw.com
                                                *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**LLOYD J AUSTIN**              represented by   **Rachana Nagin Fischer**
*in His Official Capacity as Secretary of the*   UNITED STATES ATTORNEY'S OFFICE
*U.S. Department of Defense*                     (Indianapolis)
                                                10 West Market Street
                                                Suite 2100
                                                Indianapolis, IN 46204
                                                (317) 229-2414
                                                Fax: (317) 226-5027
                                                Email: rachana.fischer@usdoj.gov
                                                *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/21/2022 | 1 | COMPLAINT against LLOYD J AUSTIN, filed by GWENDOLYN D CUNNINGHAM. (Filing fee $402, receipt number AINSDC-6936939) (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons Proposed Summons for Attorney General, # 3 Proposed Summons Proposed Summons for Secretary of Department of Defense, # 4 Proposed Summons Proposed Summons for US Attorney)(Sture, Tae) (Entered: 01/21/2022) |
| 01/21/2022 | 2 | NOTICE of Appearance by Tae K. Sture on behalf of Plaintiff GWENDOLYN D CUNNINGHAM. (Sture, Tae) (Entered: 01/21/2022) |

APPELLANT000075

| 01/24/2022 | 3 | Summons Issued as to LLOYD J AUSTIN. (LMK) (Entered: 01/24/2022) |
|---|---|---|
| 01/24/2022 | 4 | MAGISTRATE JUDGE's NOTICE of Availability to Exercise Jurisdiction issued. (LMK) (Entered: 01/24/2022) |
| 02/15/2022 | 5 | AFFIDAVIT of Service for Complaint served on Defendants on 1/27/2022, filed by GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Exhibit A_Proof of Service for Austin, # 2 Exhibit B_Proof of Service for Garland, # 3 Exhibit C_Proof of Service for Myers)(Sture, Tae) (Entered: 02/15/2022) |
| 03/21/2022 | 6 | NOTICE of Appearance by Rachana Nagin Fischer on behalf of Defendant LLOYD J AUSTIN. (Fischer, Rachana) (Entered: 03/21/2022) |
| 03/21/2022 | 7 | NOTICE of Parties' First Extension of Time re Filing a response to pleading defined by Fed. R. Civ. P. 7(a), filed by Defendant LLOYD J AUSTIN. (Fischer, Rachana) (Entered: 03/21/2022) |
| 03/29/2022 | 8 | SCHEDULING ORDER: Initial Pretrial Conference set for 5/3/2022 10:00 AM in room #234, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana before Magistrate Judge Tim A. Baker. If a proposed Case Management Plan ("CMP") has not yet been filed, the parties are ordered to confer prior to the initial pretrial conference and prepare a proposed CMP. See Order for additional information. Signed by Magistrate Judge Tim A. Baker on 3/29/2022.(SWM) (Entered: 03/30/2022) |
| 04/28/2022 | 9 | CASE MANAGEMENT PLAN TENDERED, filed by Plaintiff GWENDOLYN D CUNNINGHAM . (Sture, Tae) (Entered: 04/28/2022) |
| 04/29/2022 | 10 | *Defendant's* ANSWER to 1 Complaint *and Demand for Jury Trial*, filed by LLOYD J AUSTIN. (Fischer, Rachana) (Entered: 04/29/2022) |
| 05/04/2022 | 11 | ORDER: CASE MANAGEMENT PLAN APPROVED AS SUBMITTED. Parties appeared by counsel on 5/3/2022, for an Initial Pretrial Conference. Dispositive Motions due by 1/23/2023. Discovery due by 11/21/2022. Status Conference set for 10/4/2022 10:00 AM (Eastern Time) in Telephonic before Magistrate Judge Tim A. Baker. Signed by Magistrate Judge Tim A. Baker on 5/4/2022.(SWM) (Entered: 05/04/2022) |
| 05/09/2022 | 12 | *** WITHDRAWN PER DKT. NO. 15 *** MOTION to Strike 10 Answer to Complaint , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Sture, Tae) Modified on 5/10/2022 (SWM). (Entered: 05/09/2022) |
| 05/09/2022 | 13 | MOTION to Withdraw 12 MOTION to Strike 10 Answer to Complaint , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Text of Proposed Order)(Sture, Tae) (Entered: 05/09/2022) |
| 05/09/2022 | 14 | Amended MOTION to Strike 10 Answer to Complaint , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Sture, Tae) (Entered: 05/09/2022) |
| 05/10/2022 | 15 | ORDER granting Plaintiff's 13 MOTION to Withdraw Document 12. The Clerk is directed to withdraw Document 12. Signed by Magistrate Judge Tim A. Baker on 5/10/2022. (SWM) (Entered: 05/10/2022) |
| 05/23/2022 | 16 | NOTICE of Service of Initial Disclosures , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Sture, Tae) (Entered: 05/23/2022) |
| 05/23/2022 | 17 | *** STRICKEN PER DKT. NO. 21 *** *DEFENDANT'S AMENDED* ANSWER to Complaint *and Demand for Jury Trial*, filed by LLOYD J AUSTIN.(Fischer, Rachana) Modified on 6/7/2022 (SWM). (Entered: 05/23/2022) |
| 05/27/2022 | 18 | Witness List *Preliminary*, filed by Plaintiff GWENDOLYN D CUNNINGHAM, Exhibit List *Preliminary*, filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Sture, Tae) (Entered: 05/27/2022) |

APPELLANT000076

| 06/02/2022 | 19 | SCHEDULING ORDER - Final Pretrial Conference has been set for 11/7/2023 at 2:00 PM in room #216, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana before Judge Sarah Evans Barker. Jury Trial has been set for 11/20/2023 at 9:30 AM in room #216, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana before Judge Sarah Evans Barker. (See Order). Signed by Judge Sarah Evans Barker on 6/2/2022.(AKH) (Entered: 06/02/2022) |
|---|---|---|
| 06/06/2022 | 20 | Exhibit List *[Preliminary]*, filed by Defendant LLOYD J AUSTIN, Witness List *[Preliminary]*, filed by Defendant LLOYD J AUSTIN. (Fischer, Rachana) (Entered: 06/06/2022) |
| 06/07/2022 | 21 | MARGINAL ENTRY re Plaintiff's 14 Amended MOTION to Strike 10 Answer to Complaint - Defendant did not object or respond to this motion, though Defendant did file an amended answer. [Filing No. 17.] However, Defendant did not request leave to file an amended answer. Accordingly, Defendant's amended answer is stricken. Defendant shall file a response/objection to this motion by June 10, 2022. Also by this date, Plaintiff shall file a proposed order proposed order as required by Local Rule 5-5(d). Signed by Magistrate Judge Tim A. Baker on 6/7/2022.(SWM) (Entered: 06/07/2022) |
| 06/08/2022 | 22 | Submission of Proposed Order , re 14 Amended MOTION to Strike 10 Answer to Complaint , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Sture, Tae) (Entered: 06/08/2022) |
| 06/09/2022 | 23 | MOTION for Leave to File *Amended Answer*, filed by Defendant LLOYD J AUSTIN. (Attachments: # 1 Defendant's Amended Answer to Complaint and Demand for Jury Trial, # 2 Text of Proposed Order)(Fischer, Rachana) (Entered: 06/09/2022) |
| 06/10/2022 | 24 | RESPONSE in Opposition re 14 Amended MOTION to Strike 10 Answer to Complaint , filed by Defendant LLOYD J AUSTIN. (Fischer, Rachana) (Entered: 06/10/2022) |
| 06/13/2022 | 25 | MARGINAL ENTRY re Plaintiff's 14 Amended Motion to Strike 10 Answer to Complaint - Motion denied as moot in light of Filing No. 23. Signed by Magistrate Judge Tim A. Baker on 6/13/2022. (SWM) (Entered: 06/13/2022) |
| 06/13/2022 | 26 | ORDER granting Defendant's 23 Motion for Leave to File Amended Answer. Signed by Magistrate Judge Tim A. Baker on 6/13/2022. (SWM) (Entered: 06/13/2022) |
| 06/13/2022 | 27 | AMENDED ANSWER to Complaint and Demand for Jury Trial, filed by Defendant LLOYD J AUSTIN. (SWM) (Entered: 06/13/2022) |
| 07/15/2022 | 28 | Joint MOTION for Protective Order *[Uniform Stipulated] and Protective Order [Privacy Act], filed by Plaintiff, Gwendolyn D. Cunningham, and*, filed by Defendant LLOYD J AUSTIN. (Attachments: # 1 Uniform Stipulated Protective Order and Privacy Act Protective Order, # 2 Text of Proposed Order)(Fischer, Rachana) (Entered: 07/15/2022) |
| 07/18/2022 | 29 | UNIFORM STIPULATED PROTECTIVE ORDER AND PRIVACY ACT PROTECTIVE ORDER 28 APPROVED AND SO ORDERED. Signed by Magistrate Judge Tim A. Baker on 7/18/2022. (SWM) (Entered: 07/18/2022) |
| 09/14/2022 | 30 | Unopposed MOTION for Extension of Time to January 27, 2023 and March 24, 2023 , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Text of Proposed Order)(Sture, Tae) (Entered: 09/14/2022) |
| 09/15/2022 | 31 | ORDER granting Plaintiff's 30 Motion for Extension of Time - Dispositive Motions due by 2/24/2023. Discovery due by 1/27/2023. Signed by Magistrate Judge Tim A. Baker on 9/15/2022. (SWM) (Entered: 09/15/2022) |
| 10/05/2022 | 33 | ORDER ON OCTOBER 4, 2022, TELEPHONIC STATUS CONFERENCE AND ORDER SETTING TELEPHONIC STATUS CONFERENCE - Parties appeared by counsel October 4, 2022, for a telephonic status conference. Discussion held regarding discovery, settlement, and related matters. Given the parties' settlement positions, it does not appear that a court-supervised settlement conference would be productive at this time. The parties shall notify the court promptly if there is any material change in their settlement positions. This cause is set for a telephonic status conference at 9:30 a.m. on January 18, 2023. Parties shall participate in this conference by counsel. |

APPELLANT000077

| | | |
|---|---|---|
| | | The call-in instructions will be issued by separate order. The purpose of this conference is to discuss case status and settlement. Date: 10/5/2022 Signed by Magistrate Judge Tim A. Baker. (MGG) (Entered: 10/05/2022) |
| 11/16/2022 | 34 | Statement *of the Claims* by All Plaintiffs. (Sture, Tae) (Entered: 11/16/2022) |
| 11/28/2022 | 35 | Statement *of Defenses* by LLOYD J AUSTIN. (Fischer, Rachana) (Entered: 11/28/2022) |
| 01/17/2023 | 37 | Unopposed MOTION for Extension of Time to March 13, 2023 and April 10, 2023 , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Text of Proposed Order Proposed Order)(Sture, Tae) (Entered: 01/17/2023) |
| 01/18/2023 | 38 | MINUTE ORDER for proceedings held before Magistrate Judge Tim A. Baker: Telephonic Status Conference held on 1/18/2023; Discovery due by 3/13/2023., Dispositive Motions due by 4/10/2023. **SEE ORDER** Signed by Magistrate Judge Tim A. Baker. (MGG) (Entered: 01/18/2023) |
| 03/13/2023 | 39 | Joint MOTION for Extension of Time to *Certain Pretrial Deadlines*, filed by Defendant LLOYD J AUSTIN. (Attachments: # 1 Proposed Order)(Fischer, Rachana) (Entered: 03/13/2023) |
| 03/14/2023 | 40 | ORDER granting Parties' 39 Joint Motion for Extension of Certain Pretrial Deadlines - IT IS THEREFORE ORDERED that the deadline for non-expert witness discovery and discovery relating to liability issues is extended to and including April 12, 2023, and the deadline for the filing of dispositive motions is extended to and including May 10, 2023. As a result, the dispositive motions briefing schedule will be strictly enforced. Signed by Magistrate Judge Tim A. Baker on 3/14/2023.(SWM) (Entered: 03/14/2023) |
| 03/21/2023 | 41 | Witness List *[Preliminary]*, filed by Defendant LLOYD J AUSTIN, Exhibit List *[Preliminary]*, filed by Defendant LLOYD J AUSTIN. (Kirklin, J. Taylor) (Entered: 03/21/2023) |
| 03/21/2023 | 42 | Exhibit List , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Sture, Tae) (Entered: 03/21/2023) |
| 03/21/2023 | 43 | Witness List , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Sture, Tae) (Entered: 03/21/2023) |
| 05/10/2023 | 44 | MOTION for Summary Judgment , filed by Defendant LLOYD J AUSTIN. (Attachments: # 1 Exhibit 1 - Deposition Transcript of Cunningham, # 2 Exhibit 2 - EEO Declaration of Cunningham, # 3 Exhibit 3 - EEO Reply Declaration of Cunningham, # 4 Exhibit 4 - Interrogatory Responses of Cunningham, # 5 Exhibit 5 - EEO Complaint of Cunningham, # 6 Exhibit 6 - Acceptance of Claim, # 7 Exhibit 7 - EEO Amended Complaint of Cunningham, # 8 Exhibit 8 - Deposition Transcript of Locke, # 9 Exhibit 9 - Deposition Transcript of Hartz, # 10 Exhibit 10 - Declaration of Hartz, # 11 Exhibit 11 - Organizational Chart, # 12 Exhibit 12 - Witter Email, # 13 Exhibit 13 - Vacancy Announcement, # 14 Exhibit 14 - Certificate of Eligables, # 15 Exhibit 15 - Cunningham Application, # 16 Exhibit 16 - Griffin Application, # 17 Exhibit 17 - Interview Notes, # 18 Exhibit 18 - Email with Interview Questions, # 19 Exhibit 19 - Interview Questions Advanced, # 20 Exhibit 20 - Final Agency Decision, # 21 Exhibit 21 - EEO Declaration of Hartz, # 22 Exhibit 22 - Desk Audit)(Fischer, Rachana) (Entered: 05/10/2023) |
| 05/10/2023 | 45 | BRIEF/MEMORANDUM in Support re 44 MOTION for Summary Judgment , filed by Defendant LLOYD J AUSTIN. (Fischer, Rachana) (Entered: 05/10/2023) |
| 05/15/2023 | 46 | Unopposed MOTION for Extension of Time to File Response to 06/21/2023 re 44 MOTION for Summary Judgment , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Text of Proposed Order)(Sture, Tae) (Entered: 05/15/2023) |
| 05/16/2023 | 47 | ORDER granting Plaintiff's 46 Unopposed MOTION for Extension of Time to File Response to 06/21/2023 re 44 MOTION for Summary Judgment. Signed by Magistrate Judge Tim A. Baker on 5/16/2023. (SWM) (Entered: 05/16/2023) |

APPELLANT000078

| | | |
|---|---|---|
| 06/21/2023 | 48 | RESPONSE in Opposition re 44 MOTION for Summary Judgment , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Sture, Tae) (Entered: 06/21/2023) |
| 06/21/2023 | 49 | Designation of Evidence re 48 Response in Opposition to 44 Motion for Summary Judgment, filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Exhibit A_Deposition of Andrew Hartz, # 2 Exhibit B_Certificate of Eligibles, # 3 Exhibit C_Standard Form 50-B Gwendolyn D. Johnson (Cunningham), # 4 Exhibit D_Emanuel M. Griffin, Jr. Resume, # 5 Exhibit E_Affidavit of Gwendolyn D. Cunningham, # 6 Exhibit F_Deposition of Zephfina Wyatt, # 7 Exhibit G_Gwendolyn D. Cunningham Resume, # 8 Exhibit H_Deposition of Emanuel Griffin, # 9 Exhibit I_GS.-12 Supervisory Human Resources Specialist Position Description, # 10 Exhibit J_Desk Audit, # 11 Exhibit K_Email from Tony Opat to Howard Locke, # 12 Exhibit L_Howard Locke EEO Complaints, # 13 Exhibit M_Declaration of Andrew Hartz, # 14 Exhibit N_Declaration of Shante Jones, # 15 Exhibit O_Andrew Hartzs Interview Notes of all Interviewees, # 16 Exhibit P_Deposition of Gwendolyn D. Cunningham, # 17 Exhibit Q_Gwendolyn D. Cunningham Performance Evaluations, # 18 Exhibit R_Emanuel Griffin DD214, # 19 Exhibit S_DFAS 1402.1-1 Merit Promotion and Internal Placement, # 20 Exhibit T_Email from Kathleen Hendrickson to Jonathan Witter, # 21 Exhibit U_Deposition of Howard Locke, # 22 Exhibit V_Deposition of Susan Marie Davenport, # 23 Exhibit W_DFAS MD-715 Parts A through E, FY 2018, # 24 Exhibit X_GS-13 Supervisory Human Resources Specialists (Employee Benefits) Vacancy Announcement, # 25 Exhibit Y_GS-13 Supervisory HR Specialist (Employee Benefits) Position Description)(Sture, Tae) Modified on 6/22/2023 to create link to related motion (LBT). (Entered: 06/21/2023) |
| 06/27/2023 | 50 | NOTICE of Change of Attorney Information. Consistent with Local Rule 5-3, Tae K. Sture hereby notifies the Clerk of the court of changed contact information. (Sture, Tae) (Entered: 06/27/2023) |
| 07/05/2023 | 51 | REPLY in Support of Motion re 44 MOTION for Summary Judgment , filed by Defendant LLOYD J AUSTIN. (Fischer, Rachana) (Entered: 07/05/2023) |
| 07/06/2023 | 52 | MOTION for Extension of Time to 08/02/2023 in which to File a Surreply to 51 Reply in Support of Motion , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Text of Proposed Order)(Sture, Tae) Modified on 7/7/2023 (LBT). (Entered: 07/06/2023) |
| 07/10/2023 | 53 | ORDER ON PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE SURREPLY - Plaintiff, Gwendolyn D. Cunningham, by Counsel, having filed her Motion for Extension of Time to File Surreply and the Court having reviewed the same, hereby GRANTS Plaintiff's Motion. [Filing No. 52 .] Plaintiff's Motion for Extension of Time to File Surreply is extended to August 2, 2023. Signed by Magistrate Judge Tim A. Baker on 7/10/2023. (JSR) (Entered: 07/10/2023) |
| 07/24/2023 | 54 | Second MOTION for Extension of Time to File Response to 08/09/2023 re 44 MOTION for Summary Judgment , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Text of Proposed Order)(Sture, Tae) (Entered: 07/24/2023) |
| 07/25/2023 | 55 | ORDER granting 54 PLAINTIFF'S SECOND MOTION FOR EXTENSION OF TIME TO FILE SURREPLY - IT IS THEREFORE ORDERED and AGREED that Plaintiff's Second Motion forExtension of Time to File Surreply is extended to August 9, 2023. Signed by Magistrate Judge Tim A. Baker on 07/25/2023. (AAS) (Entered: 07/25/2023) |
| 08/09/2023 | 56 | Surreply re 44 MOTION for Summary Judgment , filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Exhibit Z_DFAS Regulation 1404.4-I)(Sture, Tae) (Entered: 08/09/2023) |
| 08/14/2023 | 57 | ORDER - The magistrate judge conferred with counsel August 10, 2023, on the issue of settlement. In follow up to this, Defendant shall serve an updated settlement proposal on Plaintiff by August 24, 2023. Plaintiff shall serve an updated settlement response on Defendant by August 31, 2023. The parties shall indicate in their settlement proposals whether they believe a Court-supervised settlement conference would be productive at this time, and the Court encourages counsel to confer with one another to help determine the usefulness of such a settlement conference. The parties shall provide the magistrate judge with a copy of their settlement proposals via email (MJBaker@insd.uscourts.gov) at the time of service on opposing counsel. (MGG) (Entered: |

APPELLANT000079

| | | |
|---|---|---|
| | | 08/14/2023) |
| 08/29/2023 | 58 | ORDER SETTING TELEPHONIC SETTLEMENT CONFERENCE AND RELATED DEADLLINES - This matter is set for a telephonic settlement conference at 1:30 p.m. (Eastern Time) on October 5, 2023. The information needed by counsel of record to participate in this telephonic conference will be provided by separate notification. **SEE ORDER**(MGG) (Entered: 08/29/2023) |
| 09/19/2023 | 59 | Joint MOTION to Vacate *Settlement Conference, filed by Plaintiff, Gwendolyn Cunningham and*, filed by Defendant LLOYD J AUSTIN. (Attachments: # 1 Text of Proposed Order)(Fischer, Rachana) (Entered: 09/19/2023) |
| 09/20/2023 | 60 | Joint MOTION for Continuance *of Trial*, filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Attachments: # 1 Text of Proposed Order)(Sture, Tae) (Entered: 09/20/2023) |
| 09/20/2023 | 61 | ORDER - This matter is before the Court on the parties' Joint Motion to Vacate Settlement Conference. The Court, having reviewed the motion and being duly advised in the premises, now GRANTS the Motion. [Filing No. 59 .] The settlement conference set for October 5, 2023, in this matter is VACATED. It will not be reset at this time. (See Order.) Signed by Magistrate Judge Tim A. Baker on 9/20/2023. (JSR) (Entered: 09/20/2023) |
| 09/26/2023 | 62 | ORDER granting 60 Motion for Continuance - The final pretrial conference currently set for November 7, 2023, and the jury trial currently set for November 20, 2023, are hereby VACATED. New dates will be established, if necessary, after the Court rules on the pending motion for summary judgment. Signed by Judge Sarah Evans Barker on 9/26/2023.(JRB) (Entered: 09/27/2023) |
| 12/01/2023 | 63 | ORDER granting 44 Motion for Summary Judgment - Final judgment shall be entered accordingly. SEE ORDER. Signed by Judge Sarah Evans Barker on 12/1/2023. (JRB) (Entered: 12/04/2023) |
| 12/01/2023 | 64 | FINAL JUDGMENT - The Court having this day made its Order directing the entry of final judgment, the Court now enters FINAL JUDGMENT. Judgment is entered in favor of Defendant and against Plaintiff. Plaintiff shall take nothing by her complaint and this action is terminated. Signed by Judge Sarah Evans Barker on 12/1/2023.(JRB) (Entered: 12/04/2023) |
| 01/30/2024 | 67 | NOTICE OF APPEAL as to 64 Closed Judgment, 63 Order on Motion for Summary Judgment, filed by Plaintiff GWENDOLYN D CUNNINGHAM. (Filing fee $605, receipt number AINSDC-8003098) (Sture, Tae) (Entered: 01/30/2024) |
| 01/30/2024 | 68 | DOCKETING STATEMENT by GWENDOLYN D CUNNINGHAM re 67 Notice of Appeal (Sture, Tae) (Entered: 01/30/2024) |

**Case #: 1:22-cv-00165-SEB-TAB**

APPELLANT000080