No. 24-1133

---

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

| | | |
|---|---|---|
| GWENDOLYN D. CUNNINGHAM, | ) | On Appeal from the United States |
| | ) | District Court for the Southern |
| Plaintiff-Appellant, | ) | District of Indiana, Indianapolis |
| | ) | Division |
| v. | ) | |
| | ) | No. 1:22-cv-00165-SEB-TAB |
| LLOYD J. AUSTIN, III, in his official | ) | |
| Capacity as Secretary of the United | ) | |
| States Department of Defense, | ) | The Honorable |
| | ) | SARAH EVANS BARKER |
| Defendant-Appellee. | ) | District Judge Presiding |

---

**REPLY BRIEF OF
PLAINTIFF-APPELLANT, GWENDOLYN D. CUNNINGHAM**

---

COUNSEL FOR APPELLANT

STURE LEGAL SERVICES LLC
Tae Sture
Attorney for
Plaintiff-Appellant, Gwendolyn D. Cunningham
155 E. Market Street, Suite 501
Indianapolis, IN 46204
Tel: 317-577-9090
Fax: 317-577-1102

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ii

ARGUMENT ........................................................................................ 1

    I.   Cunningham presented sufficient evidence of pretext. .................................... 3

      A.   Cunningham presented evidence of pretext where Hartz selected a less-qualified male candidate. ........................................................................ 3

      B.   Cunningham presented evidence of pretext where Defendant violated its own policy. ........................................................................................ 12

    II.   Cunningham identified material facts in dispute that need to be determined by the trier of fact. ....................................................................... 16

CONCLUSION ....................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

Cases

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................. 2

*Hobgood v. Ill. Gaming Bd.*,
  731 F.3d 635 (7th Cir. 2013) ................................................................. 12

*Keathley v. Ameritech Corp.*,
  187 F.3d 915 (8th Cir. 1999) ................................................................... 2

*Ortiz v. Werner Enters., Inc.*,
  834 F.3d 760 (7th Cir. 2016) ................................................................... 1

*Reeves v. Sanderson Plumbing Prods.*,
  530 U.S. 133 (2000) ............................................................................... 17

*Rudin v. Lincoln Land Cmty. College*,
  420 F.3d 712 (7th Cir. 2005) ................................................................. 12

*Scott v. Eastman Chem. Co.*,
  275 Fed. Appx. 466 (6th Cir. 2008) .............................................. 8, 9, 10

*Tex. Dep't of Cmty. Affairs v. Burdine*,
  450 U.S. 248 (1981) ........................................................................... 4, 8, 9

## ARGUMENT

Defendant-Appellee incorrectly argues that because Gwendolyn Cunningham (hereinafter "Cunningham") did not present evidence of pretext (which in fact she did), her Appeal fails as a matter of law. (Appellee's Brief, 29.) Cunningham identified ample evidence of pretext to overcome summary judgment, including Defendant-Appellee (1) not selecting the most qualified candidate for the GS-13 Supervisor position and (2) violating DFAS policy during the selection process for the GS-13 Supervisor position.

The requisite standard of proof in a discrimination case is not pretext alone, but whether all the evidence, including pretext, taken as a whole, would permit a trier of fact to find that the employer discriminated against the plaintiff for an impermissible reason. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016). "All evidence belongs in a single pile and must be evaluated as a whole." *Id.* Here, Defendant-Appellee resorts to selectively "atomizing" each piece of evidence, arguing that each such piece of evidence supports its motion for summary judgment.

The District Court erroneously credited Defendant-Appellee's atomized evidence and failed to credit any of Appellant's evidence. Moreover, the District Court erroneously, without explicitly declaring so, failed to draw all inferences in the light most favorable to the non-movant, Cunningham. For example, the District Court ignored all of Cunningham's superior qualifications, including but not limited to (1) that she had been performing most of the GS-13 supervisory duties for over

1

six years (Exh 1: Hartz Deposition, 55:5-11), (2) she had served as "Acting" Chief of Benefits (GS-14 position) (Exh 4: Cunningham Affidavit, 4:39-40.), and (3) she was deemed the subject matter expert for federal benefits (Exh 1: Hartz Deposition, 64:9-23; 99:14-100:8; 104:9-15.). Nor did the District Court hold that, given the quantity and quality of Plaintiff's evidence, such evidence created material facts in dispute. In other words, the District Court substituted its judgment for that of the jury in finding for Defendant.

As described in Plaintiff-Appellant's principal brief, summary judgment is to be denied whenever the nonmovant produces relevant evidence of a disputed material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (A genuine issue of fact exists if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented.").

Here, Cunningham produced sufficient evidence of several disputed material facts. The preponderance standard, could a jury find that it is more likely than not, is often disregarded by the courts.[1] In this case, could a jury find it is more likely than not that Defendant selected a male candidate who was less qualified than Cunningham because she is a black female?

---

[1] According to LexisNexis Context, District Court Judge Sarah Evans Barker granted summary judgment in 68.5% of Title VII gender discrimination cases out of 229 cases. Judge Baker granted summary judgment in 67% of Title VII race discrimination cases out of 257 cases. However, summary judgment should seldom be granted in the context of employment actions because they are inherently fact based. *Keathley v. Ameritech Corp.*, 187 F.3d 915, 919 (8th Cir. 1999).

I.    **Cunningham presented sufficient evidence of pretext.**

   A.  **Cunningham presented evidence of pretext where Hartz selected a less qualified male candidate.**

Defendant-Appellee argues that Cunningham cannot meet her burden of establishing pretext because she admitted that Andrew Hartz (hereinafter "Hartz") selected Emmanuel Griffin (hereinafter "Griffin") for the GS-13 Supervisor position because he believed Griffin was the better candidate. (Appellee's Brief, 26).

Defendant-Appellee mischaracterized Cunningham's deposition testimony. Cunningham's response to Defendant-Appellee's deposition question was not an admission at all. It was merely an answer to a question asking for further explanation of Cunningham's statement to a question asked during the EEOC's formal investigation process:

During Cunningham's deposition, Defense Counsel asked her,

> Q: "You were asked, What factors other than merit were at play in the decision [to select Griffin]? And your response was, The selecting official had something or someone in mind that he wanted for that position, someone he thought he could better work with. What did you mean by that?"

Cunningham responded by stating,

> A: "I felt like maybe he wanted something different organization-wise or structure – or for the benefits division, and, you know, maybe he felt like he could take that or do that with *someone other than myself*" (emphasis supplied).

(Exh 15: Cunningham's Deposition, 109:10-22.)

Cunningham's answer is more of an explanation of Hartz's biased, discriminatory attitude towards her ("someone other than myself") rather than an

admission that Hartz believed Griffin was the better candidate. A jury could easily find that Cunningham's answer was describing Hartz's unconscious bias against her because she is a woman and in favor of Griffin because he is a man.[2] "We believe we are safer with people who are like us" is a paraphrase of the social normative that we as humans prefer people who are like us.

A selecting official may act on an unconscious bias and at the same time have a genuine belief that he is selecting a better qualified candidate. That is the essence of unconscious bias. A selecting official cannot escape liability by acting on an impermissible bias, conscious or unconscious, in favor of males over black women. To allow an employer to discriminate based on an unconscious bias would eviscerate Title VII protections.

The so-called "honest belief" is nothing more than another form of a "legitimate non-discriminatory" defense articulated as an "honest belief." The employer who asserts a legitimate non-discriminatory reason must provide "a clear and reasonably specific" explanation for its action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981). A conclusory allegation that the selecting official had an "honest belief" that he was selecting the best candidate based on his belief that the candidate provided "stronger answers" is neither clear nor specific and does not, therefore, meet the *Burdine* test articulated by the Supreme Court. Hartz's subjective conclusion that Griffin gave "stronger answers" is unsupported by facts;

---

[2] "Unconscious bias refers to a prejudice or stereotype an individual may hold about a particular group of people that they aren't fully aware of." What Is Unconscious Bias?, https://builtin.com/diversity-inclusion/unconscious-bias-examples.

rather his conclusion is based solely on his subjective opinion. (Exh 1: Hartz Deposition, 99:14-100:8.) Neither the employee nor the courts can read the minds of the employer/actor who acts on the basis of his/her unconscious bias, thus making it impossible to either prove or disprove whether an employer held an "honest belief."

### i. Cunningham's qualifications for the GS-13 Supervisor position were superior to Griffin's qualifications.

Cunningham did not rely on her own subjective opinion that she was more qualified for the GS-13 Supervisor position than Griffin, as argued my Defendant-Appellee. (Appellee's Brief, 33.) Rather, she produced documentary evidence in the form of her Resume and work experience that her qualifications were far superior to Griffin's qualifications. (Appellant's Brief, 7-9. 16-18.)

Hartz admitted that the best predictor of future success in a job is a record of past successful performance in a substantially similar position rather than a one-time interview. (Exh 1: Hartz Deposition, 54:18-55:4). Hartz also admitted that, *based on her Resume* (emphasis supplied), Cunningham had a six-year record of past success in a position substantially similar to the GS-13 Supervisor position, which he knew at the time he made the selection for the GS-13 position. (Exh 1: Hartz Deposition, 55:5-11). Moreover, Hartz would have been aware of Cunningham's extensive experience and successful performance as the GS-12 Supervisor of Benefits because she was asked to train Hartz. (Exh 4: Cunningham Affidavit, 3:30.) Despite this, Hartz based his selection for the GS-13 position on a

one-time interview of the candidates. (Exh 1: Hartz Deposition, 55: 12-18.) The District Court ignored this strong evidence of pretext.

Cunningham was designated the "Acting" Chief of Benefits (a GS-14 position) whenever the permanent Chief was absent or the Chief's position was vacant.[3] (Exh 4: Cunningham Affidavit, 4:39-40.) A jury could easily find that Cunningham's periodic designation of the GS-14 "Acting" Chief of Benefits qualified her for the lower graded GS-13 position much more so than Griffin who had never been designated as "Acting" Chief of Benefits. Afterall, if one is periodically serving as "Acting" Chief of Benefits (GS-14) for many years, it stands to reason that same employee would be better suited to a be supervisor one grade lower (GS-13) than the employee (Griffin) who never served as "Acting" Chief. Griffin, on the other hand, had no such record of past success in a position substantially similar to the GS-13 Supervisor of Benefits position.

Cunningham was designated as the "Subject Matter Expert" for federal benefits; Griffin was not. (Exh 1: Hartz Deposition, 64:9-23; 99:14-100:8; 104:9-15.) Cunningham had federal employee supervisory experience; Griffin did not. (Exh 1: Hartz Deposition, 55:5-11; 47:8-48:24; Exh 17: Wyatt Deposition, 20:7-21:23.) Hartz also admitted that Cunningham had been performing job duties more similar to the job duties of the GS-13 position than Griffin. (Exh 1: Hartz Deposition, 53:16-21.)

---

[3] Prior to December 2017, the GS-14 "Chief of Benefits" position had been known as "Supervisor of Benefits," not to be confused with Cunningham's GS-12 Benefits Supervisor's position. In December 2017, the "Supervisor of Benefits" title was changed to "Chief of Benefits." (Exh 4: Cunningham Affidavit, 6:63-64.)

Defendant-Appellee argues at length that the selectee, Griffin, submitted a far lengthier Resume than Cunningham and his lengthy Resume (and what Cunningham argues is largely irrelevant to the qualifications requirement) justified Hartz's selection.  Cunningham, on the other hand, followed the commonly accepted application rules and described all of her *relevant recent* Benefits and supervisory experience for the Benefits Supervisory position.  Griffin, in contrast, puffed up his Resume by including the entirety of his employment history from 1985 to 2017, including his military service record, none of which was relevant to the GS-13 Benefits Supervisory position.  (Exh 3: Griffin Resume.)  The District Court erred in giving much more credit to Defendant-Appellee's argument that the selectee's Resume was nine pages, compared to Cunningham's two-page Resume under the summary judgment standard.  (Dkt 63: District Court's Ord. Granting Def. Mtn. for Summ. Judg., 20.)  The District Court should have credited Cunningham's argument that her shorter, more relevant, Resume showed that she was, at least on paper, more qualified than Griffin due to her experience as a Supervisor in federal benefits.

The District Court failed to credit Plaintiff's evidence that she was deemed by Hartz as the subject matter expert in federal benefits and that she was already performing the bulk of the GS-13 Supervisor duties, whereas Griffin was not.  Moreover, the District Court also did not credit Cunningham's twenty-five years overall experience in federal benefits, compared to Griffin who had virtually no experience in federal benefits.  (Exh 4: Cunningham Affidavit, 1:8.)

7

Defendant, by its own admission, and as matter of federal government policy, is required to select "the best qualified" applicant for promotion, not the applicant who provided "stronger answers" in a subjective interview. (Exh 1: Hartz Deposition, 61:20-62:3.) The question of whether DFAS did in fact select the "best qualified" applicant is clearly a question of fact for a jury to decide.

### ii. Hartz relied on subjective criteria to select Griffin over Cunningham for the GS-13 Supervisor position.

Hartz's main defense of his selection is that Griffin gave "stronger answers" during his interview. (Exh 1: Hartz Deposition, 99:14-100:8.) An interview and the resulting evaluation by the interviewer are purely subjective if there is no other specific fact to support the interviewee's responses to the interviewer's questions. *See Burdine*, 450 U.S., at 258 ("the defendant's explanation of its legitimate reasons must be clear and reasonably specific"). In this case, Hartz had no evidence to support his conclusion that Griffin gave "stronger" answers to four of the six interview questions, other than Griffin's experience in the private sector. None of Griffin's experience, which supposedly supported Hartz's conclusion that he had greater experience, was related to federal benefits experience.

The Sixth Circuit in *Scott v. Eastman Chem. Co.* provides a detailed legal analysis of the dangers of subjective evaluative criteria used by employers. *Scott v. Eastman Chem. Co.*, 275 Fed. Appx. 466, 475-77 (6th Cir. 2008). There, the Sixth Circuit cited to the Supreme Court in *Burdine* which held that an employer who is relying on subjective criteria in defense of its employment action must offer a "clear

and reasonably specific" explanation for its action. *Scott*, 275 Fed. Appx., at 475 (citing *Burdine*, 450 U.S., at 258)). Here, Hartz's defense is that Griffin gave "stronger answers" to some of his interview questions. (Exh 1: Hartz Deposition, 99:14-100:8.) But he provides no evidence other than Griffin's irrelevant private sector experience to back up Griffin's supposed "stronger answers." Thus, Hartz's reasoning does not meet the "clear and reasonably specific" explanation test of *Burdine*, because Hartz offers no clarity as to what made Griffin's answers "stronger" than Cunningham's answers. It is up to the trier of fact to determine whether Hartz's explanation is believable; therefore, summary judgment should have been denied.

Moreover, Hartz's usage of the term "stronger" is a subtle reference to male strength as compared to the "weaker sex," female. He could just as easily have used a gender-neutral description, such as "better answers" but he did not. Instead, he used the masculine term, "stronger" to describe Griffin's answers.

Shante Jones (hereinafter "Jones"), a member of the interview panel, testified in her sworn Declaration that Cunningham "based on the interviews and responses, *she would have ranked first or second in my opinion*." (emphasis supplied). (Exh 13: Jones Declaration, 6.) A jury could conclude that Cunningham performed as well as Griffin in the interview, discrediting Hartz's subjective conclusion that Griffin provided "stronger answers."

The Sixth Circuit also observed that subjective evaluations under Title VII "provide a ready mechanism for discrimination, permitting racial prejudice to affect

and control promotion decisions." *Scott*, 275 Fed. Appx. at 476. Here, Hartz applied his subjective evaluation of Griffin's interview compared to Cunningham's, finding in favor of Griffin. He evaluated their respective answers using the military terminology of "tactical" and "strategic." The military is a male-dominated institution and applies male-dominated culture and values to its decision making.

Defendant-Appellee argues at some length that, because Griffin's Resume consisted of nine pages and Cunningham's only two pages, Griffin was better qualified. (Appellant Brief, 8-12, 31.) However, as argued in Appellant's principal brief, the length of a candidate's Resume is irrelevant – it is not quantity that matters, it is the quality of the Resume that matters in selecting someone for promotion. A jury could easily find, in comparing the two Resumes, that Cunningham's Resume, (reflecting federal benefits experience from 2012 – 2018) was much more germane to the GS-13 Supervisor position than Griffin's nine-page Resume which covered approximately his entire thirty-two year (1985 – 2017) employment history, none of which included federal benefits experience. (Exh: 5, Cunningham Resume; Exh 3, Griffin Resume.)

The vacancy announcement called for Griffin to supervise the benefits section and the Workers Compensation section. (Exh 9: Position Vacancy Announcement, 2.) Hartz's stated reason for selecting Griffin to supervise the Worker's Compensation team as well as the Benefits team is contradicted by the work he assigned to Griffin after selecting him. Hartz assigned Griffin to stay on as Team Lead for the Customer Care Center and supervise the Benefits team, but not the

Workers Compensation team. (Exh 4: Cunningham Affidavit, 8:99-102.) A reduction in the job duties *after* the selection so as to fit Griffin's lesser qualifications (compared to Cunningham's) is also evidence of pretext.

Hartz did not examine Cunningham's prior experience as Benefits Supervisor. (Exh 1: Hartz Deposition, 46:19-22.) Ordinarily, a conscientious selecting official would examine the past record of performance of a candidate. His failure to do so constitutes intentional ignorance regarding Cunningham's extensive experience and successful performance as GS-12 Supervisor of the Benefits team compared to Griffin's total lack of experience in Benefits or supervisory experience in the federal sector. The reasonable jury could conclude that Hartz intentionally failed to examine the personnel files of the respective candidates because he knew that Cunningham's file would reflect past successful performance and extensive experience in federal benefits compared to Griffin's lack of experience in federal benefits.

The District Court gave no credit to Cunningham's argument that Hartz's almost exclusive reliance on interviews is susceptible to hiding discrimination. Nor did the District Court credit Cunningham with her overwhelmingly superior qualifications compared to Griffin, which it should have done, especially in light of Hartz's own admission that the best predictor of future successful performance in a job is a record of successful past performance in a substantially similar position. (Exh 1: Hartz Deposition, 54:18-55:4.)

The District Court also failed to credit Cunningham's evidence that Hartz was aware of her successful performance for six years as the benefits team supervisor which was substantially similar to the GS-13 Supervisor position (Exh 1: Hartz Deposition, 55:5-11), the only difference being the additional responsibility of supervising the Worker's Compensation team. Hartz would have been aware of Cunningham's extensive experience and successful performance as the GS-12 Supervisor of Benefits because she was asked to train Hartz. (Exh 4: Cunningham Affidavit, 3:30.)

## B. Cunningham presented evidence of pretext where Defendant violated its own policy.

Courts have held that an employer's failure to follow its own employment procedures may constitute evidence of pretext. *Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 727 (7th Cir. 2005). "Significant, unexplained, or systematic deviations from established policies or practices can no doubt be relative and probative circumstantial evidence of [unlawful] intent." *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 645 (7th Cir. 2013).

### i. Hartz did not ask job-related questions during the interview for the GS-13 Supervisor position in violation of DFAS policy.

Defendant-Appellee argues that the interview questions were job-related, and therefore Cunningham's argument that the interview questions were not job related is meritless. (Appellee's Brief, 39.) This argument is unpersuasive because Jones,

who attended the interviews conducted by Hartz, stated that the interview panel did not ask job-related questions.  (Exh 13: Jones Declaration, DFAS000404.)

DFAS Regulation 1402.1-1 requires that selection "[m]ust be grounded in the position announced."  (Exh 12: DFAS Policy 1402.1-1., 19)  It also mandates, "[a]ll questions used in a selection interview must be job-related and tied to the skills or competencies identified in the job analysis."  (Exh 12: DFAS Policy 1402.1-1., 19)

Jones stated in a sworn statement that Hartz did not ask job-related questions.  When asked by the EEO Investigator to describe the "knowledge, skills, experience, and/or training the selectee had with this function," (referring to responsibilities of the position which were listed in the vacancy announcement) Jones testified in her sworn declaration, "[w]e did not ask any interview question specific to that responsibility."  (Exh 13: Jones Declaration, DFAS000403-DFAS000404.)  For example, the EEO Investigator asked,

> "The vacancy announcement states one of the responsibilities of the position was to provide programmatic analysis of the impact of various benefits programs such as retirements or worker's compensation to assist leadership in short-term and long term workforce planning.  Please describe what knowledge, skills, experience, and or training the selectee had with this function."

Jones' sworn answer was,

> "*We did not ask any interview question specific to that responsibility* (emphasis supplied). Through other questions, he demonstrated he had the ability to be flexible and fostering a team atmosphere.  It was not specified if he had experience, training, etc. but I would assume it came from experience."

(Exh 13: Jones Declaration, DFAS000404.)

Jones' pattern of responding, "We did not ask any interview question specific to that responsibility," was repeated in four out of six answers to questions about what

knowledge skills, experience, and/or training the selectee had with this function [job responsibilities].  (Exh 13: Jones Declaration, DFAS000404.)

Defendant-Appellee argues that Hartz subjectively evaluated candidates' answers to his interview questions as "tactical" or "strategic."[4]  Hartz's was apparently seeking answers that would indicate whether the candidate was thinking "strategically."  Nowhere in the vacancy announcement or the position description is there a responsibility for the incumbent to think "strategically."  Rather, the vacancy announcement and the position description describe day-to-day operational job responsibilities.  (Exh 9: Vacancy Announcement.)

In short, Hartz failed to ask job-related questions in his interviews as required by DFAS policy; instead, asking questions which he deemed would reveal whether the candidate was thinking "tactically" or "strategically."  Hartz's subjective standard of "strategic" answers to interview questions, and which was not listed as a position qualification, is evidence of pretext.  This is especially true when compared to someone who was better qualified by virtue of her knowledge, skills, experience, and or training.  In other words, when the selecting official changes the standards for selection from "knowledge, skills, experience, and/or training," to the subjective standard of "strategic" thinking, such change in the standards is evidence of pretext.  The District Court ignored this evidence of pretext.

---

[4] Appellant argues that the terms "tactical" and "strategic" are military terms and therefore reside in the lexicon of males much more so than females because the military is predominately a male organization.

### ii. Locke delayed making the selection for the GS-13 Supervisor position more than 120 days in violation of DFAS policy.

Cunningham presented evidence of pretext where Howard Locke (hereinafter "Locke") intentionally delayed making the selection for the GS-13 position well past 120-days, in violation of DFAS policy. The District Court failed to credit Plaintiff's evidence that the Agency violated its own policy of filling a vacancy within 120 days as evidence of pretext. (Exh 12: DFAS Policy 1402.1-1, APPELLANT000389.) Locke, however, deferred the selection for the GS-13 position until Hartz selected Griffin for the position on June 14, 2018, 220 days after the close of the vacancy announcement in early November 2017. (Exh 24: Final Agency Decision APPELLANT001039.) Locke passed off the selection decision to Hartz, the newly promoted Chief of Benefits, despite the need to fill the position so as not to hamper the Benefits department's mission fulfillment. Logically assuming that a vacancy needs to be filled as soon as possible in order to fulfill an agency responsibility, Locke should have filled the vacancy as soon as possible. Locke was in the best position, compared to Hartz, to select for the GS-13 Benefits Supervisor because he had supervised the Benefits division for two years and was far more familiar with qualifications of the respective candidates than was Hartz.

A substantial delay of 220 days in making the selection is evidence of pretext and should be resolved by the jury. A jury could infer that this tactic was used by

Locke[5] to avoid an anticipated outcome of having to select Cunningham, the most qualified applicant, for the GS-13 Supervisor position due to her 1) performing the bulk of the responsibilities called for in the GS-13 position, whereas Griffin had not been; and 2) her overall superior qualifications, consisting of over twenty-five years experience in federal benefits.  (Exh 4: Cunningham Affidavit, 1.)  The reasonable juror could logically conclude that the delay in selecting for the GS-13 position hampered agency operations which is not what an employer would normally do. This is further evidence of pretext.

## II.  Cunningham identified material facts in dispute that need to be determined by the trier of fact.

The material facts in dispute in this case that need to be determined by the trier of fact include but are not limited to:

1.  Whether Cunningham was the best qualified candidate because:  a) she had been performing similar supervisory functions of the GS-13 position for over six years, at the grade of GS-12; b) she was deemed the subject matter expert for federal benefits while Griffin was not; c) she had experience in federal workers compensation whereas Griffin did not; and d) she had experience as a supervisor in the federal sector whereas Griffin did not.

2.  Whether Hartz's stated reason for selecting Griffin over Cunningham for the GS-13 position is to be believed.  A jury is not required to accept or believe Hartz's

---

[5] Locke had two EEO complaints against him – one for race discrimination, one for reprisal against a female – around the time he was to make the GS-13 selection.  (Exh 11: Howard Locke EEO Complaints; Exh 16: Locke Deposition, 82:13-83:22.)

explanation that he chose Griffin because he gave "stronger answers" during the interview.  (Exh 1: Hartz Deposition, 99:14-100:8.)  At summary judgment, a court "must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151 (2000).  This is especially true in light of the fact that "stronger answers" is purely subjective and Hartz did not ask job-related questions as required by DFAS policy.

3.  Whether Locke and Hartz's violation of two DFAS policies is evidence of pretext where:  a) Locke exceeded the 120-day selection deadline; and, b). Hartz did not ask non-job related interview questions.

4.  Whether Cunningham performed as well as Griffin in her interview for the GS-13 position, discrediting Hartz's subjective conclusion that Griffin was the best qualified candidate, given that Jones, a member of the interview panel, testified in her sworn Declaration that  "based on the interviews and responses, *[Cunningham] would have ranked first or second in my opinion*" (emphasis supplied).  (Exh 13: Jones Declaration, 6.)

## CONCLUSION

Because Cunningham produced ample evidence of pretext and pointed to many material facts in dispute, this Court should reverse the District Court's grant of Defendant's Motion for Summary Judgment.

Respectfully submitted,

*/s/ Tae Sture*
Tae Sture, Attorney No. 25120-29
Sture Legal Services, LLC
155 East Market Street, Suite 501
Indianapolis, IN 46204
Email: tae@sturelaw.com
Ph: (317) 577-9090
Fax: (317) 577-1102

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed electronically on September 26, 2024. Notice of this filing will be sent electronically to the following parties via the Court's electronic filing system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system. Parties may access this filing through the Court's electronic filing system.

Rachana N. Fischer
Assistant United States Attorney Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis, IN 46204-3048
Telephone No.: (317) 226-6333
Fax No.: (317) 226-5027
Email: rachana.fischer@usdoj.gov

*/s/ Tae Sture*
Tae Sture
Attorney for the Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limit of Fed. R. App. P.
   32(a)(7)(B) because, excluding the parts of the document exempted by Fed.
   R. App. P. 32(f):

   _x_ this document contains 4421 words, **or**

   __this brief uses a monospaced typeface and contains [state the
   number of ] lines of text.

2. This brief complies with the typeface requirements of Fed. R. App. P 32
   (a)(5) and the type style requirements of Fed. R. App. P 32(a)(6) because
   this brief has been prepared in proportionally spaced typeface using
   Microsoft Word, Century, 12-point font.

   */s/ Tae Sture*
   Tae Sture
   Attorney for the Plaintiff-Appellant

## CIRCUIT RULE 31(B) CERTIFICATION

I, Tae Sture, hereby certify that the fifteen paper copies of the Appellant's
Reply Brief will be sent within 7 days of filing via the Court's ECF system via
commercial carrier to:

United States Court of Appeals
Seventh Circuit
219 S. Dearborn, Room 2722
Chicago, IL 60604

   */s/ Tae Sture*
   Tae Sture
   Attorney for the Plaintiff-Appellant